LOSS, JUDGE & WARD, LLP
LEWIS K. LOSS (admitted pro hac vice)
Two Lafayette Centre
1133 21st Street, N.W., Suite 450
Washington, D.C. 20036
Telephone: (202) 778-4060
Facsimile: (202) 778-4099
E-mail: lloss@ljwllp.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ROBERT J. STUMPF, JR., Cal. Bar No. 72851
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
E-mail: rstumpf@sheppardmullin.com

Attorneys for Plaintiff and Counterclaim Defendant
Genesis Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Genesis Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Magma Design Automation, Inc., and National Union Fire Insurance Company of Pittsburgh, PA,<br><br>Defendants. | Case No. 06-5526 EJD<br><br>**NOTICE OF MOTION AND MOTION OF GENESIS INSURANCE COMPANY FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| AND RELATED COUNTERCLAIMS, CROSSCLAIMS, AND THIRD-PARTY ACTIONS. | Date: February 12, 2015<br>Time: 9:00 a.m.<br>Place: Courtroom 4 |

**NOTICE OF MOTION AND MOTION**
**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT in the courtroom of the Honorable Edward J. Davila, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California 95113, on February 12, 2014, Plaintiff Genesis Insurance Company ("Genesis") will move pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment in its favor on its Second Amended Complaint against Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

As set forth more fully in the accompanying Memorandum of Points and Authorities, Defendant Magma Design Automation, Inc. ("Magma") was insured under successive claims-made excess insurance policies issued by Genesis and National Union. This motion is made on the ground that Genesis is entitled to equitable subrogation against National Union for the $5 million Genesis advanced pursuant to a full reservation of rights for the settlement of certain shareholder litigation against Magma.

The United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") previously has ruled that the shareholder litigation did not constitute a claim "first made" during the claims-made period of the Genesis policy and, therefore, was not covered under the Genesis policy. Genesis may recover its payment, plus interest, from National Union, as Magma's subrogee, to the extent that the settlement is covered by the National Union policy. The sole remaining issue to be determined in assessing National Union's payment obligation is to confirm that the primary policy over which the National Union policy is excess has been properly exhausted.

After targeted discovery, the undisputed facts demonstrate that the primary policy over which the National Union policy is excess has been properly exhausted. Accordingly, National Union is responsible for the payment that Genesis was forced to make due to National Union's refusal to do so and, under well-established California law, Genesis, as Magma's subrogee, is now entitled to recover its payment (plus interest) from National Union.

This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the (1) Declaration of Brent H. Olson (hereinafter, the "Olson Decl."), (2) Moving Separate Statement, and (3) Supplemental Declaration of Brent H. Olson, and such further evidence or argument as may be presented at or in connection with the hearing on the Motion.

Dated: January 9, 2015 By: /s/ Robert J. Stumpf, Jr.

Robert J. Stumpf, Jr. (Cal. Bar No. 72851)
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
E-mail: RStumpf@sheppardmullin.com

AND

Lewis K. Loss
(Admitted Pro Hac Vice)
LOSS, JUDGE & WARD, LLP
Two Lafayette Centre
1133 21st Street, N.W.
Suite 450
Washington, D.C. 20036
Telephone: (202) 778-4060
Facsimile: (202) 778-4099
E-mail: lloss@ljwllp.com

*Attorneys for Plaintiff and Counterclaim Defendant Genesis Insurance Company*

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II STATEMENT OF ISSUES TO BE DECIDED ..... 2

III. FACTUAL BACKGROUND ..... 3

A. The Underlying Litigation and Ensuing Coverage Dispute ..... 4

B. Settlement of the Class Action and Genesis' Full Reservation of Rights ..... 6

C. The Initial Motions for Summary Judgment ..... 6

D. The Initial Trial Court Ruling and First Appeal ..... 7

E. The Second Trial Court Ruling and Appeal ..... 8

F. Targeted Discovery After Second Appeal ..... 9

IV. ARGUMENT ..... 11

A. Genesis, as Magma's Subrogee, May Recover Its Settlement Payment Directly from National Union ..... 12

1. Equitable Subrogation Permits Genesis to Recover Its Settlement Payment Directly from National Union ..... 12

2. The Record Unambiguously Establishes as a Matter of Law that The 04/06 ERII Policy Has Been Properly Exhausted ..... 15

a. Mr. Nace's Declaration Establishes that the ERII 04/06 Policy Has been Exhausted ..... 15

b. Alternatively, the Court Should Find that the ERII 04/06 Policy Has Been Exhausted Based on the Discovery Conducted ..... 17

B. National Union's Waiver and Equitable Estoppel Affirmative Defenses Are Entirely Unsupported ..... 19

C. Under California Law, Genesis is Entitled to Prejudgment Interest at a Rate of Ten Percent Per Annum ..... 21

V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

## Federal Cases

Clarendon National Insurance Co. v. Insurance Co. of the West, No. CV F 99 5461 SMS, 2006 WL 2594452 (E.D. Cal. Sept. 11, 2006) .................................. 23

Evanston Insurance Co. v. OEA, Inc., 566 F.3d 915 (9th Cir. 2009)........................................................................................ 22

Genesis Insurance Co. v. Magma Desigan Automation, Inc., 386 F. App'x 728 (9th Cir. 2010) ...................................................................................... 7, 17

Genesis Insurance Co. v. Magma Desigan Automation, Inc., 506 F. App'x 679 (9th Cir. 2013) .................................................................................. 8, 9, 15

Hamada v. Far Eastern National Bank (In re Hamada), 291 F.3d 645 (9th Cir. 2002)........................................................................................ 13

Highlands Insurance Co. v. Continental Casualty Co., 64 F.3d 514 (9th Cir. 1995)........................................................................................ 22

Sea Hawk Seafoods, Inc. v. Exxon Corp. (In re Exxon Valdez), 484 F.3d 1098 (9th Cir. 2007)...................................................................................... 21

## State Cases

Blue Ridge Insurance Co. v. Jacobsen, 25 Cal. 4th 489 (2001) ............................................................................................ 23

Caito v. United California Bank, 20 Cal. 3d 694 (1978) ............................................................................................ 13

Cassinos v. Union Oil Co., 14 Cal. App. 4th 1770 (1993) ...................................................................................... 21

DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd., 30 Cal. App. 4th 54 (1994) ................................................................................ 19, 20

Employers Mutual Liability Insurance Co. of Wisconsin v. Pacific Indemnity Co., 167 Cal. App. 2d 369 (1959)................................................................................ 13, 14, 15

Esgro Central, Inc. v. General Insurance Co., 20 Cal. App. 3d 1054 (1971)...................................................................................... 22

Estate of Kemmerer, 114 Cal. App. 2d 810 (1952)...................................................................................... 13

Fireman's Fund Insurance Co. v. Maryland Casualty Co.,
21 Cal. App. 4th 1586 (1994) .................... 12

Homestead Insurance Co. v. American Empire Surplus Lines Insurance Co.,
44 Cal. App. 4th 1297 (1996) .................... 11

Insurance Co. of the West v. Haralambos Beverage Co.,
195 Cal. App. 3d 1308 (1987).................... 20

Kpff, Inc. v. California Union Insurance Co.,
56 Cal. App. 4th 963 (19967) .................... 18

Levy-Zentner Co. v. Southern Pacific Transportation Co.,
74 Cal. App. 3d 762 (1977).................... 22

United Services Automobile Association v. Alaska Insurance Co.,
94 Cal. App. 4th 638 (2001) .................... 12

Wisper Corp. v. California Commerce Bank,
49 Cal. App. 4th 948 (1996) .................... 22

**Statutes & Administrative Codes**

CAL. CIV. CODE § 3287(a).................... 22

CAL. CIV. CODE § 3289(b) .................... 23

**Rules**

Fed. R.Civ. P. 56(a).................... 11

9th Cir. R. 36-3(a) .................... 18

**Other**

50 AM. JUR. p. 699, § 23 .................... 14

## I. INTRODUCTION

In 2008, Magma demanded that its primary and excess insurers fund the settlement of certain shareholder litigation pending against it. Genesis and National Union had issued successive claims-made excess insurance policies to Magma. Genesis believed that excess coverage for the settlement was owed to Magma by National Union, not Genesis. However, when National Union refused to contribute, Genesis did so, subject to a reservation of its right to recoup its payment of $5 million either from Magma or, as Magma's subrogee, from National Union. This motion concerns Genesis's claim as Magma's subrogee against National Union.

Genesis has traveled a very long road in its effort to be made whole. The basic coverage issue presented by this matter was resolved by the Ninth Circuit in 2010. At that time, the Ninth Circuit determined that the Genesis claims-made excess policy did not provide coverage for the shareholder litigation because (1) that litigation was filed well after the expiration of the Genesis claims–made excess policy, and (2) the sole purported notice provided to Genesis during its policy period was plainly insufficient under the policy's terms to preserve coverage for a later-arising claim. The shareholder litigation was filed during the policy period of the National Union claims-made excess policy. The logical conclusion that flowed from the Ninth Circuit's ruling was that the shareholder litigation was a claim "first made" during the National Union policy period and that, therefore, the $5 million should have been paid by National Union.

However, for four additional years now, National Union has resisted making that payment so long as it could identify an issue it still could litigate. The last of those issues is now before the Court. One insurer, Executive Risk Indemnity Inc. ("ERII"), issued to Magma two successive primary policies written on a claims-made basis. The Genesis policy was excess to the earlier of the two ERII policies and the National Union policy was excess to the second. Both excess policies require as a precondition to coverage that the particular ERII primary policy over which it is excess be exhausted by payment of covered loss. ERII stated years ago that it would credit the policy-exhausting payments it made to resolve the shareholder litigation to whichever policy year this litigation determined to be applicable.

The primary and excess policies all had identical notice language, and ERII received during the period of its earlier policy the same purported notice Magma provided to Genesis – purported notice the Ninth Circuit found plainly insufficient to preserve coverage under the Genesis policy. Accordingly, after considering the Ninth Circuit's ruling, ERII recognized that the later of its two policies was the applicable one. ERII then properly adjusted its records to reflect the exhaustion of that policy—the one in effect when the shareholder litigation was filed and over which National Union was excess.

The issue National Union has insisted on litigating further was whether *maybe* it could establish that ERII, during the earlier policy period, actually received materially better notice than the purported notice provided to Genesis. If it could make this showing, National Union hoped to create a chaotic situation in which it could assert that the primary policy over which it is excess has not been properly exhausted. This would leave Magma with no excess coverage anywhere (and also would cut-off Genesis's subrogation claim against National Union).

As discussed below, after targeted discovery on this issue, the undisputed facts demonstrate, as fully expected, that the purported notice provided to ERII was the same as the deficient purported notice provided to Genesis and that the primary policy over which the National Union policy is excess has been properly exhausted. As a consequence, Magma was entitled to coverage from National Union for the settlement of the shareholder litigation and Genesis, as Magma's subrogee, is entitled to recover from National Union the $5 million it contributed to the settlement on Magma's behalf, plus interest.[1]

## II. STATEMENT OF ISSUES TO BE DECIDED

Genesis's Motion for Partial Summary Judgment presents two issues:

1. Whether Genesis, as Magma's subrogee, may recover its settlement payment from National Union, which issued a policy to Magma that provided coverage for the settlement in question; and

2. Whether Genesis is entitled to an award of prejudgment interest.

[1] Genesis is also entitled to return of its settlement payment from Magma, with prejudgment interest, but in this motion seeks only judgment with respect to its equitable subrogation claim against National Union.

## III. FACTUAL BACKGROUND

Genesis issued to Magma Excess Directors and Officers Liability Insurance Policy No. YXB002393B for a claims-made policy period from December 15, 2003 to December 15, 2004 (the "Genesis Policy"). (2d. Am. Compl. Ex. A, Docket Entry No. ("DE") 254-1 at 2). The Genesis Policy contains a $5 million limit of liability in excess of a $10 million primary policy issued by ERII for the same claims-made period (the "ERII 03/04 Policy"). (2d. Am. Compl. Ex. B, DE 254-2 at 1). The Genesis Policy contains a "follow form" clause that incorporates into that policy the terms, conditions, and exclusions of the ERII 03/04 Policy. The "follow form" clause provides that the Genesis Policy "shall provide insurance coverage . . . in conformance with and subject to the terms, conditions and exclusions of the Primary Policy." (2d. Am. Compl. Ex. A, DE 254-1 at 4). The ERII 03/04 Policy and the Genesis Policy are referred to collectively herein as the "03/04 Policies."

The ERII 03/04 Policy contains a "notice of circumstances" provision that allows Magma to secure coverage for certain post-policy period lawsuits so long as Magma's notice of circumstances complies with that provision's requirements. The ERII 03/04 Policy states that any notice of circumstances that may give rise to a claim must be in <u>writing</u> and further requires in relevant part that "[t]he **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, . . . include in any notice under Subsection 15(a) or (b) a description of the . . . circumstances . . ., the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such Insured first became aware of the . . . circumstances." (2d Am. Compl. Ex. B, DE 254-2 at 4, 24). Pursuant to the "follow form" clause in the Genesis Policy, the ERII 03/04 Policy's notice of circumstances provision applies in identical manner to both of the 03/04 Policies. (2d Am. Compl. Ex. A, DE 254-1 at 4).

For the period following the 03/04 Policies, ERII issued another primary policy to Magma for the claims-made policy period from December 15, 2004 to March 30, 2006 (the "ERII 04/06 Policy"). (2d. Am. Compl. Ex. C, DE 254-3 at 6). As with the ERII 03/04 Policy, the ERII 04/06

Policy had a $10 million aggregate limit of liability. However, Genesis did not provide excess coverage to Magma for the 04/06 policy period. Instead, Magma procured a $5 million excess follow-form policy from National Union for the 04/06 policy period (the "National Union Policy"). (2d. Am. Compl. Ex. D, DE 254-4 at 1-2). The ERII 04/06 Policy and the National Union Policy are referred to herein as the "04/06 Policies."

### A. The Underlying Litigation and Ensuing Coverage Dispute

On September 28, 2004, Magma's insurance broker, ABD Insurance and Finances Services ("ABD"), sent letters to the claims departments of both ERII and Genesis purporting to notify them of circumstances that might result in a claim. (2d. Am. Compl. Exs. E-F, DE 254-5, 254-6). The letters to both ERII and Genesis are substantively identical and were accompanied by a copy of a patent infringement complaint filed against Magma (the "*Synopsys* Action"). (2d. Am. Compl. Exs. E-G, DE 254-5, DE 254-6, DE 254-7). Both ERII and Genesis sent Magma letters in October 2004 declining coverage for the *Synopsys* Action. On or about November 9, 2004, Richard Nace of ERII received a telephone call from Rian Jorgensen of ABD. Mr. Jorgensen stated that Magma had previously had a patent lawsuit against it become a directors' and officers' liability claim and requested that ERII accept the *Synopsys* Action as a notice of circumstances. (2d. Am. Compl. Ex. H, DE 254-8 at ¶¶ 6-7). ERII subsequently issued a second letter to Magma stating that ERII accepted the *Synopsys* Action complaint as a notice of circumstances that might lead to a claim under the ERII 03/04 Policy. (2d. Am. Compl. Ex. I, DE 254-9).

On June 13, 2005, nearly six months after the expiration of the 03/04 policy period and well into the 04/06 policy period, a class action suit captioned The Cornelia I. Crowell GST Trust v. Magma Design Automation, Inc., et al., No. 3:05-cv-02394-CRB (N.D. Cal.) (the "Class Action"), was filed against Magma and certain Magma directors and officers over alleged misrepresentations to the investing public.[2] (See 2d. Am. Compl. Ex. J, DE 254-10 at ¶ 3).

[2] Other, potentially-related lawsuits were also filed against Magma and certain of its officers and directors around the time of the Class Action. Because the specifics of these other lawsuits are not relevant to the issues addressed in the present motion, they may all be considered part of the Class Action for purposes of this motion.

Magma tendered the Class Action to ERII and ERII decided to administer the Class Action as a claim made under its 03/04 policy instead of its 04/06 policy. (2d. Am. Compl. Ex. H, DE 254-8 at ¶¶ 8-9). At the time, ERII took the position that the Class Action was encompassed within the purported "notice of circumstances" of the *Synopsys* Action against Magma that ERII and Genesis had received during its earlier policy period and therefore would be deemed a claim made during the earlier policy period; ERII also reserved all its rights. (Id.). National Union denied coverage for the Class Action under its policy covering the 04/06 policy period solely on this ground and on no other grounds. (Friedman Decl. Ex. Q, DE 88-19). National Union explained that its policy did not apply because in its view the Class Action constituted a claim made during the 03/04 policy period when National Union was not on the risk. (Id. at 4, DE 88-19 at 4).

Genesis disputed ERII's treatment of the Class Action as a claim made under the 03/04 policy period, (Decl. J. Simon Ex. 1, DE 86 at 4-7), and, on September 8, 2006, filed the instant declaratory judgment action against Magma, seeking a declaration that the Class Action constitutes a claim made under the 04/06 policy period and not under the 03/04 policy period. Magma filed a third-party complaint against ERII and National Union, seeking a declaration that "either the Genesis Policy or National Union Policy requires one of these carriers to . . . indemnify it above the limits of one of the ERII Policies." (Third Party Compl. ¶ 34, DE 11 at 7). In response, ERII filed a counterclaim against Magma, seeking a declaration that the Class Action constituted a claim first made under either the ERII 03/04 Policy or the ERII 04/06 Policy, but not both. (Third Party Counterclaim, DE 26 ¶¶ 24-25). National Union answered Magma's third-party complaint without raising any new defenses to coverage.[3] (Nat'l Union Answer, DE 25). Thus, as framed by the parties in their respective initial pleadings, this coverage dispute sought to

[3] National Union included in its answer to the third-party complaint a catch-all affirmative defense that "MAGMA's claims may be barred, in whole, or in part by the terms, conditions, exclusions, limitations, and/or exceptions to coverage contained in the National Union Excess Policy and any policy to which the National Union Excess Policy followed form." (Nat'l Union Answer at 9, DE 25 at 9). National Union, however, did not cite any particular exclusion as precluding coverage for Magma with respect to the underlying litigation.

determine which of two potentially applicable towers of coverage applied to the underlying litigation.

### B. Settlement of the Class Action and Genesis's Full Reservation of Rights

In late November 2007, Magma demanded that Genesis and National Union contribute to a potential settlement of the Class Action, up to the applicable $5 million limit of each excess policy. (See Loss Decl. Ex. 1, DE 169-1 at 6-9). National Union refused to participate in settlement discussions or to contribute to any settlement. (Id.). By contrast, Genesis agreed to contribute its full $5 million policy limits toward settlement of the Class Action, subject to a full and complete reservation of rights, including the right to recover from Magma.[4] (See, e.g., Loss Decl. Exs. 3-5, DE 169-1 at 13-22). The parties to the class action subsequently reached a settlement in principle, and, on July 21, 2008, Genesis timely advanced $5 million to the settlement escrow account, pursuant to its written reservation of rights.

### C. The Initial Motions for Summary Judgment

Genesis filed its first motion for summary judgment on January 15, 2008. (Genesis Mot. Partial Summ. J., DE 85). Genesis's motion addressed the claims-made issue framed by the parties' pleadings, asserting that because Magma's purported notice of circumstances failed to satisfy the 03/04 Policy's requirements, the claim against Magma was not made until the policy period of the 04/06 Policies. On February 1, 2008, National Union responded by filing its own motion for partial summary judgment. (Nat'l Union Mot. Partial Summ. J., DE 87). In that motion National Union for the first time – more than two months after the underlying Class Action settled in principle, sixteen months after Genesis brought this action, and two and a half years after National Union received notice of the Class Action – raised the 04/06 Policies' prior notice exclusion as a defense to coverage. (Nat'l Union Mem. Supp. Mot. Partial Summ. J., DE 89 at 15-17).

[4] The Court (Judge Ware) has found that Genesis's reservation of rights "preserved its right to seek reimbursement from Magma directly." (Dec. 20, 2010 Order, DE 186 at 8).

**D. The Initial Trial Court Ruling and First Appeal**

On July 24, 2008, the Court (Judge Ware) issued an order denying Genesis's partial summary judgment motion and granting National Union's partial summary judgment motion in part and denying it in part. (Jul. 24, 2008 Order, DE 112). In essence, the Court concluded that the Class Action was encompassed within Magma's purported written notice of circumstances received during the Genesis policy period and therefore should be deemed a claim made during the earlier policy period. (Id. at 10). Genesis appealed this decision, contending *inter alia*, that the purported written notice of circumstances was inadequate to deem the Class Action as having been made during the earlier 03/04 Genesis policy period rather than during the 04/06 National Union policy period.

The Ninth Circuit heard Genesis's appeal on April 15, 2010. On July 12, 2010, it issued a Memorandum Disposition reversing the Court's grant of summary judgment to National Union against Genesis. Genesis Ins. Co. v. Magma Design Automation, Inc. ("Genesis I"), 386 F. App'x 728, 730 (9th Cir. 2010). The Ninth Circuit concluded that the notice of the *Synopsys* Action that was provided to Genesis did not trigger coverage for the post-period Class Action. Of particular note, the Ninth Circuit held that "[t]he notice did not contain any of the specific information called for in Section 15(c) of the policy and falls short of the types of notice we have upheld as sufficiently specific under similar notice provisions." Id. at 730. The Ninth Circuit also concluded that:

1. Genesis could not be charged with constructive knowledge of any facts it would have discovered if it had conducted an investigation;

2. Genesis did not waive its right to object to the sufficiency of the notice provided by Magma; and

3. Coverage under the Genesis Policy did not extend to the post-policy Class Action and related claims through the related claims provision of the Genesis Policy.

Id. at 730-31. Accordingly, the Ninth Circuit held the Genesis Policy does not cover Magma's claims. Id. at 730.

**E. The Second Trial Court Ruling and Second Appeal**

After the Ninth Circuit's 2010 ruling, Genesis filed an amended complaint that sought to recover from Magma or National Union the $5 million it contributed to the Class Action settlement plus interest. (Am. Compl., DE 153). The parties then filed several motions: (1) Magma moved for summary judgment as to Genesis and summary adjudication as to National Union (DE 168); (2) Genesis moved for summary judgment against both National Union and Magma (DE 169); and (3) National Union filed separate motions to dismiss Genesis's Amended Complaint (DE 158) and Magma's Amended Counter/Cross-Claim (DE 161).

The Court (Judge Ware) denied Magma's motion for summary judgment and granted its motion for summary adjudication, granted in part and denied in part Genesis's motion for summary judgment, and denied as moot National Union's motions to dismiss. (Dec. 20, 2010 Order, DE 186). Relevant to this motion, the Court ruled that (1) the 04/06 Policies' prior notice exclusion did not bar coverage under the National Union Policy for the Class Action; (2) the ERII 04/06 Policy was exhausted; and (3) Genesis was entitled to equitable subrogation from National Union. (Id. at 11, 13-14). On March 2, 2011, the Court entered final judgment pursuant to FRCP 54(b) in Genesis's favor against National Union on Genesis's equitable subrogation claim in the amount of $6,306,848.64 – $5 million for Genesis's settlement payment and $1,306,848.64 in prejudgment interest. (Mar. 2, 2011 Judgment, DE 200).

National Union appealed the March 2, 2011 final judgment. In National Union's briefing on appeal, it argued, among other things, that: (1) the prior notice exclusion applied to bar coverage for the amounts at issue; (2) the record did not demonstrate that ERII had "adjusted its records or that the ERII 04/06 Policy has been exhausted" and no coverage existed under the National Union Policy absent such exhaustion; and (3) Magma had provided enough information to ERII for ERII to have correctly treated the information as a notice of circumstances under the ERII 03/04 Policy. (Olson Decl. Ex. 1, Nat'l Union Reply Br. at 5-6, 11)).[5] On February 5, 2013, the Ninth Circuit issued a Memorandum Disposition reversing the final judgment. Genesis

[5] All cites to "Olson Decl. Ex. __," refer to the numbered exhibits attached to the January 9, 2015 Declaration of Brent H. Olson, filed in connection with this motion.

Ins. Co. v. Magma Design Automation, Inc., 506 F. App'x 679 (9th Cir. 2013) ("Genesis II"). The Ninth Circuit rejected National Union's assertion that the prior notice exclusion applied, but reversed and remanded because it found that the record did not demonstrate exhaustion of the ERII 04/06 Policy, a condition precedent to coverage under the National Union Policy. Id. at 680. The Ninth Circuit did not address whether the information Magma provided to ERII was sufficient to satisfy the requirements under the ERII 03/04 Policy to serve as a proper notice of circumstances under that policy but specifically identified this as an issue for the Court to consider on remand. Id.

**F. Targeted Discovery After the Second Appeal**

Following remand, on December 5, 2013, the Court (Judge Davila) considered National Union's renewed motion to dismiss Genesis's amended complaint and Magma's amended cross-claim. In addressing that motion, this Court explained as follows:

> As noted above, Genesis asserts a single claim of equitable subrogation against National Union. "Subrogation is the insurer's right to be put in the position of the insured, in order to recover from third parties who are legally responsible to the insured for a loss paid by the insurer." Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health and Welfare Benefit Plan, 64 F.3d 1389, 1392 (9th Cir. 1995). Thus Genesis may recover its $5 million in policy limits from National Union under an equitable subrogation theory only if Magma would be entitled to such a recovery. Magma is entitled to recovery against National Union only if National Union had an obligation to provide coverage for the shareholder litigation under the National Union Excess Policy. Magma asserts that National Union did have such an obligation and asserts claims against it for declaratory relief, breach of contract, and breach of the implied covenant.
>
> As discussed above, the Ninth Circuit has made clear that "[c]overage under National Union's policy was contingent on exhaustion of the primary coverage provided by Executive Risk Indemnity, Inc. ("ERII") for the 2004-06 policy period." Genesis II, 506 F. App'x at 680. National Union points out that neither Genesis's amended complaint nor Magma's amended counterclaim and crossclaim allege exhaustion of the ERII 04-06 Policy. The Court concludes that both pleadings are subject to dismissal [with leave to amend] on this basis.

(Dec. 5, 2013 Order, DE 253 at 7).

The Court then carefully delineated the remaining issue to be the subject of discovery:

> [T]he Court concludes that discovery should be limited to the issue of whether there was a material difference between the notice of the Synopsys action provided to Genesis, which the Ninth Circuit has found to be inadequate to constitute a notice of circumstances, and the notice of the Synopsys action provided to ERII. The Court will adopt the proposal of Genesis and Magma, permitting National Union to conduct one deposition of ERII and one deposition of Magma's broker, Rian Jorgensen. National Union also may conduct limited document discovery focused on the notice provided to Genesis, the notice provided to ERII, and any material differences between the two. Discovery otherwise shall remain stayed.

(Id. at 8).

The limited discovery allowed by the Court has now been concluded. That discovery has confirmed that there was no material difference in the notice provided to ERII and the notice provided to Genesis.

On March 5 and April 30, 2014, National Union deposed Richard Nace, the ERII senior claims officer who handled Magma's purported claims under ERII's policies. (Olson Decl. Ex. 2, R. Nace Dep. Tr. 15:23-17:21). Mr. Nace testified that during the 03/04 policy period, Mr. Jorgensen sent ERII the September 24, 2004 letter and an accompanying copy of the *Synopsys* Action complaint. (Id. at 46:3-47:8). Mr. Nace also testified that during the 03/04 policy period he received one telephone call from Mr. Jorgensen regarding the *Synopsys* Action complaint.[6] (Id. at 57:5-17). Mr. Nace stated he only vaguely remembered the conversation, which took place nearly 10 years prior to the deposition, but confirmed that his description of it in his March 7, 2008 declaration was accurate. (Id. at 57:23-58:5, 68:16-23). Mr. Nace's 2008 declaration identified only two statements Mr. Jorgensen made during the call. First, Mr. Jorgensen requested that the *Synopsys* Action be treated as a notice of circumstances that could give rise to a Claim under the 03/04 ERII Policy. (2d. Am. Compl. Ex. H, DE 254-8 ¶ 6). Second, Mr. Jorgensen stated that "Magma had, in the past, had a patent suit become a directors' and officers' liability claim." (Id. ¶ 7). Mr. Nace testified that his initial determination that Magma had provided a notice of circumstances under the 03/04 ERII Policy was based solely on (1) the

---

[6] Mr. Nace testified that he recalled one call, but couldn't recall specifically whether there had been only one call or multiple calls. (Id. at 59:6-13).

September 24, 2004 letter from ABD, (2) the *Synopsys* Action complaint, and (3) the call with Mr. Jorgensen. (Olson Decl. Ex. 2, R. Nace Dep. Tr. 62:4-8).

Mr. Jorgensen was deposed on February 28 and June 20, 2014. (Olson Decl. Ex. 3, R. Jorgensen Dep. Tr.). Mr. Jorgensen testified that he gave Mr. Nace of ERII the *Synopsys* Action complaint, but no other information, written or otherwise, about the *Synopsys* Action. (Id. at 76:17-77:18). Mr. Jorgensen also stated that he did not recall the specifics of any calls with Mr. Nace about Magma's notice of the *Synopsys* Action. (Id. at 31:6-21), but believed Mr. Nace's 2008 declaration likely accurately described any November 2004 conversation between them. (Id. at 31:22-33:8). Mr. Jorgensen further testified that he did not recall giving Mr. Nace any information about a possible directors and officers claim that might arise out of the 2004 *Synopsys* Action. (Id. at 80:16-20).

The parties in the instant action also conducted targeted document discovery concerning any material differences between the purported notice of circumstances provided to Genesis and the purported notice of circumstances provided to ERII. The documents produced show that ERII and Genesis received identical written materials from ABD/Magma – both received identically worded September 28, 2004 cover letters and a copy of the patent infringement complaint. (Olson Decl. Ex. 4, GIC-00001-08; Olson Decl. Ex. 5, R. Nace. Dep. Ex. 2 at 1-14; Olson Decl. Ex. 2, R. Nace Dep. Tr. 68:24-71:22). ERII received no further written notice from ABD or Magma during the 03/04 Policy Period.

## IV. ARGUMENT

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). Absent a factual dispute as to the meaning of policy language, which does not exist here, "the interpretation, construction and application of an insurance contract is strictly an issue of law." Homestead Ins. Co. v. Am. Empire Surplus Lines Ins. Co., 44 Cal. App. 4th 1297, 1301 (1996).

### A. Genesis, as Magma's Subrogee, May Recover Its Settlement Payment Directly from National Union

Genesis is entitled to partial summary judgment on its equitable subrogation claim against National Union because the record establishes that the contingency to coverage under the National Union Policy – exhaustion of the ERII 04/06 Policy – has occurred, entitling Genesis as Magma's subrogee to recover against National Union. As noted above, the Court (Judge Ware) previously granted Genesis summary judgment on its equitable subrogation claim. In that December 20, 2010 Order, the Court found, *inter alia*, that the ERII 04/06 Policy was exhausted and Genesis was entitled to equitable subrogation from National Union. (Dec. 20, 2010 Order, DE 186 at 13-14). The Ninth Circuit's subsequent reversal found only that the record in 2010 did not yet establish that the ERII 04/06 Policy had been exhausted. The subsequent targeted discovery ordered by the Court now establishes that the ERII 04/06 Policy has been exhausted, entitling Genesis to partial summary judgment.

#### 1. Equitable Subrogation Permits Genesis to Recover Its Settlement Payment Directly from National Union

As the Court (Judge Ware) previously ruled, Genesis may recover directly from National Union through subrogation because "the factors generally required to invoke the remedy of equitable subrogation have been satisfied." (Dec. 20, 2010 Order at 14, DE 186 at 14). The Ninth Circuit's ruling did not disturb the Court's finding that Genesis was entitled to equitable subrogation, and there has been no change in the record or law to warrant a different result now.

"'Equitable subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to "step into the shoes" of the loser and pursue recovery from the responsible wrongdoer.'" United Servs. Auto. Ass'n v. Alaska Ins. Co., 94 Cal. App. 4th 638, 645 (2001) (quoting Fireman's Fund Ins. Co. v. Maryland Cas. Co., 21 Cal. App. 4th 1586, 1595-1596 (1994)). California law provides for equitable subrogation for claimants who meet five criteria:

> First, the claimant must have paid the debt owed to the lienholder in order to protect the claimant's own interest. Second, the claimant must not have acted as a volunteer. Third, the claimant could not have been primarily liable for the debt he

> paid. Fourth, the claimant must have paid the entire debt owed to the lienholder. And, fifth, the subrogation must not work an injustice to the rights of others.

Hamada v. Far E. Nat'l Bank (In re Hamada), 291 F.3d 645, 655 (9th Cir. 2002) (citations and quotations omitted).[7] In its 2010 order, the Court correctly found that these criteria were satisfied and that Genesis is entitled to equitable subrogation:

> First, it is undisputed that Genesis made a $5 million contribution to the settlement of the Securities Class Action in order to avoid a later potential finding of bad faith denial of insurance benefits. Second, Genesis's payment was not "voluntary," as Magma demanded that Genesis pay and there was no judicial determination at that time as to whether Genesis or National [Union] would be ultimately responsible. Third, the Ninth Circuit determined that the debt paid was one for which Genesis was not primarily liable. (Ninth Circuit Order at 5). Fourth, the entire debt has been paid, as Genesis contributed the limits of its excess policy. (Green Decl., Exs. 1-2). Finally, subrogation would not be unjust; rather, it would allow Genesis to recover the amount it advanced under the 03/04 policy from National [Union], Magma's 04/06 excess policy insurance carrier, who previously refused to offer any sum in defense of its policy holder.

(Dec. 20, 2010 Order, DE 186 at 14). These criteria remain met, entitling Genesis to equitable subrogation under the five factor test.[8]

California's courts have long held insurers are entitled to recover from another insurer through equitable subrogation in cases like the instant action. See Employers Mut. Liab. Ins. Co. of Wis. v. Pacific Indem. Co., 167 Cal. App. 2d 369, 376 (1959). The relevant facts of Employers Mutual are nearly identical to those present here. The insured, Atkinson, was sued for personal injury and the claim was covered under one of two insurance policies, but not both. One of the insurers, Employers Mutual, agreed to fund a settlement of the claims against the insured after the other insurer, Pacific Indemnity, refused to do so. Employers Mutual subsequently filed suit,

---

[7] The Genesis Policy expressly provides that "[i]n the event of any payment under this Policy, the Insurer shall be subrogated to any and all of the insured's rights of recovery thereof . . . ." (2d. Am. Compl. Ex. A, DE 254-1 at 7).

[8] California courts have also held that "[e]quitable subrogation[] . . . is a broad equitable remedy and is, thus, 'not limited to circumstances where these five factors are met.'" (Dec. 20, 2010 Order at 14, DE 186 at 14) (quoting Hamada, 291 F.3d at 653 )). Rather, "'[a]s now applied [the doctrine of equitable subrogation] is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.'" Caito v. United California Bank, 20 Cal. 3d 694, 704 (1978) (quoting Estate of Kemmerer, 114 Cal. App. 2d 810, 814 (1952)). Genesis is equally entitled to equitable subrogation under this broader approach.

seeking: (1) a declaratory judgment that Pacific Indemnity's policy, and not Employers Mutual's, covered the insured's loss; and (2) reimbursement of the funds it paid toward the settlement under a theory of equitable subrogation. Employers Mutual prevailed at trial and Pacific Indemnity appealed on the issue of whether Employers Mutual had satisfied the essential elements of a claim for equitable subrogation.

The trial court ruled that it had, and the Court of Appeals affirmed:

> [I]n view of [Pacific Indemnity's] insistence that [Employers Mutual's] policy covered the accident and that [Pacific Indemnity's] did not, [Employers Mutual's] action in joining in a settlement of Borges' claim for an amount far less than it might have had to pay, if liable, and an amount which was also far less than defendant would have to pay under the clear terms of its policy, was a reasonable action, which took [Employers Mutual] out of the officious intermeddler or volunteer class. Additionally, [Employers Mutual] was under a moral obligation to protect Atkinson since Atkinson in getting insurance from both companies had attempted to get, and thought it had, sufficient coverage to be fully protected. If [Employers Mutual] had followed [Pacific Indemnity's] course of conduct, Atkinson would have been thrown on its own resources although it had paid premiums for protection.

Employers Mut., 167 Cal. App. 2d at 377. The court further observed that "[i]t would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect." Id. at 379 (quoting 50 AM. JUR. p. 699, § 23). Finally, the court stated that were it to rule otherwise, "[e]quity would be performing a very poor function." Id. at 379.

As with the insurers' complementing policies in Employers Mutual, Genesis and National Union provided Magma with separate, consecutive policies of insurance. Genesis correctly believed its policy did not cover the Class Action filed during the National Union policy period. However, National Union denied coverage and refused to participate in the defense and settlement of the claims against Magma. Genesis sought an early judicial determination of its rights, but the Court stayed this action to protect Magma's interests in the Class Action. Having no other option but to abandon its insured (and face a possible bad faith suit if its coverage position proved incorrect), Genesis contributed $5 million to the Class Action's settlement, subject to a full reservation of rights.

National Union was well aware of the settlement negotiations but refused to participate or contribute to the settlement. If the Court determines that the National Union Policy covers the Class Action because the ERII 04/06 Policy has been exhausted, National Union would be liable to Magma for the amount of the settlement. Because Genesis paid this amount on Magma's behalf, it is entitled to recover directly from National Union, as a matter of law, through equitable subrogation. Employers Mut., 167 Cal. App. 2d at 379. The Court should leave intact its prior ruling and find Genesis entitled to equitable subrogation.

**2. The Record Unambiguously Establishes as a Matter of Law that the 04/06 ERII Policy Has Been Exhausted**

The record now establishes that the ERII 04/06 Policy has been exhausted. In the second appeal, the Ninth Circuit found that coverage under the National Union Policy was contingent on the ERII 04/06 Policy being exhausted, but such exhaustion had not been established, and so Genesis was not – at that time – entitled to recover its payment from National Union. Genesis II, 506 F. App'x at 680 ("Coverage under National Union's policy was contingent on exhaustion of the primary coverage provided by [ERII] for the 2004-06 policy period."). Since that time, both Mr. Nace's 2013 declaration and the targeted discovery ordered by the Court establish that the ERII 04/06 Policy, in fact, has been exhausted. With the contingency to coverage under the National Union Policy clearly satisfied, National Union no longer has any defense to coverage, and Genesis is entitled to judgment in its favor.

**a. Mr. Nace's Declaration Establishes that the ERII 04/06 Policy Has Been Exhausted**

Mr. Nace's July 13, 2013 declaration establishes that ERII's payments for the Class Action exhausted the limits of the ERII 04/06 Policy, making coverage available under the National Union Policy. As noted above, ERII initially took the position that the Class Action was covered under its 03/04 policy due to Magma's purported notice of circumstances. After this coverage litigation ensued, ERII informed the Court that because its liability was the same under the ERII 03/04 Policy or the ERII 04/06 Policy, i.e., $10 million, ERII took no position under which policy it should pay. (ERII Statement of Non-Opp. at 6, DE 100 at 6). ERII further stated

it would allocate that payment to – and exhaust the limits of liability of – the ERII 04/06 Policy should the Court determine the Class Action was first made during the 04/06 Policy Period. (Id.).

Though ERII had clearly stated its willingness to reallocate its payments to the ERII 04/06 Policy, at the time of the second appeal the record was silent on whether ERII had actually done so. National Union emphasized the record's silence, stating, "[n]otably, despite having ample opportunity to do so, there has been no evidence, or even a declaration from the Appellees or ERII, produced in this action to support a finding that ERII has ever adjusted its records or that the ERII 04/06 policy has been exhausted." (Olson Decl. Ex. 1, Nat'l Union Reply Br. at 5-6, 11).

After remand from the second appeal, Mr. Nace executed a July 13, 2013 declaration stating that ERII had in fact reallocated its payments for the Class Action to the ERII 04-06 Policy, thereby exhausting that policy. His declaration states:

> 9. . . . [A]t Magma's request, ERII paid the balance of its $10 million Policy limits in settlement of the Securities Class Action and Derivative Action. Recognizing that there existed a dispute as to whether the Securities Class Action and the Derivative Action should be treated as Claim(s) under the 03-04 Policy of the 04-06 Policy, ERII advised Magma that it considered its $10 million payment to exhaust the limits of the 03-04 Policy, but that upon request and in consideration of any findings reached by the court in the present action or otherwise, ERII would reallocate that payment to the 04-06 Policy and deem the 04-06 Policy to be exhausted instead.
>
> 10. ERII has reviewed the arguments and rulings in the District Court and the Ninth Circuit Court of Appeals in this matter, in which it is found that the information provided to Genesis failed to satisfy the notice requirements of EL Coverage Section, § 15(b) of the 03-04 Policy. In consideration of these findings and the similarity of the written information provided to ERII by Magma, ERII has now allocated the payments it made with respect to the Securities Class Action, Derivative Action and the Unfair Practices action to the 04-06 Policy, and so the Policy limits of the 04-06 Policy have been exhausted through payment of these amounts. Because the 04-06 Policy has been exhausted, no further coverage is afforded by ERII under the 04-06 Policy for any matter.

(2d. Am. Compl. Ex. M, DE 254-13 ¶¶ 9-10 (emphasis added)). Mr. Nace's declaration establishes that the ERII 04-06 Policy has been exhausted. Accordingly, the contingency to coverage under the National Union Policy has been satisfied and Genesis is entitled to judgment against National Union on its equitable subrogation claim.

**b. ERII Was Correct in Adjusting its Records to Reflect the Exhaustion of the 04/06 Policy**

It appears that National Union wishes to contend that whatever adjustments ERII may have made, the purported notice ERII received during the 03/04 Policy Period was such that ERII should have treated the Class Action as a claim made during that earlier policy period. The notion appears to be that ERII is estopped from treating its payments in connection with the shareholder action as exhausting its 04/06 Policy because it received a valid notice of circumstances during the 03/04 Policy Period.

This argument leads nowhere because (1) in its first ruling, the Ninth Circuit expressly held that the purported notice provided to Genesis was inadequate ("[t]he notice did not contain any of the specific information called for in Section 15(c) of the policy and falls short of the types of notice we have upheld as sufficiently specific under similar notice provisions"), and (2) discovery has confirmed that ERII received the same inadequate purported notice.

The targeted discovery ordered by the Court establishes that the information Magma provided to ERII during the 03/04 policy period falls well short of the requirements of the ERII 03/04 Policy's notice of circumstances provision. The ERII 03/04 Policy requires <u>written</u> notice of circumstances that must include "a description of the circumstances . . ., the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the . . . circumstances." (2d Am. Compl. Ex. B, DE 254-2 at 24 ("If during the Policy Period an Insured[] . . . becomes aware of circumstances which could give rise to a Claim and gives <u>written</u> notice of such circumstances to the Company . . . .") (emphasis added).

The discovery shows that ERII received only the written materials that Genesis received – the very materials the Ninth Circuit has already held do not satisfy the identical Genesis notice of circumstances provision. <u>Genesis I</u>, 386 F. App'x at 730. Like Genesis, ERII received a September 28, 2004 cover letter from ABD on behalf of Magma. (2d. Am. Compl. Exs. E, F, DE 254-5, DE 254-6). Both cover letters are substantively the same, the only "difference" being that

one is addressed to ERII and references the ERII 03/04 Policy, and the other is to Genesis and references the Genesis Policy. (Id.). As attachments to these letters ABD provided both Genesis and ERII a copy of the patent infringement complaint. (Olson Decl. Ex. 3, R. Jorgensen Dep. Tr. 76:17-77:18). Beyond these items, ABD provided no further written materials to ERII or Genesis.[9] (Id.). (See also Olson Decl. Ex. 2, R. Nace Dep. Tr. 62:4-8).

Discovery thus establishes that Magma's purported written notice of circumstances to ERII was substantively identical to what it gave Genesis. The Ninth Circuit already held such purported notice does not satisfy the 03/04 Policies' notice of circumstances requirements when it ruled in Genesis's favor on this very issue. (USCA Mem. Disp. (Jul. 12, 2010), DE 139). Under the doctrine of law of the case, the Ninth Circuit's holding mandates the same result here with respect to the substantively identical purported notice to ERII. See 9th Cir. R 36-3(a) (authorizing reliance on unpublished dispositions when relevant under doctrine of law of the case). The Court's finding that Magma's purported notice of circumstances under the 03/04 ERII Policy is inadequate will trigger ERII's commitment to adjust its records to reflect the exhaustion of the ERII 04/06 Policy. The ERII 04/06 Policy's exhaustion satisfies the National Union Policy's condition precedent and entitles Genesis to recover against National Union on its claim for equitable subrogation.

The November 9, 2004 telephone call between Mr. Nace and Mr. Jorgensen is irrelevant because, as noted above, the ERII 03/04 Policy requires written notice of the information identified in the notice of circumstances provision. California courts enforce policy provisions requiring notice to be in writing. See, e.g., Kpff, Inc. v. Cal. Union Ins. Co., 56 Cal. App. 4th 963, 974 (1997) (finding that where policy required written notice of circumstances, the court would be "concerned only with written notice that [the insurer] received during the policy

[9] During discovery ERII produced a copy of the Exhibit A to the patent infringement complaint that it appears to have received from ABD. (See Olson Decl. Ex. 5, R. Nace Dep. Ex. 2 at 9-15). That Exhibit A is a 1995 Proprietary Information and Inventions Agreement between Synopsys and a then-employee who subsequently joined Magma. It is unclear whether Genesis received a copy of this document. In any event, the 1995 Proprietary Information and Inventions Agreement is immaterial because it predates Magma's purported notice by nearly a decade and contains none of the specific information called for by the ERII 03/04 Policy's notice of circumstances provision.

period") (emphasis added). Moreover, even if the November 9, 2004 call were considered, the additional information provided still fails to meet the notice of circumstance's requirements. The only new information Mr. Jorgensen gave Mr. Nace during their call was that "Magma had, in the past, had a patent suit become a directors' and officers' liability claim." (2d. Am. Compl. Ex. H, DE 254-8 ¶ 7). This sole additional datum – regarding Magma's experience in prior, unrelated litigation – provides none of the information required by the notice of circumstances provision regarding a potential future claim, i.e., "a description of the circumstances . . ., the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the . . . circumstances." (2d Am. Compl. Ex. B, DE 254-2 at 24).

### B. National Union's Waiver and Equitable Estoppel Affirmative Defenses Are Entirely Unsupported

In yet a further effort to avoid paying out under its policy, National Union asserts that ERII has waived the right to and should be estopped from fixing its records to accurately reflect that its payments for the Class Action exhausted the ERII 04/06 Policy. Specifically, National Union asks the Court to find that ERII has waived its right to and is estopped from: (a) asserting that Magma's notice of the patent infringement action did not constitute a notice of circumstances; (b) asserting it received no notice of circumstances during the policy period for the ERII 03/04 Policy; (c) reallocating its payments to the ERII 2004-06 Policy; and (d) asserting its payments have exhausted the ERII 04/06 Policy. ((Nat'l Union Am. Counterclaim, DE 264 ¶¶ 54, 58). As shown below, these affirmative defenses fail as a matter of law.

Waiver requires an "intentional relinquishment of a known right after full knowledge of the facts." DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd., 30 Cal. App. 4th 54, 59 (1994). "Estoppel is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts" and requires four elements:

> (1) The party to be estopped must know the facts; (2) He must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had

> the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.

Id. (quoting Ins. Co. of the West v. Haralambos Beverage Co., 195 Cal. App. 3d 1308, 1321 (1987)).

The record is clear that ERII never "intentionally relinquished" its right to reevaluate coverage for the Class Action. To the contrary, ERII's initial 2005 coverage letter to Magma stated unambiguously that ERII was "expressly reserv[ing] all rights under the Policy," not relinquishing them. (Aug. 23, 2005 ERII coverage letter, DE 264-5 at 7). This blanket reservation of all rights necessarily included ERII's right to reevaluate whether coverage existed under the ERII 03-04 Policy – the reservation of rights would be meaningless if ERII was barred from determining no coverage existed under the policy. Indeed, National Union's attempt to estop ERII from relying on its reservation of rights is the height of hypocrisy as National Union relied on its own, similar reservation of rights to raise a new coverage defense – the prior notice provision – two and a half years after National Union first received notice. Supra 6.

Moreover, ERII's position on the very policy period issue now before the Court has been clear – and identical to its current position – since at least 2006. ERII's position has consistently been that coverage existed under either its 03/04 policy or 04/06 policy, but not both. To that end, on December 5, 2006, ERII sought a declaratory judgment affirming its position that the Class Action was "properly treated as a single Claim first made during either the 03/04 Policy Period or the 04/06 Policy Period, but not both." (ERII Answer & Counterclaim at 16, DE 26 at 16 (emphasis in original)). ERII reiterated this position in 2008 when Genesis and National Union first moved for summary judgment on the policy period issue, stating "ERII does not take a position with respect to the issue to be determined via the pending motions, that is, whether the 03/04 Policy Period or the 04/06 Policy Period properly applies to the . . . Class Action." (ERII Statement of Non-Opp., DE 100 at 4). At the same time ERII also stated its willingness to allocate all payments to its 04/06 Policy. (Id. at 6). Accordingly, National Union's asserted waiver and estoppel defenses fail because ERII never intentionally relinquished its right to

reevaluate its coverage position and has not altered its longstanding position that coverage may exist under either of its policies, but not both.

Nor can National Union establish the other elements its estoppel defense requires. ERII has consistently and openly stated that it was not opposed to providing coverage under the 04/06 policy period, so long as no coverage existed under the 03/04 policy period, and so National Union cannot show that it reasonably relied on the ERII 04/06 Policy's limits never being exhausted by the Class Action. More important, National Union cannot show that it suffered any injury from its purported reliance. National Union does not want to pay out under its policy and will have to do so now that the ERII 04/06 Policy is exhausted. But living up to one's contractual obligations is not an "injury." National Union voluntarily entered into an insurance contract with Magma to insure claims made against Magma during the 04/06 policy period, and National Union is not injured simply because it must now actually provide the coverage it promised.

### C. Under California Law, Genesis Is Entitled to Prejudgment Interest at a Rate of Ten Percent Per Annum

In addition to reimbursement of the $5 million it advanced toward the settlement, Genesis is entitled to prejudgment interest calculated from July 21, 2008, the date it advanced its $5 million settlement contribution on Magma's behalf. The Court (Judge Ware) previously found Genesis entitled to such an award of prejudgment interest, and there is no reason to disturb this finding. (Mar. 2, 2011 Judgment, DE 200 at 2).

An award of prejudgment interest is intended "to compensate the injured party – to make that party whole for the accrual of wealth which could have been produced during the period of loss." Cassinos v. Union Oil Co., 14 Cal. App. 4th 1770, 1790 (1993). Accordingly, prejudgment interest is a substantive aspect of a claim, and a federal court presiding over a state law claim must look to the law of the state. See Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez), 484 F.3d 1098, 1101 (9th Cir. 2007).

California law provides prejudgment interest for liquidated claims. California Civil Code § 3287(a) (2010) provides, in pertinent part:

> A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt.

CAL. CIV. CODE § 3287(a). This provision's application does not depend on the cause of action asserted. Levy-Zentner Co. v. S. Pac. Transp. Co., 74 Cal. App. 3d 762, 795 (1977) ("the key distinguishing factor [is] not . . . whether the cause of action arose in tort or contract, but rather whether the damages were readily ascertainable.").

Further, "California cases uniformly have interpreted the 'vesting' requirement as being satisfied at the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined." Evanston Ins. Co. v. OEA, Inc., 566 F.3d 915, 921 (9th Cir. 2009). Thus, "[w]hile a factual dispute respecting damages will preclude a grant of prejudgment interest under § 3287(a), a legal dispute will not." Highlands Ins. Co. v. Cont'l Cas. Co., 64 F.3d 514, 521 (9th Cir. 1995). See also Esgro Cent., Inc. v. Gen. Ins. Co., 20 Cal. App. 3d 1054, 1060 (1971) ("Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of [Cal. Civil Code] section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage."); Wisper Corp. v. Cal. Commerce Bank, 49 Cal. App. 4th 948, 958 (1996) ("it is clear that [California] Civil Code section 3287 looks to the certainty of the damages suffered by the plaintiff, rather than to a defendant's ultimate liability, in determining whether prejudgment interest is mandated."). As the Court found, Genesis is entitled to prejudgment interest running from July 21, 2008, the date Genesis advanced its $5 million policy limit to Magma, because on that date the amount of Genesis's damages became certain. (Mar. 3, 2011 Order, DE 200 at 2).

In Evanston Insurance Co. v. OEA, Inc., the Ninth Circuit found that an insurer's claim for reimbursement of funds advanced in defense and settlement of a claim against its insured was a liquidated damages claim to which California Civil Code § 3287(a) applied. Accordingly, the insurer was entitled to reimbursement and prejudgment interest from the date the insurer paid the

funds. 566 F.3d at 921. Genesis is similarly entitled to prejudgment interest on the $5 million it paid toward the Class Action settlement.

The applicable interest rate for the award of prejudgment interest is ten percent (10%). CAL. CIV. CODE § 3289(b) ("[i]f a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."). Clarendon Nat'l Ins. Co. v. Ins. Co. of the West, No. CV F 99 5461 SMS, 2006 WL 2594452, at *3 (E.D. Cal. Sept. 11, 2006), expressly addressed the prejudgment interest rate applicable to one insurer's subrogation claim against another insurer. The court explained that "[t]he right to which [the first insurer] . . . become[s] subrogated is the right to coverage defined by [the second insurer's] policy." Id. "An action for breach of an insurance contract against an insurance company to recover policy benefits is an action to recover damages for breach of contract." Id. Accordingly, the court concluded that California Civil Code § 3289(b) applied to the equitable subrogation claim, making the applicable rate of prejudgment interest 10 percent per annum after the breach. Id.

Genesis's claim against Magma arises as a result of the right to reimbursement implied in its contract of insurance with Magma. See Blue Ridge Ins. Co. v. Jacobsen, 25 Cal. 4th 489, 503 (2001) (insurer deemed to have an implied-in-contract right to reimbursement to avoid insured's unjust enrichment). Accordingly, as the Court previously found, the proper interest rate for this claim is 10 percent per annum.

## V. CONCLUSION

For the foregoing reasons, Genesis is entitled to partial summary judgment against National Union, in the amount of $5 million plus prejudgment interest at the rate of 10 percent per annum.

Dated: January 9, 2015

By: /s/ Robert J. Stumpf, Jr.

Robert J. Stumpf, Jr. (Cal. Bar No. 72851)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
E-mail: RStumpf@sheppardmullin.com

AND

Lewis K. Loss
(Admitted Pro Hac Vice)
THOMPSON, LOSS & JUDGE, LLP
Two Lafayette Centre
1133 21st Street, N.W.
Suite 450
Washington, D.C. 20036
Telephone: (202) 778-4060
Facsimile: (202) 778-4099
Email: lloss@tljlaw.com

*Attorneys for Plaintiff and Counterclaim Defendant Genesis Insurance Company*