**LEWIS BRISBOIS BISGAARD & SMITH LLP**
GLENN A. FRIEDMAN, SBN 104442
Email: glenn.friedman@lewisbrisbois.com
MICHAEL K. JOHNSON, Esq. (SBN 130193)
Email : michael.johnson@lewisbrisbois.com
PAUL A. DESROCHERS, SBN 214855
Email: paul.desrochers@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, CA 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Defendant/Cross-Defendant and Third-Party Plaintiff
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GENESIS INSURANCE COMPANY,<br><br>Plaintiff/Counter-Defendant,<br><br>vs.<br><br>MAGMA DESIGN AUTOMATION, INC. *et al*,<br><br>Defendant/Counter-Claimant. | Case No. 06-CV-05526 EJD<br><br>**NATIONAL UNION FIRE INSURANCE COMPANY'S OPPOSITION TO MAGMA DESIGN AUTOMATION, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Date: February 12, 2015**<br>**Time: 9:00 a.m.**<br>**Crtrm: 4** |
| AND ALL RELATED CROSS-ACTIONS. | |

## TABLE OF CONTENTS


**Page**

**I. INTRODUCTION** ........ 1

**II. NATIONAL UNION'S STATEMENT OF RELEVANT FACTS** ........ 2

- **A. Magma's Directors & Officers Insurance Coverage 2003/2004** ........ 2
- **B. The Patent Infringement Action and Notice of Circumstances** ........ 2
- **C. Magma's Directors & Officers Insurance Coverage 2004/2006** ........ 4
- **D. The Securities Actions** ........ 5
- **E. Magma's Insurance Claims** ........ 5
- **F. The Coverage Litigation** ........ 7
- **G. Settlement Of The Securities Actions** ........ 8
- **H. Status Of This Action** ........ 8

**III. ARGUMENT** ........ 12

- **A. Magma's Misapplies The "Law of the Case" Doctrine in Its Assertion That the ERII 04-06 Policy Is Exhausted** ........ 12
- **B. In Accepting "Notice of Circumstances" As Provided By Magma, ERII Waived The Right To Subsequently Claim That The Notice Received Was Defective** ........ 13
- **C. ERII Is Estopped From Reallocating The Payments Under Its Policies** ........ 16
- **D. Magma's Amended Counter/Cross-Claim Fails to State A Claim On Which Relief Can Be Granted Against National Union Because The *Crowell* And *Willis* Actions Are Not Insurable Claims Pursuant to Insurance Code §§ 22, 250 And The Known Loss Rule** ........ 20
- **E. The "Coverage Gap" Magma Faces Is Not Attributable To Any Conduct Of National Union But Rather, According To The Ninth Circuit, Magma's Failure To Comply With Its Policy Provisions As To The Notice It Provided To Genesis** ........ 22

**IV. CONCLUSION** ........ 23

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Klotz v. Old Line Life Ins. Co. of America*
955 F.Supp. 1183 (N.D. Cal. 1996) .......... 13

### CALIFORNIA STATE CASES

*Chu v. Canadian Indemnity Company*
224 Cal.App.3d 86 (1990).......... 22

*City of Hollister v. Monterey Ins. Co.*
165 Cal.App.4th 455 (2008).......... 14

*Community Redevelopment Agency v. Aetna Casualty & Surety Co.*
50 Cal.App.4th 329 (1996).......... 16

*Elliano v. Assurance Co. of America*
3 Cal.App.3d 446 (1970).......... 14

*General Accident, Fire and Life Assurance Corp. v. Industrial Accident Commission*
196 Cal. 179 (1925).......... 21

*Jogani v. Jogani*
141 Cal.App.4th 158 (2006).......... 19

*Olson v. Standard Marine Ins. Co.*
109 Cal.App.2d 130 (1952).......... 14

*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*
126 Cal.App.3d 596 (1962).......... 16

*People ex rel. Sneddon v. Torch Energy Services, Inc.*
102 Cal.App.4th 181 (2002).......... 19

*People v. Castillo*
49 Cal.4th 145 (2010).......... 19

*Prudential-LMI Commercial Insurance v. Sup. Ct.*
51 Cal.3d 674 (1990).......... 21

*Superior Dispatch, Inc. v. Ins. Corp. of New York*
181 Cal.App.4th 175 (2010).......... 17

### CALIFORNIA STATE STATUTES

California Insurance Code §22.......... *passim*
California Insurance Code §250.......... 20, 22

Defendant/Cross-Defendant and Third-Party Plaintiff NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. ("National Union") submits the following brief in Opposition to the Motion for Partial Summary Judgment filed by Defendant and Counter/Cross-Claimant MAGMA AUTOMATION, INC. ("Magma"):

## I. INTRODUCTION

Magma is correct in its assertion that this case has a long history. However, the one constant throughout the course of the litigation has been the fact that in October 2004, Magma's primary insurer, Executive Risk Indemnity Inc. ("ERII"), explicitly and expressly accepted the information provided to it by Magma as "notice of circumstances" that could lead to a claim under its 2003/2004 claims made policy. This decision by ERII was subsequently relied upon and acted on by Magma and its insurers. Now, however, because Magma faces a gap in coverage due to its own failure to comply with the terms of its insurance policy and its own lack of diligence in securing a response from its first level excess insurer Genesis Insurance Company ("Genesis"), Magma seeks to argue that ERII's acceptance of "notice of circumstances" was improper. In essence, Magma seeks to use its own negligence as a sword and assert that because it failed to properly provide notice to Genesis, ERII's acceptance was improper and should be ignored. The primary insurer ERII's decision to accept "notice of circumstances" was not dependent on what was, or was not, provided to an excess insurer. Magma's argument lacks both legal and factual support and as such should not be considered by the Court.

Along the same convoluted lines, Magma argues that, because the Ninth Circuit ruled in 2010 that Magma's notice **to Genesis** was insufficient, coverage for the Securities Actions automatically falls within the 2004-2006 policy period. This assertion, similar to its argument above, is both logically and factually flawed. Magma's failure to provide adequate "notice of circumstances" **to Genesis** does not bestow coverage on Magma for the subsequent Securities Actions under a subsequent policy.

In making these arguments, Magma appears to be completely ignoring the Ninth Circuit's 2013 decision, which explicitly found that **ERII accepted Magma's notice as adequate** and

specifically stated that no judicial determination had been made to support ERII's transfer of coverage to the 2004-2006 policy period.

## II. NATIONAL UNION'S STATEMENT OF RELEVANT FACTS

### A. Magma's Directors & Officers Insurance Coverage 2003/2004

During the period between December 15, 2003 and December 15, 2004, Magma maintained Directors and Officers ("D & O") liability insurance coverage under a primary policy issued by ERII which provided liability limits of $10 million per claim ("03/04 ERII Policy"). [Magma's Memorandum of Points and Authorities In Support of Motion For Partial Summary Judgment ("Magma MPA") at 3:19] During that same period, Magma maintained first layer excess D&O coverage under a policy issued by Genesis ("Genesis Excess Policy"). [Magma MPA at 3:20] The Genesis Excess Policy followed form to the underlying 03/04 ERII Policy and provided liability limits of $5 million per claim above the primary limits afforded by the 03/04 ERII Policy. [Id.]

Curiously absent from Magma's brief (although included in its previous filings in this action) is any mention of the second layer excess insurer, XL Insurance Specialty Insurance Company ("XL"). XL provided second layer excess D&O coverage for Magma during the 03/04 policy period with liability limits of $5 million per claim above the underlying $15 million in coverage ("XL 03/04 Excess Policy"). [Docket No. ("Dkt No") 176-1] Pursuant to the terms of the XL 03/04 Excess Policy, XL was only responsible for 50% of the liability amount applied to the second layer excess with Magma agreeing to cover the other 50% share. [Dkt No. 176-1]

### B. The Patent Infringement Action and Notice of Circumstances

In September 2004, Magma was sued by Synopsys, Inc., for patent infringement (*Synopsys, Inc. v. Magma Design Automation, Inc.*, Case No. 04-03923 MEJ, hereafter "the *Synopsys* action" and/or "the Patent Infringement Action"). The *Synopsys* complaint alleged that certain patents issued to Magma were based on technology invented by a scientist employed by Magma, Lucas van Ginneken (hereafter, "van Ginneken"), who had previously worked for Synopsys and allegedly developed the technology in question while working for Synopsys [Dkt No. 234-1].

On September 28, 2004, while the 03/04 ERII Policy, the Genesis Excess Policy and the XL 03/04 Excess Policy were in effect, Magma sent ERII, Genesis and XL copies of the complaint in the

Patent Infringement action and requested that the insurers accept the complaint and Magma's letter as ". . . a notice of claim and/or circumstance" under their respective policies. [Dkt Nos. 176-1 and Magma MPA at 6:14-17] ERII issued correspondence to Magma dated October 25, 2004 denying coverage for the Patent Infringement action because the named defendant (Magma) was not an Insured Person under the 03/04 ERII Policy. [Dkt No. 176-4] In addition to issuing correspondence denying coverage for the Patent Infringement action, ERII's adjuster, Mr. Richard Nace ("Nace"), called Magma's general counsel and explained ERII's coverage position. [Declaration of Paul A. Desrochers in support of National Union's Opposition to Magma's MPSJ ("PAD Decl") at ¶ 4, Exhibit ("Ex.") A - Deposition of Richard Nace ("Nace Depo") at 117:10-19 and Nace Depo Ex. 10]

On November 9, 2004, Magma's insurance broker contacted Mr. Nace to discuss Magma's request that ERII acknowledge the Patent Infringement claim as notice of a potential claim under the 03/04 ERII Policy. Magma's broker advised Mr. Nace that Magma had *previously* had a similar type of claim "morph into a D&O [Directors & Officers] matter" and that Magma wanted "to be really careful." [*Id.* at 119:15-120:10 and Ex. 10] That same day, following his communications with Magma's broker, Mr. Nace wrote to Magma and confirmed in writing that ERII would accept the Patent Infringement Complaint and Magma's September 28, 2004 letter as "notice of circumstances that could lead to a claim" under Section 15(b) of the ERII 03/04 Policy. [Dkt No. 176-5] Prior to deciding to accept the information received from Magma as "notice of circumstances that could lead to a Claim under the" 03/04 ERII Policy, Mr. Nace reviewed the *Synopsys* complaint, analyzed the terms of the ERII policy (including policy section 15(b)), reviewed the additional information obtained in his discussions with Magma's broker, and believes he had discussions with others at ERII. [PAD Decl at ¶ 4, Ex. A - Nace Depo at 119:1-14] After doing this, ERII concluded that it would *accept* Magma's notice as a "notice of circumstances that could lead to a claim" under Section 15(b) of ERII's Policy.

After receipt of ERII's November 9, 2004 correspondence accepting the *Synopsys* claim as "notice of circumstances" under the 03/04 ERII Policy, Magma forwarded the letter to its excess insurers. [PAD Decl at ¶ 5, Ex. B - Deposition of Rian D. Jorgensen ("Jorgensen Depo") at 55:19-57:20 and Jorgensen Depo Ex. 12 and 13] On December 28, 2004, XL notified Magma that it was

adopting the same position as ERII and also agreed to accept the Patent Infringement Complaint and Magma's September 28, 2004 letter as "notice of circumstances" under the XL 03/04 Policy. [Dkt No. 176-1]

On October 11, 2004, Genesis responded to Magma's letter tendering the *Synopsys* claim by denying coverage for the Patent Infringement Action and acknowledging receipt of Magma's request that the *Synopsys* complaint and correspondence be accepted as "notice of circumstances." [Dkt No. 279-5 at pg. 30] Contrary to XL, Genesis never responded to Magma's request that the *Synopsys* complaint and correspondence be accepted as "notice of circumstances," but advised Magma that it would issue subsequent correspondence addressing its position on the issue. [*Id.*] However, Genesis never advised Magma as to its position on Magma's "notice of circumstances" request, despite having been sent a copy of ERII's correspondence accepting "notice of circumstances" under the 03/04 ERII Policy. Furthermore, despite having received no response from Genesis as to Magma's "notice of circumstance" request, there is no evidence that Magma ever followed up with Genesis to obtain Genesis' position on the issue or contacted Genesis to provide additional information in support of Magma's request as Magma had done with ERII.

**C. Magma's Directors & Officers Insurance Coverage 2004/2006**

In December 2004, Magma renewed the primary D&O policy issued by ERII, with the renewal policy providing the same coverage terms and limits as the 03/04 ERII Policy with an effective period of December 15, 2004 to December 15, 2006 ("04/06 ERII Policy"). [Magma MPA at 3:25] At that time, Magma replaced the first layer excess policy issued by Genesis with a similar policy issued by National Union effective during the period of December 15, 2004 to December 15, 2006 ("National Union Excess Policy"). [*Id.* at 3:26] The National Union Excess Policy followed form to the underlying 04/06 ERII policy and provided liability limits of $5 million above the primary limits afforded by the 04/06 ERII Policy. [*Id.*] As with ERII, Magma renewed its second layer excess policy with XL, with the renewal policy providing the same coverage terms and limits as the XL 03/04 Excess Policy. However, during the 04/06 policy period, XL agreed to pay 100% of any liability obligations in excess of the underlying coverage, rather than splitting such obligations 50/50 with Magma as was done with the pervious XL 03/04 Excess Policy. [Dkt No.176-1]

In obtaining excess coverage from National Union for the 04/06 policy period, Magma and/or its broker, completed application materials and had discussions with National Union representatives in late 2004. [PAD Decl at ¶ 6, Ex. C at pg 30] In the materials associated with Magma's application for coverage, Magma notified National Union of the Patent Infringement Action and the claims asserted in that action. Notably, **nowhere** in the materials provided to National Union prior to December 15, 2004 did Magma advise National Union of Magma's belief and/or expectation that the Patent Infringement Action would "morph into a D&O [Directors & Officers] claim" as Magma had represented to ERII prior to November 9, 2004. Further, there is no indication that while negotiating with National Union for the excess policy that incepted December 15, 2004, Magma ever advised National Union that it had presented the *Synopsys* matter as a "notice of circumstances" under its existing 03/04 policies nor that it expected and/or anticipated subsequent directors and officers litigation arising from the Patent Infringement Action as previously disclosed to ERII. [*Id.* at pgs. 33 and 36] In fact, Magma's application materials specifically indicate that there is – **<u>NO</u>** – "potential for existing or possible corporate litigation including public awareness of the applicant being named in the near future, to pose risk to the D&O policy." [*Id.*]

**D. The Securities Actions**

In June and July 2005, Magma was sued in a securities class action and a separate shareholder derivative action, both of which were based on allegations that Magma had failed to disclose the risk that it would be held liable for infringing on intellectual property rights held by Synopsys when Magma obtained patents based on technology that had allegedly been invented by van Ginneken while he was employed by Synopsys. (*Cornelia Crowell GST Trust, et al. v. Magma Design Automation, Inc.* USDC Northern District of California, Case No. 05-02394-CRB and *Willis, et al. v. Madhavan, et al.,* Santa Clara County Superior Court Action No. 05-CV-049638, collectively, "the Securities Actions") [Magma MPA at 7:16-22]

**E. Magma's Insurance Claims**

In or around mid 2005, Magma notified ERII, Genesis, National Union and XL of the Securities Actions. [Magma MPA at 7:16 -27 and Dkt No. 176-1] On or about August 12, 2005, ERII's adjuster had discussions with Magma's broker regarding the Securities Actions and ERII's

anticipated coverage position regarding the claims and applicable policy period for the claims. [PAD Decl at ¶ 4, Ex. A - Nace Depo at 121:11-124:13 and Nace Depo Exhibit 10] On August 23, 2005, ERII's adjuster had further discussions with Magma's broker and Magma's general counsel regarding ERII's placing of coverage for the Securities Actions, during which Magma requested that ERII place coverage in the 04/06 policy period because of Magma's concerns with Genesis's reaction to placing coverage in the 03/04 policy period. [*Id.*] Despite Magma's request that coverage be accepted under the 04/06 ERII Policy, ERII determined that coverage was appropriate under the 03/04 ERII Policy pursuant to ERII's previous decision to accept "notice of circumstance" under the 03/04 ERII Policy. On August 23, 2005, ERII issued its coverage opinion informing Magma that coverage was afforded for Magma in the Securities Actions and that coverage would be extended under the 03/04 ERII Policy based on the "notice of circumstances" which Magma had provided (and ERII had accepted) in September 2004. [Dkt No. 176-6] Furthermore, in reliance on the position taken by primary insurer ERII, XL agreed that coverage would be afforded for the Securities Actions under the XL 03/04 Policy based on its own previous acceptance of "notice of circumstances" associated with the *Synopsys* action. [176-1]

Genesis, on the other hand, issued correspondence dated August 31, 2005, objecting to the position taken by the two other 03/04 insurers and, for the first time, asserted that Magma had failed to provide proper "notice of circumstances" to Genesis in accordance with the requirements of the policy in September 2004. Further, Genesis denied coverage for the Securities Actions based on its assertion that the claims arose after the expiration of the Genesis Excess Policy. [Magma MPA at 8:9-12 and Cusack Decl., Exh. N]

In correspondence dated July 1, 2005, National Union initially responded to Magma's tender of the Securities Actions and informed Magma that it was investigating Magma's tender pursuant to a reservation of rights.[PAD Decl at ¶ 9, Ex. F] On August 26, 2005, upon learning that Magma had provided "notice of circumstances" to its 03/04 insurers in conjunction with the Patent Infringement Action and in reliance on ERII's decision to extend coverage for the Securities Actions under the 03/04 ERII Policy based on ERII's previous acceptance of Magma's "notice of circumstances" request under the 03/04 policies, National Union denied coverage. [Magma MPA at 8:4-8 and Cusack Decl.,

Exh. M] In denying coverage for the Securities Actions, National Union's August 26, 2005 letter again informed Magma that the coverage afforded by the National Union Excess Policy was subject to the terms, conditions, exclusions and limitations of coverage set forth in the underlying 04/06 ERII Policy and the National Union Excess Policy and again reserved all its rights, privileges and defenses under its policy. Furthermore, in reaching its coverage determination, National Union's August 26, 2005 correspondence specifically advised Magma that because the claim had been, according to ERII, "**noticed**" during [ERII's] December 15, 2003 to December 15, 2004 Policy Period when National Union's Excess Policy was not a participant in Magma's insurance tower, Magma and the Individual Insured(s) were not afforded coverage under the National Union Excess Policy. [*Id.*]

### F. The Coverage Litigation

Genesis filed a complaint for declaratory relief against Magma in September 2006 seeking a judicial determination that the Securities Actions were not claims first made during the 03/04 policy period and therefore no coverage was afforded for the Securities Actions under the Genesis Excess Policy. [Dkt No. 1] Magma filed a Counterclaim against Genesis and a third party complaint against National Union and ERII seeking a determination as to whether the Genesis Excess Policy or the National Union Excess Policy applied to the Securities Actions (and whether the ERII 03/04 or 04/06 policies provided coverage for the Securities Actions). [Dkt No. 10] National Union answered Magma's third-party complaint in December 2006 and set forth various affirmative defenses to Magma's claims, including affirmative defenses specifically reserving all of National Union's rights, defenses and exclusions under the National Union Excess Policy. [Dkt No. 25]

At Magma's request, the coverage litigation was stayed pending resolution of the Securities Actions. [Dkt No. 48] While the coverage action was stayed, counsel for National Union informed counsel for Magma on several occasions that coverage under the National Union Excess Policy would be based on the actual terms and conditions of the National Union Excess Policy and coverage under the National Union policy was not contingent on whether the Genesis Excess Policy provided coverage under an "either/or" assertion, *i.e.*, that first-layer excess coverage was afforded for Magma in the Securities Actions under either the Genesis excess policy or the National Union excess policy. Specifically, counsel for National Union notified Magma's attorney that Magma might be without

first-layer excess coverage if it did not prevail in establishing coverage under the Genesis Excess Policy period because the National Union Excess Policy could bar coverage for the claim. [Dkt No. 176 at 3:3-18]

**G. Settlement Of The Securities Actions**

The parties to the Securities Actions engaged in settlement discussions in October 2007 and the Actions were settled in principle in November 2007. [Magma MPA at 10:20-21] As part of the negotiations, Magma demanded that Genesis and National Union agree to fund part of the settlement with a contribution from Magma's first layer excess coverage. National Union declined to contribute to the settlement based on its position that there was no coverage under the National Union Excess Policy. [Dkt No. 176 at 3:3-18] The settlement of the Securities Actions was funded by the remaining limits available under the ERII 03/04 Policy, the full limits of the Genesis Excess Policy (allegedly paid under a reservation of rights) and the available limits of the XL 03/04 second-layer Excess Policy [Magma MPA at 11:2-3; and Dkt No. 176-1]

**H. Status Of This Action**

Following settlement of the Securities Actions, the parties resumed the instant litigation and Genesis and National Union filed motions for partial summary judgment. [Dkt Nos. 85 and 87] During briefing on the motions for partial summary judgment, ERII submitted its "Statement of Position" with respect to the then pending motions. [Dkt No. 100] In its "Statement of Position," ERII set forth its analysis of the Securities Actions and the basis for its determination that they constituted "related claims" under the ERII policies at issue. [*Id.* at 4:12–5:9] Further, ERII discussed its acceptance of the Patent Infringement complaint as "'notice of circumstances which could give rise to a Claim' within the meaning of § 15(b) of the EL Coverage Sections of the" ERII policies, and its decision to place coverage for the Securities Actions under the 03/04 ERII Policy. [*Id.* at 5:10–6:4] Finally, ERII specifically advised the Court and all parties to the case that:

> "ERII has committed to contribute what remains of the Limits of Liability to the ERII 03/04 Policy toward settlement of the [Securities Actions]. Upon ERII's contribution toward these settlements, the Limits of Liability of the ERII 03/04 Policy will be exhausted and ERII will have no further obligations under that Policy. If this Court should determine, however, that the [Securities Actions] are properly deemed first made during the Policy Period of the ERII 04/06 Policy

> instead, ERII will adjust its records to reflect that all amounts paid in connection with those actions were paid under the ERII 04/06 Policy. If this should occur, the Limits of Liability of the ERII 04/06 Policy would be exhausted by the amount of ERII's payments instead, and ERII will have no further obligations under that Policy."

[*Id.* at 6:7-6:16]

Furthermore, in support of its opposition to the Genesis and National Union motions for partial summary judgment, Magma submitted a declaration obtained from ERII's adjuster responsible for the handling of the claims at issue in the litigation, Mr. Richard Nace. In his declaration, Mr. Nace specifically stated:

> "5. On or about September 29 2004, ERII's claim department received a letter from Magma's insurance broker, Rian D. Jorgensen of abd Insurance and Financial Services ("abd") dated September 28, 2004, enclosing a copy of the complaint filed in *Synopsys, Inc. v. Magma Design Automation*, United States District Court, Northern District of California, Case No. 3:04-CV-03923 MMC (the "Patent Litigation"). The letter requested that ERII accept the letter as a notice of Claim or as a notice of circumstances that could give rise to a Claim under the 2003 Policy.
>
> 6. On October 25, 2004, I issued a letter to Beth Roemer of Magma denying coverage for the Patent Litigation. On or about November 9, 2004, before the expiration of the 2003 Policy, I received a phone call from Rian Jorgensen of abd wherein he requested that ERII accept the Patent Litigation as a notice of circumstances that could give rise to a Claim under the 2003 Policy.
>
> 7. During our conversation, Mr. Jorgensen informed me that Magma had, in the past, had a patent suit become a directors' and officers' liability claim. On or about November 9, 2004, I sent a letter dated November 9, 2004 to Ms. Roemer at Magma accepting the Patent Litigation as notice of circumstances that could give rise to a Claim under the 2003 Policy pursuant to Section 15(b) of the Executive Liability and Entity Securities Liability Coverage Section of the 2003 policy ("Notice of Potential Claim" or "NOPC")."

[Dkt No. 104 at 2:25-3:14]

After hearing the parties competing summary judgment motions, the Court issued an Order on July 24, 2008, denying Genesis's motion and granting in part and denying in part National Union's motion [Dkt No. 112]. Genesis appealed from this Order once it became final [Dkt No. 121].

On July 12, 2010, the Ninth Circuit Court of Appeals issued an Opinion reversing this Court's determination on the parties' cross-motions for partial summary judgment and remanding the case to this court for further proceedings [Dkt No. 139]. In its Opinion, the Ninth Circuit found that Magma

had provided Genesis with notice in September 2004, but that the notice provided by Magma to Genesis did not contain all of the specific circumstances information called for in the notice provision of the Genesis Excess Policy. The Ninth Circuit did **not** address the adequacy of Magma's notice to ERII or ERII's acceptance of notice of circumstances under the 03/04 ERII Policy. [Dkt No. 139]

Following remand and pursuant to the District Court's August 19, 2010 Scheduling Order, Genesis filed an Amended Complaint and Magma filed an Amended Counter/Cross-claim on September 13, 2010 [Dkt Nos. 153 and 154]. National Union thereafter filed motions to dismiss Genesis's Amended Complaint and Magma's Amended Counter/Cross-claim pursuant to FRCP Rule 12(b)(6) [Dkt Nos. 158 and 161]; Magma filed a motion for summary judgment as to Genesis and a motion for summary adjudication as to National Union [Dkt No. 168]; and Genesis filed a motion for summary judgment [Dkt No. 169]. After a hearing on the motions, the District Court issued an Order on December 20, 2010 granting in part and denying in part the summary judgment motions filed by Genesis and Magma and denying National Union's motions to dismiss as moot. [Dkt No. 186]

National Union filed a Notice of Appeal with respect to the District Court's Order on April 1, 2011 [Dkt No. 202]. Following briefing and oral argument, the Ninth Circuit issued an Order on February 5, 2013 which held that because the District Court had previously determined that Magma's notice to Genesis did not comply with the notice provisions of the Genesis policy, that notice was not given under the Genesis policy and therefore, the "prior notice" exclusion in the National Union Excess Policy did not apply. Furthermore, in its opinion the Court of Appeal specifically found that:

> "2. Coverage under National Union's policy was contingent on exhaustion of the primary coverage provided by Executive Risk Indemnity, Inc.("ERII"), for the 2004-06 policy period. ERII, however treated the 2005 lawsuits as claims under Magma's 2003-04 policy. ERII's statement that it would "adjust its records" to reflect exhaustion of the 2004-06 policy was explicitly contingent on a judicial determination that its decision was incorrect.
>
> **There has been no such determination.** Our prior decision dealt only with notice to Genesis. **ERII, by contrast, accepted Magma's notice as adequate.** Because Genesis failed to establish that ERII's 2004-06 policy had, as a matter of law, been exhausted, we reverse the district court's partial summary judgment." (emphasis added)

[Dkt No. 208]

Accordingly, because Magma failed to establish that the underlying 04/06 ERII policy was exhausted, the Ninth Circuit reversed the District Court's Order granting partial summary to Magma and National Union's motions to dismiss were revived. The Ninth Circuit's Memorandum directed the District Court to address the merits of National Union's motions to dismiss on remand and noted that "**[s]hould it deny the motion**, it must then determine whether ERII correctly treated the patent-infringement complaint as notice of circumstances that could give rise to a covered claim under its policy." (Emphasis added) [*Id.*]

On remand to this Court for hearing on National Union's 12(b)(6) motions, Genesis filed a document entitled "Declaration of Richard F. Nace, Jr." which was allegedly prepared by Mr. Nace on or about July 23, 2013 ("Nace 2013 Decl."). [Dkt No. 245] In this new declaration, Mr. Nace states that he was responsible for handling the claims at issue for ERII; affirms that ERII advised Magma that it considered its $10 million payment for settlement of the Securities Actions to exhaust the limits of the ERII 03/04 Policy; and further declared that ERII has since reviewed the findings of the Ninth Circuit and, ***based upon its own interpretation of the Ninth Circuit's rulings***, had decided to reallocate its payments for the Securities Actions from the 03/04 policy period to the 04/06 policy period thereby exhausting the ERII 04/06 Policy. [*Id.*]

ERII's reallocation of the payments from one policy to another policy is in direct contradiction of prior statements by Mr. Nace and ERII's representations to the Court. In his previous declaration, Mr. Nace specifically stated that ERII determined that the 03/04 policy period was the appropriate period for covering the Securities Actions and had accepted Magma's notice of circumstances. Further, pursuant to ERII's statement of position [Dkt No. 100] ERII advised the Court and all parties to the litigation that it would not reallocate the proceeds of its policies until there was a judicial finding and declaration from the Court that the funds should be reallocated.

As affirmed by the Ninth Circuit Court of Appeal's 2013 decision, there has been no judicial determination that ERII's decision to accept the information provided by Magma as a notice of circumstances under its 03/04 policy was improper nor has there been a determination that ERII's decision to place coverage for the Securities Class Action and the Derivative Action under the ERII 03/04 Policy was incorrect. [Dkt No. 208] Further, ERII and its customer Magma cannot agree to

circumvent the judicial proceedings and agree to adjust ERII's records to shift payments to the ERII 04/06 Policy – several years after the payments were made – and without notice to the excess carriers.

On December 5, 2013, this Court granted National Union's FRCP 12(b)(6) motions and dismissed Genesis's Amended Complaint and Magma's Amended Counter/Cross-claim with leave to amend. [Dkt No. 253] In reliance on the assertions in the Nace 2013 Declaration, Genesis filed a Second Amended Complaint again seeking to recover the monies it paid in settlement of the Securities Actions from National Union based on its alleged entitlement to subrogation. Similarly, Magma filed a Cross-Claim against National Union seeking coverage for the Securities Actions based on its contention that the limits of the underlying ERII 04/06 Policy have now been exhausted. [Dkt Nos. 254 and 255] National Union answered the Genesis complaint [Dkt No. 256] and the Magma Counter/Cross-claim [Dkt No. 258] asserting defenses to the claims, including, but not limited to, waiver and estoppel as it pertains to ERII's alleged adjustment of its accounts.

## III. <u>ARGUMENT</u>

In its February 5, 2013 Order, the Ninth Circuit mandated that the District Court was to determine the propriety of ERII's acceptance of notice of circumstances under the 03/04 policy year. Notwithstanding that no such determination has ever been made by **any** court, Magma's Motion for Partial Summary Judgment seeks to sidestep that directive by claiming that National Union should now pay its policy limits under the 04/06 policy year after ERII ministerially shifted coverage to the 04/06 year. Magma's motion should be denied and a determination made by the Court regarding the propriety of ERII's acceptance of the notice of circumstances provided by Magma under the ERII 03/04 Policy in accordance with the Ninth Circuit's directive.

### A. Magma's Misapplies The "Law of the Case" Doctrine in Its Assertion That the ERII 04-06 Policy Is Exhausted

The underlying logic behind Magma's assertion as to the "law of the case" is flawed. Magma argues that because the Ninth Circuit in 2010 found that its attempt to provide "notice of circumstances" to Genesis under the Genesis Excess Policy was defective, the "notice of circumstances" that Magma provided to ERII also was defective, because it contends ERII received the same information as that provided to Genesis. However, in making this argument, Magma seeks

to ignore the simple fact that **ERII chose to accept** the information it received as adequate and notified Magma and the excess carriers that ERII accepted the notice provided as "notice of circumstances" under its primary policy.

Furthermore, Magma ignores the fact that the Ninth Circuit, in its 2013 decision, directly addressed this issue and found that ERII had accepted "notice of circumstances" under the ERII 03/04 Policy and further stated that there had been **no** determination that ERII's decision to place coverage for the Securities Actions under the ERII 03/04 Policy was incorrect. Accordingly, and contrary to Magma's assertions, the "Law of the Case" holds that ERII accepted Magma's "notice of circumstances" as adequate.

### B. In Accepting "Notice of Circumstances" As Provided By Magma, ERII Waived The Right To Subsequently Claim That The Notice Received Was Defective

Magma would have the Court believe that the exhaustion issue has now been resolved because ERII has unilaterally shifted post hoc the payments that it provided on behalf of Magma under the ERII 03/04 Policy to the ERII 04/06 Policy, based upon its reevaluation of the issue years after the payments were made and based on its own interpretation of the Ninth Circuit's opinions. However, as set forth below, the alleged basis for ERII's adjustment of its records and shift of coverage to the ERII 04/06 Policy is flawed, and having expressly stated in writing that it accepted the information provided by Magma as "notice of circumstances" under Section 15 of the ERII 03/04 Policy and where that written decision was relied upon by other insurers, ERII has waived the right to assert that it never should have accepted the notice given to it as "notice of circumstances" under Section 15 of ERII's 03/04 Policy.

Waiver is the intentional relinquishment of a known right. *Klotz v. Old Line Life Ins. Co. of America*, 955 F.Supp. 1183, 1186 (N.D. Cal. 1996) ("In general, to constitute a waiver, there must be an existing right, a knowledge of its existence, an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.") Thus, waiver may be express or implied. Further, unlike estoppel waiver does not depend on any other party's conduct. "The essence of waiver . . . is the voluntary relinquishment of a known right, which may be effective as a matter of law without any demonstration that the other party

was caused by the waiver to expose himself to any harm." *City of Hollister v. Monterey Ins. Co.*, 165 Cal.App.4th 455, 487 (2008).

When ERII received Magma's communication to the effect that the Patent Infringement Action might turn into a lawsuit against Magma's directors or officers (since that had apparently happened before), ERII's claim manager stood by its original denial of coverage for the *Synopsys* litigation under the 03/04 Policy, but acknowledged specifically that ERII "hereby accepts the Complaint as notice of circumstances that could lead to a **Claim** under the Policy, pursuant to Policy Section 15(b)." [Magma MPA at 7:5, Cusack Decl., Exh. J]

When ERII made that statement in its November 9, 2004 letter, ERII clearly understood the requirements for notice of circumstances set forth in Section 15 of its own policy. ERII also understood that accepting the *Synopsys* complaint as a "potential **Claim**" meant that if the circumstances at issue in that lawsuit eventually led to a claim against an insured under the ERII 03/04 Policy, the subsequent claim would be treated as having been received under the ERII 03/04 Policy. It was ERII's customer Magma in 2004 that was insisting that this information be deemed a notice of circumstances based on Magma's past experience. Moreover, ERII, after obtaining additional information from Magma, concluded that more details and information from Magma was not needed for purposes of a Section 15 notice of circumstances and stated in writing that Magma's notice was *accepted* as a "notice of circumstances" under Section 15 of ERII's Policy.

Thus, ERII *expressly waived* the right to subsequently disavow the "notice of circumstances" that it affirmatively accepted. Insurers frequently waive conditions under their own policies, although such waiver is usually implied, not express as in this case. *See, e.g., Olson v. Standard Marine Ins. Co.*, 109 Cal.App.2d 130, 137 (1952) (insurer waived right to require sworn proof of loss within 90 days when it wrongly repudiated policy before 90 days expired); *Elliano v. Assurance Co. of America*, 3 Cal.App.3d 446, 449 (1970) (right to deny claim for lack of sworn proof of loss was waived when adjuster accepted insurer's written estimate and entered into lengthy settlement negotiations without requesting formal proof of loss).

/ / /

/ / /

Contrary to Magma's assertion and Mr. Nace's 2013 declaration,[1] ERII did *not* reserve the right to refute its own acceptance of the "notice of circumstances" that could lead to a potential claim – as indeed it could hardly have done so without making nonsense of its own acceptance. In fact, a plain reading of ERII's November 9, 2004 correspondence shows that, in accepting the notice of circumstances, ERII solely reserved its rights "to deny coverage and/or rescind the Policy…." Thus, the reservation of rights on coverage in the November 9, 2004 letter did not affect the waiver of a condition, and ERII's efforts to retroactively revoke its acceptance of "notice of circumstances" years later should not be permitted. It appears now, that in a contrived effort to circumvent the fact that the underlying ERII 04/06 Policy had not been exhausted, Magma contacted ERII and requested that ERII shift coverage to the 04/06 policy period and exhaust the ERII 04/06 Policy. [Dkt No. 245 at 25:9-25]. This conduct by Magma and ERII, agreeing to shift coverage from one policy period to another policy period, to the detriment of its excess insurers, years after the original primary policy has been exhausted, is unique; seeks to ignore the established facts (*i.e.*, that ERII accepted notice of circumstance under, and placed coverage for the Securities Actions under the ERII 03/04 Policy and paid the remaining limits available under that policy in settlement of the Securities Actions) and does not comport with standard practices in the insurance industry. [Declaration of Joseph P. Monteleone In Support Of National Union's Opposition To Magma's MPSJ at 8:25-9:9][2]

Despite Magma's assertions to the contrary, the Ninth Circuit's decision regarding the lack of sufficiency of Magma's notice to Genesis is irrelevant as to ERII's conduct in handling the claims at issue. The ruling by the Court of Appeal adjudicated the right of *Genesis* to dispute the sufficiency of the notice - it did not address the fact that ERII accepted *for itself* the potential for future claims under the 2003-2004 policy, a fact that the Ninth Circuit specifically affirmed in its 2013 decision. [Dkt No.

---

[1] It should be noted that Mr. Nace's 2013 declaration differs significantly from his prior 2008 declaration on this very issue in that while attesting to the fact that ERII accepted "notice of circumstances" under the ERII 03/04 Policy, Mr. Nace made no mention of having reserved any rights related to this acceptance.

[2] A primary insurer and an insured, who were both complicit in the communications that occurred between September 2004 and November 2004 regarding notice (to which National Union was not privy), have agreed to create insurance coverage under another insurer's policy for the benefit of the insured - several years after the primary insurer's payments

208] As such, the stated basis for ERII's determination to reallocate its payments to the 04/06 policy period is in direct conflict with the Ninth Circuit's ruling as well as ERII's stated position regarding the litigation. [Dkt Nos. 100, 104, 208, and 245] Therefore, ERII's reallocation of policy payments from the ERII 03/04 Policy to the ERII 04/06 Policy is improper and Magma should be precluded from relying on this conduct to demonstrate exhaustion of the ERII 04/06 Policy.

"It is settled under California law that an excess or secondary policy does not cover a loss, nor does any duty to defend the insured arise until all of the primary insurance has been exhausted." *Community Redevelopment Agency v. Aetna Casualty & Surety Co*., 50 Cal.App.4th 329, at p. 339 (1996); accord, *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal.App.3d 596, at p. 600 (1962). The Ninth Circuit specifically found that ERII *accepted* Magma's "notice of circumstances", that ERII *defended* Magma in the Securities Actions under the coverage afforded by the ERII 03/04 Policy and that ERII did so based on its determination that the Securities Actions arose from the same circumstances as the matter which was the subject of Magma's "notice of circumstances," *i.e.*, the Patent Infringement action. [Dkt No. 208] It is also undisputed that ERII (and XL, Magma's second-layer excess insurer) funded the settlement of the Securities Actions under the coverage provided by their respective 03/04 policies. Accordingly, as Magma can not demonstrate exhaustion of the ERII 04/06 Policy, there is no coverage under the National Union Excess Policy, and Magma's motion should be denied.

**C. ERII Is Estopped From Reallocating The Payments Under Its Policies**

Magma asserts that, despite the fact that ERII accepted "notice of circumstances" under the ERII 03/04 Policy, placed coverage for the Securities Actions in the 03/04 policy period, and settled the Securities Actions with the remaining proceeds of the ERII 03/04 Policies, ERII can now simply "shift" coverage to a subsequent policy period years later because the notice Magma gave to Genesis was held to be inadequate. While this notion fits with the district court's previously stated view that it would find coverage either under one excess policy or the other, it entirely ignores the facts of the case.

ERII chose to accept Magma's notice of potential future claims under the 03/04 policy year. National Union was not privy to any additional facts or communications between the primary insurer

and Magma before the National Union policy incepted which caused the primary insurer to accept Magma's notice. However, the primary insurer provided coverage for the Securities Actions under the ERII 03/04 Policy and paid the remaining limits available under the ERII 03/04 Policy in settlement of the Securities Actions.

Based upon the foregoing, the equitable principle of estoppel precludes shifting coverage to a subsequent policy year to the detriment of an excess insurer which had taken positions in reliance on the primary insurer's acceptance of coverage under its 03/04 policy. Similarly, Magma and ERII are precluded from ignoring Magma's insistence that ERII accept Magma's notice as a "notice of circumstances and from ignoring ERII's acceptance of Magma's notice as "notice of circumstances" under its 03/04 policy and then, shifting coverage for the loss years later to the subsequent policy, the ERII 04/06 Policy.

In contrast to waiver, estoppel is created by the effect of the party's representations/conduct on another party. "To create an equitable estoppel, 'it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' [Citation]" *Superior Dispatch, Inc. v. Ins. Corp. of New York*, 181 Cal.App.4th 175, 187 (2010).

In this case, it is undisputed that ERII accepted Magma's "notice of circumstances" under the ERII 03/04 Policy and, pursuant to its determination that the Securities Actions were related to and arose from the facts alleged in the Synopsys case, placed coverage for the Securities Actions under the ERII 03/04 Policy. Furthermore, ERII advised National Union of ERII's acceptance of notice of circumstances in the prior policy year and its placement of coverage for the Securities claims in that policy period. In light of these actions, National Union denied coverage for the Securities Actions as the primary policy to which it was excess was not participating on the claim. Furthermore, based on ERII's determinations as to the placement of coverage for the claim, National Union did not contribute toward settlement of the case as its policy year was not implicated.

As discussed above, ERII, upon acceptance of Magma's requested "notice of circumstances," waived the right to subsequently reject its acceptance of Magma's "notice of circumstances" and thereby shift coverage to the subsequent policy year. Accordingly, National Union was justified in

relying on ERII's stated position as to the "notice of circumstances" issue and its determination as to the placement of coverage in the 03/04 policy period. Similarly, Magma's second layer excess carrier, XL, relied upon ERII's placement of coverage in the 03/04 policy period in its decisions to participate in the settlement of the Securities Actions.

Magma portrays the "shifting" of coverage from the 03/04 policy year to the 04/06 policy year as if it were a mere ministerial accounting task when in fact substantive positions were previously taken by the excess insurers in reliance on ERII's acceptance of "notice of circumstances" and the placement of coverage in the 03/04 policy year. For example, XL followed the decision of ERII as the primary insurer on its policy tower and also accepted the information it received from Magma as "notice of circumstances" under its 03/04 policy. [Dkt No. 176-1] Furthermore, XL participated in funding the settlement pursuant to that determination.

Magma contends that National Union was not justified in relying on ERII's determinations as to the "notice of circumstances" and placement of coverage for the Securities Actions, because ERII had issued a reservation of rights and had filed a statement of position in the action indicating its intent to place coverage in whichever policy period the Court determined was appropriate. However, as discussed above, ERII's reservation of rights was limited to its determination of coverage for claims asserted against Magma, not as to its acceptance of Magma's "notice of circumstances." Accordingly, National Union was justified in relying on ERII's acceptance of the "notice of circumstances." Moreover, National Union was justified in its refusal to contribute toward the settlement as, based on ERII's handling of the claims, the National Union Excess Policy was not implicated.

Separate and apart from National Union's justified reliance on ERII's acceptance of the "notice of circumstances," National Union was justified in relying on ERII's statement of position in this action. As set forth in the Ninth Circuit's 2013 decision, "ERII's statement that it would 'adjust its records' to reflect exhaustion of the 2004-06 policy **was explicitly contingent on a judicial determination that its decision**" to treat the 2005 lawsuits as claims under Magma's 2003-04 policy was incorrect. [Dkt No. 208] (Emphasis added) Further, with regard to ERII's stated position, the Ninth Circuit specifically stated that **"[t]here has been no such determination**." (Emphasis added)

[*Id.*] Accordingly, as there has been **no** judicial determination that ERII was incorrect in its decision to treat the Securities Actions as claims under the ERII 03/04 Policy, ERII is estopped from unilaterally deciding to move coverage to the ERII 04/06 Policy.

Based on the doctrine of preclusion of inconsistent positions (or quasi-estoppel), a litigant is precluded from asserting a position in a legal proceeding that is contrary to a position previously taken in the same proceeding when such positional changes have an adverse impact on the judicial process. (*See Jogani v. Jogani*, 141 Cal.App.4th 158 (2006)). The doctrine is intended to maintain the integrity of the judicial system as well as protect the parties from opponents' unfair strategies and requires no showing of detrimental reliance. (*People v. Castillo*, 49 Cal.4th 145, 156 (2010).)

The doctrine of quasi-estoppel is used to prevent internal inconsistencies during litigation and to prohibit parties from changing positions according to exigencies of the moment. (*See People ex rel. Sneddon v. Torch Energy Services, Inc.*, 102 Cal.App.4th 181 (2002).) The courts apply the doctrine where: (1) the same party has taken two positions; (2) the positions were taken in judicial proceedings; (3) the party was successful in asserting the first position; (4) the positions are inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. (*People v. Castillo, supra*, 49 Cal.4th at 155.)

In the present action, the doctrine of quasi-estoppel precludes ERII from unilaterally changing its position regarding its acceptance of "notice of circumstances" under the ERII 03/04 Policy and its decision to place coverage for the Securities Actions under the ERII 03/04 Policy pursuant to its acceptance of "notice of circumstances." A constant throughout the course of this matter has been the fact that ERII accepted the "notice of circumstances" it received from Magma under the ERII 03/04 Policy. At no time prior to the filing of the Nace 2013 Declaration had ERII asserted that its acceptance of the "notice of circumstances" was "subject to a reservation of rights." [Dkt No. 104 at 2:9-14; Dkt No. 100 at 5:17-20] In fact, as mentioned previously herein, ERII's November 9, 2004 correspondence accepting "notice of circumstances" did not assert any reservation of rights as to ERII's decision to accept "notice of circumstances" pursuant to section 15(b) of the ERII 03/04 Policy as it only reserved its rights "…to deny coverage and/or to rescind the Policy..." [Magma MPA at 7:5-6, Cusack Decl., Exh. J] As such, ERII's decision to now revoke its acceptance of "notice of

circumstances" is inconsistent with its previously stated position in this litigation, upon which both the parties and Court have relied. In fact, based on the Ninth Circuit's 2013 decision overturning judgment against National Union, the Ninth Circuit specifically noted ERII's acceptance of "notice of circumstances" as the basis for the handling of Securities Actions under the ERII 03/04 Policy and stated that there has been no judicial determination that ERII's actions were incorrect. [Dkt No. 208]

Finally, there has been no evidence presented by any party that ERII's acceptance of "notice of circumstances" was the result of ignorance, fraud, or mistake. In fact, Mr. Nace's deposition testimony and 2008 declaration clearly demonstrate that in performing its analysis of the information provided by Magma, ERII chose not to request any additional information (and did not expect to receive any additional information), and based on the information received, accepted notice of circumstances under the ERII 03/04 Policy. [PAD Decl at ¶ 4, Ex. A - Nace Depo at 62:22-64:19] Accordingly, having satisfied the elements of quasi-estoppel, National Union asserts that ERII is precluded from revoking its acceptance of "notice of circumstances" under the ERII 03/04 Policy and is further precluded from shifting coverage of the Securities Claims to the 04/06 policy period without a judicial determination that its prior handling of said claims was incorrect.

### D. Magma's Amended Counter/Cross-Claim Fails to State A Claim On Which Relief Can Be Granted Against National Union Because The *Crowell* And *Willis* Actions Are Not Insurable Claims Pursuant to Insurance Code §§ 22, 250 And The Known Loss Rule

Moreover, Magma has not and indeed cannot allege facts that demonstrate that the *Crowell* and *Willis* actions constitute covered losses under the National Union Excess Policy. Based on the Nace 2008 Declaration, procured and submitted *by Magma* in support of its Opposition to the prior summary judgment motions, it is clear that by late 2004 (**prior to obtaining excess coverage from National Union**), Magma was aware of the potential that a "directors and officers liability claim" was likely to arise out of the *Synopsys* action. [Dkt No. 104, 2:9-10] Magma's Amended Counter/Crossclaim makes it clear that the National Union Excess Policy was not issued until after the initial loss had occurred (*i.e.*, the filing of the *Synopsys* action and the matters alleged therein). [Dkt No. 154 at 9:16-26 and 10:10-22] This fact coupled with the information from the Nace 2008 Declaration (*i.e.*, that Magma advised ERII that Magma suspected that there could be future directors

and officers claims as a result of the *Synopsys* action) is fatal to any claim for coverage under the National Union Excess Policy.

It is a well-established principle of insurance law that one cannot obtain insurance coverage for a loss *after* a loss is known or is apparent. As stated in Insurance Code § 22:

> "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a **contingent or unknown event.**" (Emphasis added.)

Under the circumstances of this case and applicable law, there can be no coverage for the Securities Actions since they arose out of the same facts and/or circumstances alleged in the Patent Infringement Action and Magma knew or suspected that such claims were likely to be brought before Magma sought an excess insurance policy from National Union. In its Amended Counter/Crossclaim, Magma attempts to "create" coverage by alleging that the Securities Actions were brought during the National Union Excess Policy period, and pretends that there were no communications with ERII between September 2004 and November 2004 about potential future claims prior to the December 15, 2004 inception of the National Union Excess Policy. In fact, ERII determined that the Securities Actions were the very type of claims Magma advised it of when it sought and obtained acceptance of "notice of circumstances" in November 2004. [Dkt No. 100 at 2:20-4:22] The available evidence demonstrates, however, that Magma chose not to disclose to National Union the notice that Magma had given to its prior insurers when Magma applied for coverage with National Union [PAD Decl at ¶ 6, Ex. C]. Magma's selective pleading of facts cannot create coverage under an insurance policy for a loss (or anticipated loss) of which Magma was aware prior to obtaining coverage, because that would contravene Insurance Code § 22.

Insurance Code § 22 forms an integral part of every contract of insurance issued in the State of California. *General Accident, Fire and Life Assurance Corp. v. Industrial Accident Commission*, 196 Cal. 179, 187 (1925). The California Supreme Court reaffirmed the validity of the "loss-in-progress rule" reflected in Insurance Code § 22 in *Prudential-LMI Commercial Insurance v. Sup. Ct.*, 51 Cal.3d 674, 695 at N.7 (1990), stating ". . . : the loss-in-progress rule codifies a fundamental principle of insurance law that an insurer cannot insure against a loss that is known or apparent to the insured."

/ / /

The Fourth District Court of Appeal has also explained:

> "The concept of 'fortuity' is basic to insurance law. Insurance typically is designed to protect contingent or unknown risks of harm (Ins. Code §§ 22, 250), **not to protect against harm which is certain or expected**. (Citation) Insurance protects against risks of loss, not certainties of loss."

*Chu v. Canadian Indemnity Company*, 224 Cal.App.3d 86, 94-95 (1990). (Emphasis added.)

In this case Magma did not apply for excess insurance from National Union until after it was aware of the likelihood of, and/or expected, that actions such as the *Crowell* and *Willis* lawsuits were forthcoming and failed to disclose this knowledge to National Union.[3] Accordingly, because the National Union Excess Policy was not in effect when Magma first appreciated and/or formed an expectation regarding future claims arising out of the *Synopsys* action, there can be no coverage under the National Union Excess Policy for the Securities Actions, regardless of the date on which the Securities Actions were filed.

### E. The "Coverage Gap" Magma Faces Is Not Attributable To Any Conduct Of National Union But Rather, According To The Ninth Circuit, Magma's Failure To Comply With Its Policy Provisions As To The Notice It Provided To Genesis

Magma asserts that because there is no coverage under the Genesis excess policy, the Court **must** find coverage under the National Union policy, based on Judge Ware's comments during oral arguments that he was not going to leave the insured without coverage. [PAD Decl at ¶ 7, Ex. D at 54:24-55:4] However, while this may have been Judge Ware's view of the case, it does not appear that his view was shared by the Ninth Circuit, which specifically found that it was Magma's own failure to comply with the terms of its policy which precluded imposing liability upon Genesis under the "notice of circumstances" provision of the policy. [Dkt No. 139] It is also belied by the communications between Magma's and National Union's counsel prior to Magma's settlement of the Securities Actions. [Dkt No. 176 at 3:3-18] It should be further noted that this assertion directly

---

[3] This is particularly evident when one reviews the allegations in the *Crowell* and *Willis* actions regarding the conduct of Magma's officers and directors following the filing of the Synopsis case related to their sale of large amounts of stock in the company in anticipation of the impending release of information as to the validity of the claims in the *Synopsis* case. [Dkt No. 234-3 at pgs. 21-22]

contradicts Magma's counsel's arguments to the Ninth Circuit Court of Appeal on this very issue. Specifically, during the hearing on Genesis's appeal, Magma's counsel stated as follows:

> "The Notice of Circumstance provision specifically is intended to address a gap in coverage that would otherwise occur if it didn't exist because if the insured like Magma knows that there's trouble brewing, there may be a claim coming, but no claim has actually been asserted yet, it has nothing to report to its current claims made carrier in order to get coverage. But when it goes to apply for coverage next year, that carrier, *assuming Magma discloses it as it should*, is going to say, we're not going to cover at all or we're not going to cover that claim. And if it doesn't disclose it, it's going to be subject to a rescission argument that knowledge then suddenly creates an uncovered claim under the structure of claims made policies."

[PAD Decl at ¶ 8, Ex. E, at 18:23-19:12] (Emphasis added.)

If the "notice of circumstances" which Magma provided to Genesis had complied with the specific requirements of the notice provision, there would in all likelihood have been no dispute before the Court. The problem facing Magma is that as a result of the particular notice that Magma provided to Genesis, the Ninth Circuit has now determined that Genesis is not obligated to provide coverage for the Securities Actions under the Genesis Excess Policy. In essence, Magma is seeking to hold National Union responsible for Magma's failure in the fall of 2004 to provide adequate "notice of circumstances" to Genesis prior to National Union ever issuing its Excess Policy to Magma. In that regard, the "gap in coverage" is entirely of Magma's own making and National Union should not be penalized for Magma's failure to comply with obligations it owed to Genesis to preserve coverage under its 2003/2004 policy.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, Magma's Motion for Partial Summary Judgment should be denied. ERII has waived the right to subsequently revoke its decision to accept "notice of circumstances" under the ERII 03/04 Policy and is estopped from changing its positions as to the "notice of circumstances" and the placement of coverage for the Securities Actions, without a judicial determination that its actions were incorrect. Further, pursuant to Insurance Code § 22 and the doctrine of fortuity, there is no coverage for the Securities Actions under the National Union Excess Policy.

/ / /

DATED: January 22, 2015

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Paul A. Desorchers*
Glenn A. Friedman
Michael K. Johnson
Paul A. Desorchers
Attorneys for Defendant and Counter/Cross Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

File No. 6234.4935

**CERTIFICATE OF SERVICE**

***Genesis Insurance Company v. Magma Design Automation, Inc. et al.***

USDC – Northern District, San Jose Division Case No. 5:06-CV-05526-EJD

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 333 Bush Street, Suite 1100, San Francisco, California, 94104. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On January 22, 2015, I served the following document:

**NATIONAL UNION FIRE INSURANCE COMPANY'S OPPOSITION TO MAGMA DESIGN AUTOMATION, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I served the document on all parties in this matter by CM/ECF. The document was served by the following means:

☒ The document was served via CM/ECF (all parties are registered for CM/ECF):

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

Dated: January 22, 2015

*<u>/s/ B. Yasinah Johnson</u>*

B. Yasinah Johnson