**LEWIS BRISBOIS BISGAARD & SMITH LLP**
GLENN A. FRIEDMAN, SBN 104442
Email: glenn.friedman@lewisbrisbois.com
MICHAEL K. JOHNSON, Esq. (SBN 130193)
Email : michael.johnson@lewisbrisbois.com
PAUL A. DESROCHERS, SBN 214855
Email: paul.desrochers@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, CA 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Defendant/Cross-Defendant and Third-Party Plaintiff
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GENESIS INSURANCE COMPANY,<br><br>Plaintiff/Counter-Defendant,<br><br>vs.<br><br>MAGMA DESIGN AUTOMATION, INC. *et al*,<br><br>Defendant/Counter-Claimant. | Case No. 06-CV-05526 EJD<br><br>**NATIONAL UNION FIRE INSURANCE COMPANY'S OPPOSITION TO GENESIS INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Date: February 12, 2015**<br>**Time: 9:00 a.m.**<br>**Crtrm: 4** |
| AND ALL RELATED CROSS-ACTIONS. | |

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. NATIONAL UNION'S STATEMENT OF RELEVANT FACTS ..... 2

A. Magma's Directors and Officers Insurance Coverage 2003/2004 ..... 2

B. The Patent Infringement Action and Notice of Circumstances ..... 3

C. Magma's Directors & Officers Insurance Coverage 2004/2006 ..... 5

D. The Securities Actions ..... 6

E. Magma's Insurance Claims ..... 6

F. The Coverage Litigation ..... 8

G. Settlement Of The Securities Actions ..... 8

H. Status Of This Action ..... 9

III. ARGUMENT ..... 13

A. Genesis Has Not Demonstrated That It Has Satisfied All The Requisite Elements To Prevail On Its Subrogation Claim ..... 13

(i) Genesis misapplies the "law of the case" doctrine ..... 13

(ii) Genesis has not established its right to equitable subrogation ..... 14

1. Genesis has not satisfied the causation element ..... 14

2. Genesis has not satisfied the superior equities element ..... 16

B. The Alleged Basis For ERII's Decision To Reallocate Payments Under Its Policies Is In Direct Violation Of The Ninth Circuit's Ruling And ERII Has Waived The Right To Subsequently Claim That The Notice Received Was Defective ..... 17

C. ERII Is Estopped From Reallocating The Payments Under Its Policies ..... 20

D. An Award Of Pre-Judgment Interest Is Inappropriate ..... 23

E. The Award Of Pre-Judgment Interest Is Excessive ..... 23

IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES


Page

## FEDERAL CASES

*American States Ins. Co. v. Crawley*
779 F.Supp. 137 (N.D. Cal. 1991) .................... 23

*Dishman v. UNUM Life Ins. Co. of Am.*
269 F.3d 974 (9th Cir. 2001).................... 24

*Drumm v. Morningstar, Inc.*
695 F.Supp. 2d 1014 (N.D. Cal. 2010) .................... 24

*Golden Eagle Ins. Co. v. The Continental Ins. Co.*
1993 U.S. Dist. LEXIS 1519 (N.D. Cal.1993) .................... 15, 16

*Hamada v. Far E. Nat'l Bank*
291 F.3d 645 (9th Cir. 2002) .................... 14

*Herrington v. Sonoma County*
12 F.3d 901 (9th Cir 1993).................... 13

*International Ins. Co. v. Red & White Co.,*
U.S. Dist. LEXIS 4549 (N.D. Cal. 1995).................... 23

*Klotz v. Old Line Life Ins. Co. of America*
955 F.Supp. 1183 (N.D. Cal. 1996) .................... 17

*Norte & Co. v. Huffines*
416 F.2d 1189 (2d Cir. 1969)
*Cert. denied, 397 U.S. 989 (1970)*.................... 24

*Omaha Indem. Ins. Co. v. Cardon Oil Co.*
687 F.Supp. 502 (N.D. Cal. 1988)
*aff'd without published opinion, 902 F.2d 40 (9th Cir. 1990)*.................... 23

*United States ex rel. Lujan v. Hughes Aircraft Co.*
243 F.3d 1181 (9th Cir 2001).................... 13

## CALIFORNIA STATE CASES

*Agricultural Ins. Co. v. Smith*
262 Cal.App.2nd 772 (1968).................... 16

*City of Hollister v. Monterey Ins. Co.*
165 Cal.App.4th 455 (2008).................... 18

*Community Redevelopment Agency of City of Log Angeles v. Aetna Cas. & Sur. Co.*
50 Cal.App.4th 329 (1996).................... 23

*Elliano v. Assurance Co. of America*
3 Cal.App.3d 446 (1970).................... 18

*Fireman's Fund Ins. Co.*
65 Cal.App.4th 1279 (1998) ........ 14

*Jogani v. Jogani*
141 Cal.App.4th 158 (2006) ........ 21

*Lakin v. Watkins Assoc.'d Indus.*
6 Cal.4th 644 (1993) ........ 24

*Olson v. Standard Marine Ins. Co.*
109 Cal.App.2d 130 (1952) ........ 18

*Patent Scaffolding Co. v. Simpson Construction Co.*
256 Cal.App.2d 506 (1967) ........ passim

*People ex rel. Sneddon v. Torch Energy Services, Inc.*
102 Cal.App.4th 181 (2002) ........ 22

*People v. Castillo*
49 Cal.4th 145 (2010) ........ 21, 22

*Perkins v. Benguet Consolidated Mining Co.*
55 Cal.App.2d 720 (1942) ........ 24

*Superior Dispatch, Inc. v. Ins. Corp. of New York*
181 Cal.App.4th 175 (2010) ........ 21

**CALIFORNIA STATE STATUTES**

California Civil Code §3287 ........ 24
California Civil Code §3287(a) ........ 23

Defendant/Cross-Defendant and Third-Party Plaintiff NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. ("National Union") submits the following brief in Opposition to the Motion for Partial Summary Judgment filed by Plaintiff and Counter-Defendant GENESIS INSURANCE COMPANY ("Genesis"):

## I. INTRODUCTION

As the Court is well aware, this case has a long history. However, the one constant throughout the course of the litigation has been the fact that in 2004 Executive Risk Indemnity Inc. ("ERII") *accepted* the notice provided to it by its insured MAGMA DESIGN AUTOMATION, INC. ("Magma") as "notice of circumstances" that could lead to a claim under its 2003/2004 claims made policy. This decision by ERII was subsequently relied upon and acted on by both Magma and its insurers as well as by the Court in reaching decisions during the course of the litigation. Because ERII, following its review and analysis of its own policy, the information received from Magma and its discussions with Magma's broker and general counsel, made the decision in 2004 to ***accept*** the notice of potential future claims based on what it had received, there is no issue as to the adequacy of the information provided to ERII.

The only issue raised as to the "notice of circumstances" during the course of the litigation has been the adequacy of what was provided by Magma to Genesis, **because Genesis did not *accept* a "notice of circumstances**" under its 2003/2004 policy. Based on the Ninth Circuit's 2010 decision on this issue, it was determined that Magma had failed to comply with the policy's "notice of circumstances" requirement in its communications with **Genesis** and, as such, the court determined that the Genesis Excess Policy was not on risk for any of the post policy period claims at issue.

In a subsequent decision, the Ninth Circuit also found that the National Union Excess Policy was similarly not on risk for the subject claims inasmuch as ERII, in reliance on its 2004 acceptance of "notice of circumstances," had placed coverage in its 03/04 policy year pursuant to its determination of the relatedness of the claims to the notice it had accepted as "notice of circumstances" under its 03/04 policy. Because ERII placed coverage for the subject claims under its 03/04 policy, the Ninth Circuit found that the primary 04/06 policy directly underlying the National Union Excess Policy had not been exhausted.

Now, however, ERII's adjuster (Richard Nace) has submitted a declaration claiming that, because of the Court's determination that **Magma failed to provide proper notice to Genesis**, ERII has decided in 2013 to revoke its 2004 previous acceptance of "notice of circumstances" and, pursuant to said revocation, reallocated payments made years earlier to exhaust the primary 04/06 policy. Accordingly, Genesis has now renewed its subrogation claim against National Union seeking to recover the monies it paid on Magma's behalf in settlement of the claims that ERII handled under its 03/04 primary policy between 2005 and 2013.

Genesis's reliance on the recent declaration of Richard Nace to revive its subrogation claim, to assert that the 04/06 policy now is exhausted, and to bootstrap itself into an allegedly superior equities position is misplaced. ERII's 2004 decision to accept "notice of circumstances" was not dependent on what was, or was not, exchanged between Magma and Genesis, and is not subject to revocation. In expressly accepting Magma's request that Magma's notice be deemed a notice of circumstances under Section 15 of ERII's 03/04 policy in 2004, ERII has waived its right to subsequently revise its position in 2013 as to its acceptance of "notice of circumstances" and is estopped from reallocating previously made payments under the policy based on applicable legal doctrine and the law of the case. ERII's purported conduct as described in Mr. Nace's 2013 declaration ignores the Ninth Circuit's 2013 decision which explicitly found that **ERII *accepted* Magma's notice as adequate** and specifically stated that no judicial determination had been made to support ERII's transfer of coverage to the 2004-2006 policy period. Accordingly, Genesis's arguments in support of its Motion for Partial Summary Judgment are legally, logically and factually flawed and its Motion should be denied.

## II. <u>NATIONAL UNION'S STATEMENT OF RELEVANT FACTS</u>

### A. Magma's Directors and Officers Insurance Coverage 2003/2004

During the period between December 15, 2003 and December 15, 2004, Magma maintained Directors and Officers ("D&O") liability insurance coverage under a primary policy issued by ERII which provided liability limits of $10 million per claim ("03/04 ERII Policy"). [Genesis' Memorandum of Points and Authorities In Support of Motion for Partial Summary Judgment ("Genesis MPA") at 3:5-7 and Docket No. ("Dkt No.") 254-2 at 1] During that same period, Magma maintained first layer excess D&O coverage under a policy issued by Genesis ("Genesis Excess



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Policy"). [Genesis MPA at 3:2-5 and Dkt No. 254-1] The Genesis Excess Policy followed form to the underlying 03/04 ERII Policy and provided liability limits of $5 million per claim above the primary limits afforded by the 03/04 ERII Policy. [*Id.*]

Curiously absent from the Genesis brief (although included in its previous filings in this action) is any mention of the second layer excess insurer, XL Insurance Specialty Insurance Company ("XL"). XL provided second layer excess D&O coverage for Magma during the 03/04 policy period with liability limits of $5 million per claim above the underlying $15 million in coverage ("XL 03/04 Excess Policy"). [Dkt No. 176-1] Pursuant to the terms of the XL 03/04 Excess Policy, XL was only responsible for 50% of the liability amount applied to the second layer excess with Magma agreeing to cover the other 50% share. [Dkt No. 176-1 at 1-2]

**B. The Patent Infringement Action and Notice of Circumstances**

In September 2004, Magma was sued by Synopsys, Inc., for patent infringement (*Synopsys, Inc. v. Magma Design Automation, Inc.* Case No. 04-03923 MEJ, hereafter "the *Synopsys* action" and/or "the Patent Infringement Action"). The *Synopsys* complaint alleged that certain patents issued to Magma were based on technology invented by a scientist employed by Magma, Lucas van Ginneken (hereafter, "van Ginneken"), who had previously worked for Synopsys and allegedly developed the technology in question while working for Synopsys [Dkt No. 234-1 at 3-4]..

On September 28, 2004, while the 03/04 ERII Policy, the Genesis Excess Policy and the XL 03/04 Excess Policy were in effect, Magma sent ERII, Genesis and XL copies of the complaint in the Patent Infringement action and requested that the insurers accept the complaint and Magma's letter as ". . . a notice of claim and/or circumstance" under their respective policies. [Genesis MPA at 4:7-9 and Dkt Nos. 254-5, 254-6 and 176-1 at 4] ERII issued correspondence to Magma dated October 25, 2004 denying coverage for the Patent Infringement action because the named defendant (Magma) was not an Insured Person under the 03/04 ERII Policy. [Dkt No. 176-4] In addition to issuing correspondence denying coverage for the Patent Infringement action, ERII's adjuster, Mr. Richard Nace ("Nace"), called Magma's general counsel and explained ERII's coverage position. [Declaration of Paul A. Desrochers in support of National Union's Opposition to Genesis' MPSJ ("PAD Decl.") at

¶ 4, Exhibit (“Ex.”).A – Deposition of Richard Nace (“Nace Depo”) at 117:10-19 and Nace Depo Ex. 10]

On November 9, 2004, Magma’s insurance broker contacted Mr. Nace to discuss Magma’s request that ERII acknowledge the Patent Infringement claim as notice of potential claim under the 03/04 ERII Policy. Magma’s broker advised Mr. Nace that Magma had previously had a similar type of claim “morph into a D&O [Directors & Officers] matter” and that Magma wanted “to be really careful.” [*Id.* at 119:15 - 120:10 and Ex. 10] That same day, following his communications with Magma’s broker, Mr. Nace wrote to Magma and confirmed in writing that ERII would accept the Patent Infringement Complaint and Magma’s September 28, 2004 letter as “notice of circumstances that could lead to a claim” under Section 15(d) of the ERII 03/04 Policy. [Dkt No. 176-5] Prior to deciding to accept the information received from Magma as “notice of circumstances that could lead to a Claim under the” 03/04 ERII Policy, Mr. Nace reviewed the *Synopsys* complaint, analyzed the terms of the ERII policy (including policy section 15(b)), reviewed the additional information obtained in his discussions with Magma’s broker, and believes he had discussions with others at ERII. [PAD Decl at ¶ 4, Ex. A – Nace Depo at 119:1-14] After doing this, ERII concluded that it would *accept* Magma’s notice as a “notice of circumstances that could lead to a claim” under Section 15(d) of the 03/04 ERII Policy.

After receipt of ERII’s November 9, 2004 correspondence accepting the *Synopsys* claim as “notice of circumstances” under the 03/04 ERII Policy, Magma forwarded the letter to its excess insurers. [PAD Dec at ¶ 5, Ex. B – Deposition of Rian D. Jorgensen (“Jorgensen Depo”) at 55:19 – 57:20 and Jorgensen Depo Exs. 12 and 13] On December 28, 2004, XL notified Magma that it was adopting the same position as ERII and also agreed to accept the Patent Infringement Complaint and Magma’s September 28, 2004 letter as “notice of circumstances” under the XL 03/04 Policy. [Dkt No. 176-1 at 5]

On October 11, 2004, Genesis responded to Magma’s letter tendering the *Synopsys* claim by denying coverage for the Patent Infringement Action and acknowledging receipt of Magma’s request that the *Synopsys* complaint and correspondence be accepted as “notice of circumstances.” [Genesis MPA at 4:12-13 and Dkt No. 279-5 at 30] Contrary to XL, Genesis never responded to Magma’s

request that the *Synopsis* complaint and correspondence be accepted as "notice of circumstances" request, but advised Magma that it would issue subsequent correspondence addressing its position on the issue. [*Id.*] However, Genesis never advised Magma as to its position on Magma's "notice of circumstances" request, despite having been sent a copy of ERII's correspondence accepting "notice of circumstances" under the 03/04 ERII Policy. Furthermore, despite having received no response from Genesis as to Magma's "notice of circumstance" request, there is no evidence that Magma ever followed up with Genesis to obtain Genesis' position on the issue or contacted Genesis to provide additional information in support of Magma's request as Magma had done with ERII.

### C. Magma's Directors & Officers Insurance Coverage 2004/2006

In December 2004, Magma renewed the primary D&O policy issued by ERII, with the renewal policy providing the same coverage terms and limits as the 03/04 ERII Policy with an effective period of December 15, 2004 to December 15, 2006 ("04/06 ERII Policy"). [Genesis MPA at 3:25-27 and Dkt No. 254-3] At that time, Magma replaced the first layer excess policy issued by Genesis with a similar policy issued by National Union effective during the period of December 15, 2004 to December 15, 2006 ("National Union Excess Policy"). [*Id.* at 4:2-5 and Dkt No. 254-4] The National Union Excess Policy followed form to the underlying 04/06 ERII policy and provided liability limits of $5 million above the primary limits afforded by the 04/06 ERII Policy. [*Id.*] As with ERII, Magma renewed its second layer excess policy with XL, with the renewal policy providing the same coverage terms and limits as the XL 03/04 Excess Policy. However, during the 04/06 policy period, XL agreed to pay 100% of any liability obligations in excess of the underlying coverage, rather than splitting such obligations 50/50 with Magma as was done with the previous XL 03/04 Excess Policy. [Dkt No. 176-1 at 4-6]

In obtaining excess coverage from National Union for the 04/06 policy period, Magma and/or its broker, completed application materials and had discussions with National Union representatives in late 2004. [PAD Decl at ¶ 6, Ex. C at pg 30] In the materials associated with Magma's application for coverage, Magma notified National Union of the Patent Infringement Action and the claims asserted in that action. Notably, **nowhere** in the materials provided to National Union prior to December 15, 2004, did Magma advise National Union of Magma's belief and/or expectation that the Patent

Infringement Action would "morph into a D&O [Directors and Officers] claim" as Magma had represented to ERII prior to November 9, 2004. Further there is no indication that while negotiating with national Union for the excess policy that incepted December 15, 2004, Magma ever advised National Union that it had presented the Synopsis matter as a "notice of circumstances" under its existing 03/04 policies nor that it expected and/or anticipated subsequent directors and officers litigation arising from the Patent Infringement Action as previously disclosed to ERII. [*Id.* at pgs. 33-36] In fact, Magma's application materials specifically indicate that there is – **NO** – "potential for existing or possible corporate litigation including public awareness of the applicant being named in the near future, to pose risk to the D&O policy." [*Id.*]

**D. The Securities Actions**

In June and July 2005, Magma was sued in a securities class action and a separate shareholder derivative action, both of which were based on allegations that Magma had failed to disclose the risk that it would be held liable for infringing on intellectual property rights held by Synopsys when Magma obtained patents based on technology that had allegedly been invented by van Ginneken while he was employed by Synopsys. (*Cornelia Crowell GST Trust, et al. v. Magma Design Automation, Inc.* USDC Northern District of California, Case No. 05-02394-CRB and *Willis, et al. v. Madhavan, et al.,* Santa Clara County Superior Court Action No. 05-CV-049638, collectively, "the Securities Actions") [Genesis MPA at 4:21-25 and Dkt No. 254-10 at 2-5]

**E. Magma's Insurance Claims**

In or around July 2005, Magma notified ERII, Genesis, National Union and XL of the Securities Actions. [Id. at 5:1-11 and Dkt No. 176-1 at 2] On or about August 12, 2005, ERII's adjuster had discussions with Magma's broker regarding the Securities Actions and ERII's anticipated coverage position regarding the claims and applicable policy period for the claims. [PAD Decl, Ex. A – Nace Depo at 121:11-124:13 and Nace Depo Ex. 10] On August 23, 2005, ERII's adjuster had further discussions with Magma's broker and Magma's general counsel regarding ERII's placing of coverage for the Securities Actions, during which Magma requested that ERII place coverage in the 04/06 policy period because of Magma's concerns with Genesis's reaction to placing coverage in the 03/04 policy period. [*Id.*] Despite Magma's request that coverage be accepted under the 04/06 ERII

Policy, ERII determined that coverage was appropriate under the 03/04 ERII Policy pursuant to ERII's previous decision to accept "notice of circumstance" under the 03/04 ERII Policy. On August 23, 2005, ERII issued its coverage opinion informing Magma that coverage was afforded for Magma in the Securities Actions and that coverage would be extended under the 03/04 ERII Policy based on the "notice of circumstances" which Magma had provided (and ERII had accepted) in September 2004. [Dkt No. 176-6] Furthermore, in reliance on the position taken by primary insurer ERII, XL agreed that coverage would be afforded for the Securities Actions under the XL 03/04 Policy based on its previous acceptance of "notice of circumstances" associated with the *Synopsys* action. [Dkt No. 176-1 at 4-5]

Genesis, on the other hand, issued correspondence dated August 31, 2005, objecting to the position taken by the other 03/04 insurers and, for the first time, asserted that Magma had failed to provide proper "notice of circumstances" to Genesis in accordance with the requirements of the policy in September 2004. Further, Genesis denied coverage for the Securities Actions based on its assertion that the claims arose after the expiration of the Genesis Excess Policy. [Dkt No.279-5 at 47-50]

In correspondence dated July 1, 2005, National Union initially responded to Magma's tender of the Securities Actions and informed Magma that it was investigating Magma's tender pursuant to a reservation of rights.[PAD Dec at ¶ 9, Ex. F] On August 26, 2005, upon learning that Magma had provided "notice of circumstances" to its 03/04 insurers in conjunction with the Patent Infringement Action and in reliance on ERII's decision to extend coverage for the Securities Actions under the 03/04 ERII Policy based on ERII's previous acceptance of Magma's "notice of circumstances" request under the 03/04 policies, National Union denied coverage. [Dkt No. 279-5 at 41-45] In denying coverage for the Securities Actions, National Union's August 26, 2005 letter again informed Magma that the coverage afforded by the National Union Excess Policy was subject to the terms, conditions, exclusions and limitations of coverage set forth in the underlying 04/06 ERII Policy and the National Union Excess Policy and again reserved all its rights, privileges and defenses under its policy. [Id. at 44] Furthermore, in reaching its coverage determination, National Union's August 26, 2005 correspondence specifically advised Magma that because the claim had been, according to ERII, "**noticed**" during [ERII's] December 15, 2003 to December 15, 2004 Policy Period when National

Union's Excess Policy was not a participant in Magma's insurance tower, Magma and the Individual Insured(s) were not afforded coverage under the National Union Excess Policy. [Id. at 42-44]

**F. The Coverage Litigation**

Genesis filed a complaint for declaratory relief against Magma in September 2006 seeking a judicial determination that the Securities Actions were not claims first made during the 03/04 policy period and therefore no coverage was afforded for the Securities Actions under the Genesis Excess Policy. [Dkt No. 1] Magma filed a Counterclaim against Genesis and a third party complaint against National Union and ERII seeking a determination as to whether the Genesis Excess Policy or the National Union Excess Policy applied to the Securities Actions (and whether the ERII 03/04 or 04/06 policies provided coverage for the Securities Actions). [Dkt No. 10] National Union answered Magma's third-party complaint in December 2006 and set forth various affirmative defenses to Magma's claims, including affirmative defenses specifically reserving all of National Union's rights, defenses and exclusions under the National Union Excess Policy. [Dkt No. 25]

At Magma's request, the coverage litigation was stayed pending resolution of the Securities Actions. [Dkt No. 48] While the coverage action was stayed, counsel for National Union informed counsel for Magma on several occasions that coverage under the National Union Excess Policy would be based on the actual terms and conditions of the National Union Excess Policy and coverage under the National Union policy was not contingent on whether the Genesis Excess Policy provided coverage under an "either/or" assertion, *i.e.,* that first -layer excess coverage was afforded for Magma in the Securities Actions under either the Genesis excess policy or the National Union excess policy. Specifically, counsel for National Union notified Magma's attorney that Magma might be without first-layer excess coverage if it did not prevail in establishing coverage under the Genesis Excess Policy period because the National Union Excess Policy could bar coverage for the claim. [176 at 3:3-18]

**G. Settlement Of The Securities Actions**

The parties to the Securities Actions engaged in settlement discussions in October 2007 and the Actions were settled in principle in November 2007. [Dkt No. 278 at 10:20-21] As part of the negotiations, Magma demanded that Genesis and National Union agree to fund part of the settlement

with a contribution from Magma's first layer excess coverage. National Union declined to contribute to the settlement based on its position that there was no coverage under the National Union Excess Policy. [Dkt No. 176 at 3:3-18] The settlement of the Securities Actions was funded by the remaining limits available under the ERII 03/04 Policy, the full limits of the Genesis Excess Policy (allegedly paid under a reservation of rights) and the available limits of the XL 03/04 second-layer Excess Policy [Dkt Nos. 278 at 11:2-3; and 176-1]

**H. Status Of This Action**

Following settlement of the Securities Actions, the parties resumed the instant litigation and Genesis and National Union filed motions for partial summary judgment. [Dkt Nos. 85 and 87] During briefing on the motions for partial summary judgment, ERII submitted its "Statement of Position" with respect to the then pending motions. [Dkt No. 100] In its "Statement of Position," ERII set forth its analysis of the Securities Actions and the basis for its determination that they constituted "related claims" under the ERII policies at issue. [*Id.* at 4:12–5:9] Further, ERII discussed its acceptance of the Patent Infringement complaint as "'notice of circumstances which could give rise to a Claim' within the meaning of § 15(b) of the EL Coverage Sections of the" ERII policies, and its decision to place coverage for the Securities Actions under the 03/04 ERII Policy. [*Id.* at 5:10–6:4] Finally, ERII specifically advised the Court and all parties to the case that:

> "ERII has committed to contribute what remains of the Limits of Liability to the ERII 03/04 Policy toward settlement of the [Securities Actions]. Upon ERII's contribution toward these settlements, the Limits of Liability of the ERII 03/04 Policy will be exhausted and ERII will have no further obligations under that Policy. If this Court should determine, however, that the [Securities Actions] are properly deemed first made during the Policy Period of the ERII 04/06 Policy instead, ERII will adjust its records to reflect that all amounts paid in connection with those actions were paid under the ERII 04/06 Policy. If this should occur, the Limits of Liability of the ERII 04/06 Policy would be exhausted by the amount of ERII's payments instead, and ERII will have no further obligations under that Policy."

[*Id.* at 6:7-6:16]

Furthermore, in support of its opposition to the Genesis and National Union motions for partial summary judgment, Magma submitted a declaration obtained from ERII's adjuster responsible for the

handling of the claims at issue in the litigation, Mr. Richard Nace. In his declaration, Mr. Nace specifically stated:

> "5. On or about September 29 2004, ERII's claim department received a letter from Magma's insurance broker, Rian D. Jorgensen of ABD Insurance and Financial Services ("ABD") dated September 28, 2004, enclosing a copy of the complaint filed in *Synopsys, Inc. v. Magma Design Automation*, United States District Court, Northern District of California, Case No. 3:04-CV-03923 MMC (the "Patent Litigation"). The letter requested that ERII accept the letter as a notice of Claim or as a notice of circumstances that could give rise to a Claim under the 2003 Policy.
>
> 6. On October 25, 2004, I issued a letter to Beth Roemer of Magma denying coverage for the Patent Litigation. On or about November 9, 2004, before the expiration of the 2003 Policy, I received a phone call from Rian Jorgensen of abd wherein he requested that ERII accept the Patent Litigation as a notice of circumstances that could give rise to a Claim under the 2003 Policy.
>
> 7. During our conversation, Mr. Jorgensen informed me that Magma had, in the past, had a patent suit become a directors' and officers' liability claim. On or about November 9, 2004, I sent a letter dated November 9, 2004 to Ms. Roemer at Magma accepting the Patent Litigation as notice of circumstances that could give rise to a Claim under the 2003 Policy pursuant to Section 15(b) of the Executive Liability and Entity Securities Liability Coverage Section of the 2003 policy ("Notice of Potential Claim" or "NOPC")."

[Dkt No. 104 at 2:25-3:14]

After hearing the parties competing summary judgment motions, the Court issued an Order on July 24, 2008 denying Genesis's motion and granting in part and denying in part National Union's motion [Dkt No. 112]. Genesis appealed from this Order once it became final [Dkt No. 121].

On July 12, 2010, the Ninth Circuit Court of Appeals issued an Opinion reversing this Court's ruling as to the parties' cross-motions for partial summary judgment and held that although Magma had provided Genesis with notice, the **notice provided by Magma to Genesis** did not contain all of the specific circumstances information called for in the notice provision of the Genesis Excess Policy. The Ninth Circuit **did <u>not</u>** address the adequacy of Magma's notice to ERII or ERII's acceptance at Magma's request, of the notice as notice of circumstances under the 03/04 ERII Policy. [Dkt No. 139]

Following remand, Genesis filed an Amended Complaint and Magma filed an Amended Counter/Cross-claim on September 13, 2010 [Dkt Nos. 153 and 154]. National Union thereafter filed motions to dismiss Genesis's Amended Complaint and Magma's Amended Counter/Cross-claim

pursuant to FRCP Rule 12(b)(6) [Dkt Nos. 158 and 161]; Magma filed a motion for summary judgment as to Genesis and a motion for summary adjudication as to National Union [Dkt No. 168]; and Genesis filed a motion for summary judgment [Dkt No. 169]. After hearing the motions, the Court issued an Order granting in part and denying in part the summary judgment motions filed by Genesis and Magma and denying National Union's motions to dismiss as moot. [Dkt No. 186]

National Union appealed the District Court's Order and following briefing and oral argument, the Ninth Circuit issued an Order on February 5, 2013, which held that because the District Court had previously determined that Magma's notice to Genesis did not comply with the notice provisions of the Genesis policy, notice was not given under the Genesis policy and therefore, the "prior notice" exclusion in the National Union Excess Policy did not apply. As to National Union's exhaustion defense, however, the Ninth Circuit specifically found that:

> "2. Coverage under National Union's policy was contingent on exhaustion of the primary coverage provided by Executive Risk Indemnity, Inc. ("ERII"), for the 2004-06 policy period. ERII, however treated the 2005 lawsuits as claims under Magma's 2003-04 policy. ERII's statement that it would "adjust its records" to reflect exhaustion of the 2004-06 policy was explicitly contingent on a judicial determination that its decision was incorrect.
>
> **There has been no such determination.** Our prior decision dealt only with notice to Genesis. **ERII, by contrast, accepted Magma's notice as adequate.** Because Genesis failed to establish that ERII's 2004-06 policy had, as a matter of law, been exhausted, we reverse the district court's partial summary judgment." (emphasis added)

[Dkt No. 208]

Accordingly, because Magma failed to establish that the underlying 04/06 ERII policy was exhausted, the Ninth Circuit reversed this Court's Order granting partial summary to Genesis and National Union's motions to dismiss were revived. The Ninth Circuit's decision directed the District Court to address the merits of National Union's motions to dismiss on remand and noted that "**[s]hould it deny the motion**, it must then determine whether ERII correctly treated the patent-infringement complaint as notice of circumstances that could give rise to a covered claim under its policy." (emphasis added) [Dkt No. 208]

On remand to this Court for hearing on National Union's 12(b)(6) motions, Genesis filed a document entitled "Declaration of Richard F. Nace, Jr." which was allegedly prepared by Mr. Nace on or about July 23, 2013. [Dkt No. 245] In this new declaration, Mr. Nace states that he was responsible for handling the claims at issue for ERII; affirms that ERII advised Magma that it considered its $10 million payment for settlement of the Securities Actions to exhaust the limits of the ERII 03/04 Policy; and further declared that ERII has since reviewed the findings of the Ninth Circuit and, ***based upon its interpretation of the Ninth Circuit's rulings***, had decided to reallocate its payments for the Securities Actions from the 03/04 policy period to the 04/06 policy period thereby exhausting the ERII 04/06 Policy limits. [Dkt No. 245]

ERII's reallocation in 2013 of previous made payments by ERII from one primary policy to another primary policy is in direct contradiction of prior statements by Mr. Nace and ERII's representations to the Court. In his previous declaration, Mr. Nace specifically stated that ERII determined the 03/04 policy period was the appropriate period for covering the Securities Actions based upon ERII's *acceptance* of notice of circumstances in that policy year. Further, pursuant to ERII's statement of position ERII advised the Court and all parties to the litigation that it would not reallocate the proceeds of its policies **until there was a judicial finding and declaration from the Court that the funds should be reallocated**. [Dkt No. 100]

As affirmed by the Ninth Circuit in its 2013 decision, there has been **no** judicial determination that ERII's decision to accept the information provided by Magma as a notice of circumstances under its 03/04 policy was improper, nor has there been a determination that ERII's decision to place coverage for the Securities Class Action and the Derivative Action under the ERII 03/04 Policy was incorrect. [Dkt No. 208] Further, there is nothing in the Court record which provides support for ERII's decision to circumvent the proceedings and decide to adjust its records and shift payments to the ERII 04/06 Policy several years after the payments were made – and without any notice to the excess carriers.

On December 5, 2013, this Court granted National Union's FRCP 12(b)(6) motions and dismissed Genesis's Amended Complaint and Magma's Amended Counter/Cross-claim with leave to amend. [Dkt No. 253] In reliance on the assertions in the Nace 2013 Decl., Genesis has now filed a

Second Amended Complaint seeking to recover the monies it paid in settlement of the Securities Actions and Magma has filed a Cross-Claim against National Union seeking coverage for the Securities Actions. [Dkt Nos. 254 and 255] National Union filed its answers to the Genesis complaint [Dkt No. 256] and the Magma Counter/Cross-claim [Dkt No. 258] asserting its defenses to the Genesis and Magma claims, including, but not limited to, waiver and estoppel as it pertains to ERII's alleged adjustment of its accounts.

## III. ARGUMENT

### A. Genesis Has Not Demonstrated That It Has Satisfied All The Requisite Elements To Prevail On Its Subrogation Claim

As set forth below, Genesis' Motion for Partial Summary Judgment fails to properly set forth undisputed facts to demonstrate that it has met each of the elements necessary to prevail on its equitable subrogation claim. Accordingly, Genesis' motion should be denied.

#### (i) Genesis misapplies the "law of the case" doctrine

Genesis relies on this Court's 2010 Order on its prior motion for summary judgment as conclusively determining the issue as to its claimed entitlement to equitable subrogation as against National Union. However, in its 2013 decision, the Ninth Circuit **reversed** the district court's partial summary judgment. [Dkt No. 208] In reversing this Judge Ware's 2010 Order, the Ninth Circuit did not specifically uphold or affirm any aspect of the Court's determination as to Genesis' claimed entitlement to equitable subrogation. [Dkt No. 208] Contrary to Genesis' assertions and pursuant to the law of the case doctrine, this Court is not bound by the rulings in its 2010 Order and is free to consider any matter not expressly or impliedly decided by the Ninth Circuit's 2013 disposition of the case. (*See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir 2001).) As such, the 2010 Order is not binding on these proceedings and Genesis' argument that it need only demonstrate exhaustion of the underlying ERII 04/06 Policy to prevail on its equitable subrogation claim, lacks merit. (*Herrington v. Sonoma County*, 12 F.3d 901, 904-905 (9th Cir 1993).)

In addition to the foregoing, and as discussed in more detail below, Genesis's reliance on the Nace 2013 Declaration as proving exhaustion of the ERII 04/06 policy is misplaced. The alleged basis for ERII's 2013 decision to shift coverage under its policies is in direct conflict with the Ninth

Circuit's 2013 ruling and ERII is precluding from taking the actions set forth in the Nace 2013 Declaration based on principles of waiver and estoppel.

**(ii) Genesis has not established its right to equitable subrogation**

Under California law, the essential elements of an insurer's cause of action for equitable subrogation have been described as follows:

> "1) the insured suffered a loss for which the defendant is liable, either as a wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; 2) the claimed loss was one for which the insurer was not primarily liable; 3) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; 4) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; 5) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; 6) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; 7) justice requires that the loss be shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and 8) the insurer's damages are in a liquidated sum, generally the amount paid to the insured."

*Fireman's Fund Ins. Co.*, 65 Cal.App.4th 1279, at 1292 (1998).

Another "factor" to be considered when determining a party's entitlement to equitable subrogation is whether "[that] subrogation would work any injustice to the rights of others" (*Hamada v. Far E. Nat'l Bank*, 291 F.3d 645,655 (9th Cir. 2002).) This is not necessarily an additional factor, but rather is a combination of the sixth (causation) and seventh (superior equities) elements set forth in the *Fireman's Fund* case, above. Genesis has not and can not demonstrate these essential elements (causation and superior equities) in its equitable subrogation claim nor does its motion for summary adjudication allege how the elements have been satisfied. As set forth below, Genesis can not meet this burden.

**1. Genesis has not satisfied the causation element**

Causation is an essential element of an equitable subrogation claim. "In order for the subrogee to recover from the alleged wrongdoer, the wrongdoer must have proximately caused the losses of the subrogor (and thus, after indemnification, the losses of the subrogee)." *Patent Scaffolding Co. v. Simpson Construction Co.*, 256 Cal.App.2d 506, 513 (1967). Here, National Union was not the proximate cause of Magma's "losses" (*i.e.*, Magma's potential liability for the securities violations alleged in the Securities Actions and the amounts incurred defending those actions) – the only alleged "wrongdoer" responsible for



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Magma's alleged securities violations was Magma, which allegedly used intellectual property belonging to Synopsys in patents claimed by Magma. Under no stretch of the imagination can it be alleged that National Union, in its capacity as an excess insurer for Magma, was the proximate cause of the events which prompted settlement of the Securities Actions.

California case law recognizes that the causation element of an equitable subrogation claim can be met if the defendant is legally responsible to the insured for the loss caused by the wrongdoer, *i.e.*, the defendant is vicariously liable for the acts of the wrongdoer or has contractually agreed to indemnify the insured for the acts of the wrongdoer. However, the causation element is not present when the defendant is simply another insurer contractually bound to indemnify the same insured for the same loss. Illustrative is the appellate decision in *Patent Scaffolding Co. v. Simpson Construction Co.*, in which a subcontractor (Patent) was hired by a general contractor (Simpson) to perform certain work on a building. Their contract required Simpson to maintain fire insurance covering Patent's equipment on the job site, but did not expressly require Simpson to indemnify Patent in the event of loss or damage to its equipment. Simpson failed to obtain the required fire insurance and a fire ensued which damaged Patent's equipment. After Simpson refused to pay, Patent's own fire insurers paid the loss and commenced an equitable subrogation action against Simpson. The trial court permitted the equitable subrogation claim, finding that the contract between Patent and Simpson was not just an agreement to obtain fire insurance, but was also an agreement to indemnify Patent against fire loss (despite the absence of an express indemnification provision). *Id.* at 508-509.

The Court of Appeals reversed, holding that Patent's insurers were not entitled to subrogate against Simpson. Simpson did not cause the fire and the insurers had simply paid a loss they had contractually agreed to insure. In reaching its decision, the court stated that "[w]here two parties are contractually bound by independent contracts to indemnify the same person for the same loss, the payment by one of them to his indemnitee does not create in him equities superior to the nonpaying indemnitor, justifying subrogation, if the latter did not cause or participate in causing the loss." *Id.* at 514.

In the absence of causation, an insurer cannot state a viable cause of action for equitable subrogation. *Golden Eagle Ins. Co. v. The Continental Ins. Co.,* 1993 U.S. Dist. LEXIS 1519 (N.D. Cal.1993). In *Golden Eagle*, a homeowner (Randall) sued her insurance broker (Blodgett) and her

homeowners' insurer (Continental) after her homeowners' policy was cancelled and she was left with no coverage for earthquake damage to her property. In finding that Golden Eagle could not establish the requisite element of causation the court stated:

> "Golden Eagle's loss can be substituted for Blodgett & Associates loss only if Golden Eagle's loss was proximately caused by the act or omission of Continental. There is no causal connection between the alleged wrongdoing committed by Continental (failing to obtain independent counsel for Blodgett) and the damage resulting to Golden Eagle (payment of the errors and omissions claim). Just as in *Patent Scaffolding* it was the fire and not the general contractor's failure to obtain coverage that caused the insurer's losses, so here it was the negligence of Blodgett that resulted in Golden Eagle's losses, not the alleged wrongdoing of Continental." *Id.*

Similar to *Patent Scaffolding* and *Golden Eagle*, Genesis can not state a viable equitable subrogation claim against National Union as Genesis did not and could not plead or prove that National Union (or an entity which National Union is legally responsible for) caused the loss alleged in the Securities Actions. Furthermore, subrogation would impose an injustice upon National Union, as there has been no finding that National Union either caused Magma's harm or that there is coverage under the National Union policy for the loss.

**2. Genesis has not satisfied the superior equities element**

Separate and apart from its inability to satisfy the causation element, Genesis cannot establish that it is in a superior equitable position to that of National Union. "A subrogation action by an insurer is an action in which equitable principles are applied to shift a loss for which the insurer has compensated its insured to one who caused the loss . . . **and whose equitable position is inferior to the insurer's**." *Agricultural Ins. Co. v. Smith*, 262 Cal.App.2nd 772 at 777-778 (1968) (emphasis added). Here, Genesis and National Union are both insurers which provided similar first-layer excess D&O coverage to the same insured (Magma) under independent contracts of insurance. Moreover, National Union was not involved in any manner in causing the loss which gave rise to Genesis' payment and subrogation claim. Indeed, National Union was not a party to any agreement or understanding between Magma and Genesis in which Genesis agreed to pay the settlement. As such, there is no colorable basis for Genesis to assert that it is in a superior equitable position to National Union. Rather, Genesis and National Union are two parties who are contractually bound by independent insurance contracts to indemnify the same insured (Magma) for the

same types of loss during different time periods. As stated in *Patent Scaffolding*, a payment by one of these entities does not create superior equities relative to the other non-paying entity for subrogation purposes if the latter did not cause or participate in causing the loss. *Patent Scaffolding Co.*, 256 Cal.App.2d at 514.

Genesis argues that, in light of ERII's reallocation of the payments under its policies, the ERII policy underlying the National Union Excess Policy has now been exhausted and Genesis is entitled to recover directly from National Union. However, contrary to Genesis's claim that the ERII 04/06 Policy is now exhausted, there has been no judicial determination that would permit ERII to shift coverage to the 04/06 policy period and Genesis's reliance on ERII's shifting of coverage is misplaced. ERII's actions are in direct conflict with the Ninth Circuit's 2013 ruling and ERII's own stated position in this action, and the equitable doctrines of waiver and estoppel preclude ERII's conduct in this respect. Thus, National Union is not in an inferior equitable position.

As with the causation issue above, Genesis has not and can not allege facts demonstrating that it is in a superior equitable position to National Union. Allowing Genesis to subrogate its claims to pursue recovery from National Union would impose an injustice upon National Union. Therefore, Genesis' Motion for Partial Summary Judgment as to its subrogation claim should be denied.

**B. The Alleged Basis For ERII's Decision To Reallocate Payments Under Its Policies Is In Direct Violation Of The Ninth Circuit's Ruling And ERII Has Waived The Right To Subsequently Claim That The Notice Received Was Defective**

Genesis would have the Court believe that the exhaustion issue has now been resolved and the Court should not consider the exhaustion issue because ERII has unilaterally shifted post hoc payments that it provided on behalf of Magma under the ERII 03/04 Policy to the ERII 04/06 Policy. However, the alleged basis for ERII's adjustment of its records and shift of coverage to the ERII 04/06 Policy is flawed, and having expressly stated in writing that it accepted the information provided by Magma in 2004 as "notice of circumstances" under Section 15 of the ERII 03/04 Policy as requested by Magma, ERII has waived the right to assert in 2013 that it never should have accepted the notice given to it in 2004 as a "notice of circumstances" under Section 15 of the ERII 03/04 Policy.

Waiver is the intentional relinquishment of a known right. *Klotz v. Old Line Life Ins. Co. of America*, 955 F.Supp. 1183, 1186 (N.D. Cal. 1996) ("In general, to constitute a waiver, there must be an existing right, a knowledge of its existence, an actual intention to relinquish it, or conduct so

inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.") Thus, waiver may be express or implied. Further, unlike estoppel waiver does not depend on any other party's conduct. "The essence of waiver . . . is the voluntary relinquishment of a known right, which may be effective as a matter of law without any demonstration that the other party was caused by the waiver to expose himself to any harm." *City of Hollister v. Monterey Ins. Co.*, 165 Cal.App.4th 455, 487 (2008).

When ERII received Magma's communication to the effect that the Patent Infringement Action might turn into a lawsuit against Magma's directors or officers (since that had apparently happened before), ERII's claim manager stood by its original denial of coverage for the *Synopsys* litigation under the 03/04 Policy, but acknowledged specifically that ERII "hereby accepts the Complaint as notice of circumstances that could lead to a **Claim** under the Policy, pursuant to Policy Section 15(b)." [Dkt No. 176-1 at 1-2]

When ERII made that statement in its November 9, 2004 letter, ERII clearly understood the requirements for notice of circumstances set forth in Section 15 of its own policy, and ERII also understood that accepting the *Synopsys* complaint as a "potential **Claim**" meant that if the circumstances at issue in that lawsuit eventually led to a claim against an insured under the ERII policy, the claim would be treated as having been received under the ERII 03/04 Policy. It was ERII's customer Magma in 2004 that was insisting that this information be deemed a notice of circumstances based on Mama's past experience. Moreover, ERII, after obtaining additional information from Magma, concluded that more details and information from Magma was not needed for purposes of a Section 15 notice of circumstances and stated in writing that Magma's notice was *accepted* as a "notice of circumstances" under Section 15 of ERII's 03/04 Policy. Thus, ERII *expressly waived* the right to subsequently disavow the "notice of circumstances" that it affirmatively accepted at the request of Magma. Insurers frequently waive conditions under their own policies, although such waiver is usually implied, not express as in this case. *See, e.g., Olson v. Standard Marine Ins. Co.*, 109 Cal.App.2d 130, 137 (1952) (insurer waived right to require sworn proof of loss within 90 days when it wrongly repudiated policy before 90 days expired); *Elliano v. Assurance Co. of America*, 3 Cal.App.3d 446, 449 (1970) (right to deny claim for lack of sworn proof of loss was waived when

adjuster accepted insurer's written estimate and entered into lengthy settlement negotiations without requesting formal proof of loss).

Contrary to Genesis' claims and Mr. Nace's 2013 declaration,[1] ERII did *not* reserve the right to refute its own acceptance of the "notice of circumstances" that could lead to a potential claim – as indeed it could hardly have done so without making nonsense of its own acceptance. In fact, a plain reading of ERII's November 9, 2004 correspondence shows that, in accepting the notice of circumstances, ERII solely reserved its rights "to deny coverage and/or rescind the Policy…." Thus, the reservation of rights on coverage in the November 9, 2004 letter did not affect the waiver of a condition, and ERII's efforts to retroactively revoke its acceptance of "notice of circumstances" years later should not be permitted. [Declaration of Joseph P. Monteleone In Support Of National Union's Opposition to Genesis' MPSJ at 8:25-9:9]

The Nace 2013 Declaration is nothing more than a contrived effort to circumvent the fact that the underlying ERII 04/06 Policy had not been exhausted. This conduct by ERII attempting to shift coverage from one policy period to another policy period, to the detriment of its excess insurers, years after the original primary policy has been exhausted, is unique; seeks to ignore the established facts (*i.e.*, that ERII accepted notice of circumstance under, and placed coverage for the Securities Actions under the ERII 03/04 Policy and paid the remaining limits available under that policy in settlement of the Securities Actions) and does not comport with standard practices in the insurance industry. [*Id.*]

Despite Genesis's assertions to the contrary, the Ninth Circuit's decision regarding the lack of sufficiency of Magma's notice to Genesis is irrelevant as to ERII's own conduct in handling the claims at issue. The ruling by the Court of Appeal adjudicated the right of *Genesis* to dispute the sufficiency of the notice - it did not address the fact that in response to Magma's request, ERII accepted *for itself* the notice for future claims under the 2003-2004 policy, a fact that the Ninth Circuit specifically affirmed in its 2013 decision. [Dkt No. 208] As such, the stated basis for ERII's

---

[1] It should be noted that Mr. Nace's 2013 declaration differs significantly from his prior 2008 declaration on this very issue in that while attesting to the fact that ERII accepted "notice of circumstances" under the ERII 03/04 Policy, Mr. Nace made no mention of having reserved any rights related to this acceptance.

determination to reallocate its payments to the 04/06 policy period is in direct conflict with the Ninth Circuit's ruling as well as ERII's stated position regarding the litigation. [Dkt Nos. 100, 104 and 245 at 3:17-25] Therefore, ERII's reallocation of policy payments from the ERII 03/04 Policy to the ERII 04/06 Policy is improper and Genesis should be precluded from relying on this conduct to demonstrate exhaustion of the ERII 04/06 Policy. Accordingly, as Genesis can not demonstrate exhaustion of the ERII 04/06 Policy, there is no coverage under the National Union Excess Policy, and Genesis's motion should be denied.

**C. ERII Is Estopped From Reallocating The Payments Under Its Policies**

Genesis asserts that, despite the fact that ERII *accepted* "notice of circumstances" under the ERII 03/04 Policy, placed coverage for the Securities Actions in the 03/04 policy period, and settled the Securities Actions with the remaining proceeds of the ERII 03/04 Policy, ERII can now simply "shift" coverage to another policy period because the notice that Magma gave to Genesis was held to be inadequate. While this notion fits with the district court's previously stated view that it would find coverage either under one excess policy or the other, it entirely ignores the facts of the case.

At Magma's request in 2004, ERII chose to accept Magma's notice of potential future claims under the 03/04 policy year. National Union was not privy to communications between the primary insurer and Magma before the National Union policy incepted in December 2004 regarding this notice. National Union obviously did not encourage or seek to have ERII accept Magma's notice as a notice of circumstances under the 03/04 ERII Policy. The primary insurer subsequently provided coverage for the Securities Actions under the ERII 03/04 Policy and paid the remaining limits available under the ERII 03/04 Policy in settlement of the Securities Actions.

Based upon the foregoing, the equitable principle of estoppel precludes shifting coverage to a subsequent policy year to the detriment of an excess insurer which had taken positions in reliance on the primary insurer's acceptance of coverage under its 03/04 policy. Similarly, ERII is precluded from ignoring its prior acceptance of "notice of circumstances" under its 03/04 policy and unilaterally shifting coverage for the loss to the subsequent policy, the ERII 04/06 Policy.

In contrast to waiver, estoppel is created by the effect of the party's representations/conduct on another party. "To create an equitable estoppel, 'it is enough if the party has been induced to refrain

from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' [Citation]" *Superior Dispatch, Inc. v. Ins. Corp. of New York*, 181 Cal.App.4th 175, 187 (2010).

In this case, it is undisputed that, in response to Magma's request in 2004, ERII accepted Magma's "notice of circumstances" under the ERII 03/04 Policy and, pursuant to its determination that the Securities Actions were related to and arose from the facts alleged in the Synopsys case, ERII placed coverage for the Securities Actions under the ERII 03/04 Policy. Furthermore, ERII advised National Union of its acceptance of notice of circumstances in the prior policy year and its placement of coverage for the Securities claims in that policy period. In light of these actions, National Union denied coverage for the Securities Actions as the primary policy to which it was excess was not participating on the claim. Furthermore, based on ERII's determinations as to the placement of coverage for the claim, National Union did not contribute toward settlement of the case as its policy year was not implicated. Similarly, Magma's second layer excess carrier, XL, relied upon ERII's placement of coverage in the 03/04 policy period in its decisions to participate in the settlement of the Securities Actions.

Contrary to Genesis's view of ERII's effort to "shift" coverage from the 03/04 policy year to the 04/06 policy year, such an action is not a mere ministerial accounting task, because substantive positions were previously taken by the excess insurers in reliance on ERII's acceptance of "notice of circumstances" and the placement of coverage in the 03/04 policy year. For example, XL followed the decision of ERII as the primary insurer on its policy tower and also accepted the information it received from Magma as "notice of circumstances" under its 03/04 policy. [Dkt No. 176-1] Furthermore, XL participated in funding the settlement pursuant to that determination.

In addition to the foregoing, based on the doctrine of preclusion of inconsistent positions (or quasi-estoppel), a litigant is precluded from asserting a position in a legal proceeding that is contrary to a position previously taken in the same proceeding when such positional changes have an adverse impact on the judicial process. (*See Jogani v. Jogani*, 141 Cal.App.4th 158 (2006).) The doctrine is intended to maintain the integrity of the judicial system as well as protect the parties from opponents' unfair strategies. (*See People v. Castillo*, 49 Cal.4th 145, 156 (2010).)

The doctrine of quasi-estoppel is used to prevent internal inconsistencies during litigation and to prohibit parties from changing positions according to exigencies of the moment. (*See People ex rel. Sneddon v. Torch Energy Services, Inc.*, 102 Cal.App.4th 181 (2002).) The courts apply the doctrine where: (1) the same party has taken two positions; (2) the positions were taken in judicial proceedings; (3) the party was successful in asserting the first position; (4) the positions are inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. (*See People v. Castillo, supra*, 49 Cal.4th at 155.)

In the present action, the doctrine of quasi-estoppel precludes ERII from unilaterally changing its position regarding its acceptance of "notice of circumstances" under the ERII 03/04 Policy and its decision to place coverage for the Securities Actions under the ERII 03/04 Policy pursuant to its acceptance of "notice of circumstances." A constant throughout the course of this matter has been the fact that in response to Magma's request, ERII accepted the "notice of circumstances" it received from Magma under the ERII 03/04 Policy. At no time prior to the Nace 2013 Declaration had ERII asserted that its acceptance of the "notice of circumstances" was "subject to a reservation of rights." [Dkt No. 104 at 2:9-14; Dkt No. 100 at 5:17-20] In fact, as mentioned previously herein, ERII's November 9, 2004 correspondence accepting "notice of circumstances" did not assert any reservation of rights as to ERII's decision to accept "notice of circumstances" pursuant to section 15(b) of the ERII 03/04 Policy as it only reserved its rights "…to deny coverage and/or to rescind the Policy..." [Dkt No. 176-5] As such, ERII's decision to now revoke its acceptance of "notice of circumstances" is inconsistent with its previously stated position in this litigation, upon which both the parties and Court have relied. In fact, based on the Ninth Circuit's 2013 decision overturning judgment against National Union, the Ninth Circuit specifically noted ERII's acceptance of "notice of circumstances" as the basis for the handling of Securities Actions under the ERII 03/04 Policy and stated that there has been no judicial determination that ERII's actions were incorrect. [Dkt No. 208]

Finally, there has been no evidence presented by any party that ERII's acceptance of "notice of circumstances" was the result of ignorance, fraud, or mistake. In fact, Mr. Nace's deposition testimony and 2008 declaration clearly demonstrate that in performing its analysis of the information provided by Magma, ERII chose not to request any additional information (and did not expect to

receive any additional information), and based on the information received, accepted notice of circumstances under the ERII 03/04 Policy. [PAD Decl at ¶ 4, Ex. A – Nace Depo at 62:22 – 64:19] Accordingly, having satisfied the elements of quasi-estoppel, National Union asserts that ERII is precluded from revoking its acceptance of "notice of circumstances" under the ERII 03/04 Policy and is further precluded from shifting coverage of the Securities Claims to the 04/06 policy period without a judicial determination that its prior handling of said claims was incorrect.

**D. An Award Of Pre-Judgment Interest Is Inappropriate**

In various actions involving claims by insurers for reimbursement of settlement proceeds or defense costs arising out of coverage disputes, this jurisdiction has refused to award pre-judgment interest on such claims asserting that the right to reimbursement was established by the judgment. *See International Ins. Co. v. Red & White Co.*, U.S. Dist. LEXIS 4549 (N.D. Cal. 1995); (finding that pre-judgment interest is awarded only from the date that the court determines that the insurer is in fact entitled to reimbursement.); *American States Ins. Co. v. Crawley*, 779 F.Supp. 137 (N.D. Cal. 1991) (No award of pre-judgment interest to insurer because entitlement to reimbursement was only established by the present order and subsequent judgment); and *Omaha Indem. Ins. Co. v. Cardon Oil Co.*, 687 F.Supp. 502, 505 (N.D. Cal. 1988), aff'd without published opinion, 902 F.2d 40 (9th Cir. 1990). Accordingly, as the question of liability in this action requires judicial resolution of questions of both law and fact, an award of pre-judgment interest is inappropriate.

**E. The Award Of Pre-Judgment Interest Is Excessive**

Pursuant to Civil Code § 3287(a), accrual of interest on a liquidated claim **is suspended during any period of time a defendant is prevented from paying the debt by law or by any act of the plaintiff**. Because National Union's policy was the first layer excess policy over the ERII 04/06 Policy, coverage for the claims was not available until exhaustion of the underlying ERII 04/06 Policy. *See Community Redevelopment Agency of City of Log Angeles v. Aetna Cas. & Sur. Co.*, 50 Cal.App.4th 329 at 339 (1996) (It is settled under California law that an excess or secondary policy does not cover a loss, nor does any duty to defend arise, until all of the primary insurance has been exhausted.)

/ / /

In analyzing section 3287, California courts have stated that it is well settled that where a debtor has been prevented from making a payment by a valid order of a court, there is no liability for interest. *See Perkins v. Benguet Consolidated Mining Co.*, 55 Cal.App.2d 720, 769 (1942). Accordingly, if this Court decides that Genesis, as a subrogee of Magma, is entitled to recover pre-judgment interest from National Union pursuant to California Civil Code § 3287, National Union asserts that any accrual of interest would not commence until it is determined that the underlying ERII 04/06 Policy exhausted.

Furthermore, while pre-judgment interest is an element of compensation, it should not be a penalty, and should have the primary goal of making an aggrieved party whole. *See* generally, *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001); accord *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1022 (N.D. Cal. 2010) ("The purpose of prejudgment interest 'is to provide just compensation to the injured party for loss of use of the award during the prejudgment period - in other words, to make the plaintiff whole as of the date of the injury.'") (Citing *Lakin v. Watkins Assoc.'d Indus.*, 6 Cal.4th 644, 663, (1993)). As such, in awarding pre-judgment interest, the court should insure that the award is not punitive in nature and be "tempered by an assessment of the equities." *Norte & Co. v. Huffines*, 416 F.2d 1189, 1191-92 (2d Cir. 1969), cert. denied, 397 U.S. 989 (1970). Based on this Court's expressed compensatory (rather than punitive) view of pre-judgment interest, an assessment of the equities at issue in this litigation, and in view of the historically low rate of interest available during the pendency of this action, the application of a pre-judgment interest rate of 10% is excessive and punitive in nature rather than compensatory.

Contrary to Genesis's claims, National Union asserts that, should the Court grant Genesis's motion and find that Genesis is entitled to pre-judgment interest, the appropriate rate should be the applicable prime rate or, at a maximum, 7% per annum. The California Constitution provides at Article XV section 1 that "[t]he rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature **at not more than** 10 % per annum. Such rate **may be variable and based upon interest rates charged by federal agencies or economic indicators**, or both." This section goes on to state that "[i]n the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7% per annum."

## IV. CONCLUSION

For the reasons discussed above, Genesis's Motion for Partial Summary Judgment should be denied. Genesis has failed to establish that it has met all the requirements to prevail on its equitable subrogation claim. Further, ERII has waived the right to subsequently revoke its decision to accept "notice of circumstances" under the ERII 03/04 Policy and is estopped from changing its positions as to the "notice of circumstances" and the placement of coverage for the Securities Actions, without a judicial determination that its actions were incorrect.

DATED: January 23, 2015 LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Paul A. Desorchers*
Glenn A. Friedman
Michael K. Johnson
Paul A. Desorchers
Attorneys for Defendant and Counter/Cross Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

File No. 6234.4935

**CERTIFICATE OF SERVICE**

***Genesis Insurance Company v. Magma Design Automation, Inc. et al.***

USDC – Northern District, San Jose Division Case No. 5:06-CV-05526-EJD

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 333 Bush Street, Suite 1100, San Francisco, California, 94104. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On January 23, 2015, I served the following document:

**NATIONAL UNION FIRE INSURANCE COMPANY'S OPPOSITION TO GENESIS INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I served the document on all parties in this matter by CM/ECF. The document was served by the following means:

☒ The document was served via CM/ECF (all parties are registered for CM/ECF):

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

Dated: January 23, 2015

*\/s/ B. Yasinah Johnson*

B. Yasinah Johnson

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW