LOSS, JUDGE & WARD, LLP
LEWIS K. LOSS (admitted pro hac vice)
Two Lafayette Centre
1133 21st Street, N.W., Suite 450
Washington, D.C. 20036
Telephone: (202) 778-4060
Facsimile: (202) 778-4099
E-mail: lloss@ljwllp.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ROBERT J. STUMPF, JR., Cal. Bar No. 72851
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
E-mail: rstumpf@sheppardmullin.com

Attorneys for Plaintiff and Counterclaim Defendant
Genesis Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Genesis Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Magma Design Automation, Inc., and National Union Fire Insurance Company of Pittsburgh, PA,<br><br>Defendants. | Case No. 06-5526 EJD<br><br>**REPLY IN SUPPORT OF MOTION OF GENESIS INSURANCE COMPANY FOR PARTIAL SUMMARY JUDGMENT** |
| AND RELATED COUNTERCLAIMS, CROSSCLAIMS, AND THIRD-PARTY ACTIONS. | Date: February 12, 2015<br>Time: 9:00 a.m.<br>Place: Courtroom 4 |

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. National Union's Admissions are Dispositive .......... 2

B. There Has Been No "Waiver" by ERII .......... 4

C. There is No Basis on Which to "Estop" ERII from Properly Placing Coverage for the Securities Action in the 04/06 ERII Policy .......... 6

D. The Doctrine of Quasi-Estoppel Does Not Apply .......... 7

E. California Insurance Code Sections 22 and 250 are Inapplicable .......... 8

F. Genesis is entitled to Recover its Settlement Payment and Interest from National Union Under the Doctrine of Equitable Subrogation .......... 9

1. National Union's Breach of Its Insurance Contract with Magma Establishes the Necessary Causation .......... 10

2. The Ninth Circuit's Determination that Genesis Owed No Coverage for the Securities Action or Settlement Establishes Genesis' "Superior Equities" .......... 12

G. Genesis Is Entitled To Recover Ten Percent Prejudgment Interest .......... 13

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## Federal Cases

*Clarendon National Insurance Co. v. Insurance Co. of the West*,
No. CV F 99 5461 SMS, 2006 WL 2594452 (E.D. Cal. Sept. 11, 2006) .......... 10, 11

*Corner v. Famers Insurance Exchange*,
No. 89-35072, 1990 WL 42270 (9th Cir. Apr. 10, 1990) .......... 7

*Evanston Insurance Co. v. OEA, Inc.*,
566 F.3d 915 (9th Cir. 2009) .......... 13

*Golden Eagle Insurance Co. v. Continental Insurance Co.*,
No. C-92-4391-JPV, 1993 U.S. Dist. LEXIS 1519 (N.D. Cal. Feb. 5, 1993) .......... 11, 12

*Highlands Insurance Co. v. Continental Casualty Co.*,
64 F.3d 514 (1995) .......... 13, 14

*Klotz v. Old Line Life Insurance Co. of America*,
955 F. Supp. 1183 (N.D. Cal. 1996) .......... 5

*Norte & Co. v. Huffines*,
416 F.2d 1189 (2nd Cir. 1969) .......... 15

*Northrop Corp. v. Triad International Marketing, S.A.*,
842 F.2d 1154 (9th Cir. 1988) .......... 15

*Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez)*,
484 F.3d 1098 (9th Cir. 2007) .......... 15

## State Cases

*Advanced Network, Inc. v. Peerless Insurance Co.*,
190 Cal. App. 4th 1054 (2010) .......... 4

*Aetna Casualty & Surety Co. v. Richmond*,
76 Cal. App. 3d 645 (1977) .......... 4

*Employers Mutual Casualty Co. v. Philadelphia Indemnity Insurance Co.*,
169 Cal. App. 4th 340 (2008) .......... 13

*Employers Mutual Liability Insurance Co. of Wisconsin v. Pacific Indemnity Co.*,
334 P.2d 658 (Cal. 1959) .......... 10, 12, 13

*Fireman's Fund Insurance Co. v. Wilshire Film Ventures*,
52 Cal. App. 4th 553 (1997) .......... 11

*Monteleone v. Allstate Insurance Co.*,
51 Cal. App. 4th 509 (1996) .......... 9

*Montrose Chemical Corp. v. Admiral Insurance Co.*,
913 P.2d 878 (Cal. 1995) .......... 8, 9

*North Oakland Medical Clinic v. Rogers*,
65 Cal. App. 4th 824 (1998) ........................................ 13

*Outpatient Surgery Center v. The Doctors Co.*,
No. G034430, 2006 WL 636741 (Cal. Ct. App. April 12, 2006) ........................................ 4

*Patent Scaffolding Co. v. William Simpson Construction Co.*,
256 Cal. App. 2d 506 (1997)........................................ 11

*People v. Castillo*,
230 P.3d 1132 (Cal. 2010) ........................................ 7

*Prudential-LMI Commercial Insurance v. Superior Court of San Diego County*,
798 P.2d 1230 (Cal. 1990) ........................................ 8

*Richardson v. Roberts*,
210 Cal. App. 2d 603 (1962)........................................ 4

*Romasanta v. Mitton*,
189 Cal. App. 3d 1026 (1987)........................................ 4

*State v. Hydrite Chemical Co.*,
695 N.W.2d 816 (Wis. Ct. App. 2005) ........................................ 8

*Stonewall Insurance Co. v. City of Palos Verdes Estates*,
46 Cal. App. 4th 1810 (1996) ........................................ 9

*Waller v. Truck Insurance Exchange*,
900 P.2d 619 (Cal. 1995) ........................................ 6

**State Statutes**

Cal. Civ. Code § 3287(a) ........................................ 14

Cal. Civ. Code § 3289(b) ........................................ 14

Cal. Ins. Code § 22........................................ 2, 8, 9

Cal. Ins. Code § 250........................................ 2, 8

## I. INTRODUCTION

Having all but abandoned any pretense that there is a basis in law on which it can continue to avoid its obligations to its insured, Magma, and Genesis as Magma's subrogee, National Union now seeks equitable relief from the Court under the doctrines of waiver and estoppel. National Union has shirked its payment obligation for almost a decade, has compelled the other parties to this case to bear the costs of litigation that now has twice gone to the Ninth Circuit and back, and seems not just comfortable with but eager for other parties to bear the amounts it should have paid. It would be difficult to find a party less deserving of the Court's use of its equitable powers to fashion a remedy in its favor. Indeed, National Union's assertion that the loss arising from the Securities Action cannot be allocated to it as the contractually responsible insurer in accordance with the terms of its policy and the Ninth Circuit's prior ruling in this case is absurd.

## II. ARGUMENT

In a last-ditch, and hopefully final, effort to avoid its coverage obligations to Magma, National Union makes two meritless assertions: (1) that Executive Risk Indemnity Inc. ("ERII") somehow "waived" the ability to properly place coverage for the Securities Action in the 04/06 ERII Policy in light of the Ninth Circuit's July 12, 2010 opinion; or (2) that ERII should be estopped from doing so. In making these arguments, National Union's clear objective is to deprive Magma of the coverage it purchased under the National Union Excess Policy and to leave Magma (or Genesis) holding the bag for the portion of the Securities Action settlement funded by Genesis.[1] Thus, National Union seeks to penalize Magma for ERII's erroneous determination that the Securities Action, filed after the expiration of the 03/04 ERII Policy, was nonetheless

[1] In its July 12, 2010 opinion, the Ninth Circuit definitively held that Genesis does not owe coverage for the Securities Action. (Docket Entry ("DE") 139 at 3–5). As such, Genesis unquestionably is entitled to recover its $5 million settlement payment, plus interest. While Genesis believes it is National Union that should make Genesis whole, if that were somehow determined not to be the case, Genesis would be entitled to recover its settlement payment and interest from Magma. Magma, of course, does not agree. That issue is not presently before the Court.

covered under that policy based on what has been conclusively determined by the Ninth Circuit to have been an inadequate purported "notice of circumstances."[2]

As to Genesis specifically, National Union makes two additional, erroneous arguments. First, notwithstanding the fact that Genesis contributed $5 million toward to the Securities Action settlement for which National Union owed coverage to Magma and that should have, therefore, been contributed by it, National Union contends that Genesis cannot recover its payment from National Union as Magma's subrogee. Second, National Union argues that, even if Genesis is entitled to recover its settlement payment from National Union, Genesis is not entitled to recover pre-judgment interest. National Union is wrong on both counts.[3]

### A. National Union's Admissions are Dispositive

Before wading into National Union's latest arguments, it is important to address the critical points that National Union does not dispute or argue and, therefore, tacitly admits. National Union's admissions are dispositive.

First, National Union does not dispute that the written discovery it sought has only confirmed that the written notice provided by Magma to Genesis in September 2004 was <u>identical</u> to the written notice provided by Magma to ERII at that time. (DE 281 at 10–11).

Second, National Union does not dispute that notice of circumstances under all pertinent policies—the 03/04 ERII Policy, the Genesis Excess Policy, the 04/06 ERII Policy, and the National Union Excess Policy—is governed by the same provisions in the 03/04 and 04/06 ERII Policies, Sections 15(b) and (c).

---

[2] National Union seeks to cast blame on Magma by asserting that Magma failed to provide an adequate notice of circumstances to ERII and Genesis. (DE 286 at 22–23). While Genesis leaves it to Magma to respond, it does note that there is no evidence in the record that Magma had additional information during the policy period of the 03/04 Policies beyond what it actually provided to ERII and Genesis such that it would even have been possible for Magma to provide a notice of circumstances that complied with the requirements of the 03/04 ERII Policy. National Union conveniently ignores this.

[3] Although National Union does not argue in its response to Genesis' motion, as it does in response to Magma's motion for summary judgment, that California Insurance Code sections 22 and 250 bar coverage for the Securities Action under the National Union Excess Policy, Genesis nonetheless addresses this erroneous argument below.

Third, National Union does not dispute that the Ninth Circuit determined in its July 12, 2010 opinion that the written information provided by Magma to Genesis was inadequate as a "notice of circumstances" under Section 15 of the 03/04 ERII Policy to preserve coverage for the Securities Action under the Genesis Excess Policy.[4] (DE 139 at 3–5).

Fourth, National Union does not dispute that, in light of the Ninth Circuit's determination, the identical written information provided by Magma to ERII cannot constitute an adequate notice of circumstances to ERII under the same section of the same policy.

Fifth, National Union does not argue that the minimal additional information conveyed orally to ERII by Magma's broker—"that Magma had, in the past, had a patent suit become a directors' and officers' liability claim"—satisfied the requirements of the Section 15 of the 03/04 ERII Policy such that it would preserve coverage for the Securities Action under that policy.

Sixth, National Union therefore does not dispute that, in light of the Ninth Circuit's July 2010 decision, ERII's initial determination that the 03/04 ERII Policy provided coverage for the Securities Action based on Magma's inadequate notice of circumstances was wrong.

Seventh, National Union does not dispute that, again in light of the Ninth Circuit's decision, ERII has expressly acknowledged that its determination was wrong. (DE 245, Ex. A).

Eighth, National Union does not dispute that, absent an adequate notice of circumstances under the 03/04 ERII Policy, it is the 04/06 ERII Policy, during which the Securities Action claim actually was made, that provides coverage for that action.

Ninth, National Union does not dispute that ERII has acknowledged coverage for the Securities Action under the 04/06 ERII Policy. (DE 245, Ex. A).

And tenth, National Union does not dispute that ERII has adjusted its records to charge the payments it made in connection with the Securities Action against the limit of liability of its 04/06 Policy, thereby exhausting that Policy. (*Id.*).

[4] National Union tries to muddy this by erroneously asserting that the Ninth Circuit's determination pertained to "the notice provision of the Genesis Excess Policy." (DE 292 at 10). To be clear, the Genesis Excess Policy does not have a separate notice provision. It incorporates the notice provision in the 03/04 ERII Policy.

Therefore, the 04/06 ERII Policy has been properly exhausted, and this triggers coverage for the Securities Action, and the settlement thereof, under the National Union Excess Policy.

**B. There Has Been No "Waiver" by ERII**

In light of Richard Nace's July 13, 2013 declaration, National Union has no legal argument that the 04/06 ERII Policy has not been exhausted following ERII's placement of coverage for the Securities Action in that policy following the Ninth Circuit's July 2010 decision. National Union, therefore, asks the Court to find in equity that ERII waived the right to properly place coverage for the Securities Action in the 04/06 ERII Policy by "accepting" the information provided by Magma in September 2004 as a notice of circumstances. National Union's argument should be rejected for several reasons.

First, the Court should not exercise its equitable powers to provide a windfall. *See, e.g., Richardson v. Roberts*, 210 Cal. App. 2d 603, 608 (1962) ("A court of equity does not sit to confer a windfall."); *Romasanta v. Mitton*, 189 Cal. App. 3d 1026 (1987) ("[E]quity abhors a windfall."); *Outpatient Surgery Center v. The Doctors Co.*, No. G034430, 2006 WL 636741, at *5 (Cal. Ct. App. April 12, 2006) ("Modern jurisprudence does not permit a party to use equity to obtain an unjust windfall."). That is precisely the result that would obtain if the Court were to accept National Union's waiver argument—National Union would shirk its contractual obligation to make payment on a claim and saddle its insured (or Genesis) with that obligation.

Second, it is a well-settled principle of California law, and one that National Union itself has asserted previously in this matter, (DE 179 at 20), that insurance coverage cannot be expanded by waiver. *See, e.g. Aetna Cas. & Surety Co. v. Richmond*, 76 Cal. App. 3d 645, 653 (1977) ("The rule is well established that the doctrines of implied waiver and estoppel . . . are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom . . . ." (citations and internal quotations omitted)); *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1066 (2010) (same, citing *Aetna*). The effect of finding a waiver here would be to impermissibly expand the scope of coverage afforded by the

03/04 ERII Policy to a post-policy claim for which the policy would not otherwise provide coverage.

Third, as National Union itself acknowledges, waiver is "the intentional relinquishment of a known right." (DE 292 at 17 (citing *Klotz v. Old Line Life Ins. Co. of Am.*, 955 F. Supp. 1183, 1186 (N.D. Cal. 1996)). There simply is no evidence that ERII at any time intentionally relinquished any of its rights under either its 03/04 policy or its 04/06 policy, including its right to place coverage for the Securities Action under either policy. In particular, there is no evidence that, at the time of ERII's November 9, 2004 letter on which National Union relies, ERII believed Magma's purported notice of circumstances to be inadequate but accepted it nonetheless. ERII simply was mistaken in its determination that the notice was sufficient. Moreover, in this very same letter, ERII "expressly reserve[d] all of its rights under the Policy and/or available at law." And contrary to National Union's unfounded assertion, this necessarily included ERII's right to deny coverage for any later-made claim as untimely under the 03/04 ERII Policy if the purported notice of circumstances ERII had "accepted" were ultimately found to be inadequate.[5] That is precisely what has happened. Although the Ninth Circuit did not in its July 12, 2010 opinion specifically address the adequacy of the notice provided to ERII, because the court found that the identical written information provided to Genesis and ERII was not an adequate notice of circumstances to Genesis under Section 15 of the 03/04 ERII Policy, that same information cannot be an adequate notice of circumstances to ERII under that same policy provision.

Further, as National Union's proffered industry expert, Joseph Monteleone, confirms, an insurer cannot make a determination as to whether a notice of circumstances adequately encompasses a later-made claim until, at the earliest, the claim actually is made. (DE 289 at 6:12–14). In "accepting" Magma's purported notice of circumstances while reserving rights, therefore, ERII did not concede that any future claim necessarily would be deemed made under the 03/04 ERII Policy by virtue of the "notice." Again, Mr. Monteleone agrees. (DE 289 at

[5] Thereafter, ERII repeatedly affirmed its reservation of rights with respect to the issue of the applicable policy. (*E.g.*, DE 279-5 at 36, Aug. 23, 2005 letter; Ex. 1, Declaration of Matthew J. Dendinger ("Dendinger Decl."), Ex. A at 2 n.1, May 19, 2006 letter; DE 279-6 at 8, May 24, 2006 letter).

4:12–13). Therefore, even if Magma's purported notice were facially adequate, which it was not, ERII could not be deemed to have waived its right to deny coverage for the later-made Securities Action claim on the grounds that Magma's purported notice did not preserve coverage for that claim.

Fourth, National Union cites no case for the proposition that an insurer in its position has standing to assert waiver based on a communication between another insurer and the insured, especially when the insured itself is firmly of the view there was no such waiver.

Nonetheless, National Union would have this Court apply the doctrine of waiver to bar ERII from abiding by the Ninth Circuit's implicit but clear determination that the notice of circumstances provided to ERII was inadequate. Asking this Court to use its equitable powers to prevent ERII from complying with the Ninth Circuit's decision is an extraordinary request and one that should not be granted absent a highly compelling reason that simply does not exist.

### C. There Is No Basis on Which to "Estop" ERII from Properly Placing Coverage for the Securities Action in the 04/06 ERII Policy

National Union does not dispute, because it cannot, that detrimental reliance is a necessary element of a claim of estoppel. *See, e.g., Waller v. Truck Ins. Exchange*, 900 P.2d 619, 638 (Cal. 1995). And while National Union avers that it "relied upon" ERII's erroneous decision to "accept[] the information provided to it by Magma [in September 2004] as 'notice of circumstances' that could lead to a claim under [the 03/04 ERII Policy]," entirely absent from its brief is any assertion or discussion of any detriment National Union suffered as a result of its supposed reliance. National Union states only that it "took substantive positions," "denied coverage for the Securities Actions," and "did not contribute toward settlement of the case."[6] Far from being detrimental to National Union, though, these actions were to its clear and material benefit, as discussed by Magma in its motion for summary judgment and not disputed by National

[6] Notably, National Union's only "example" of a "substantive position" taken "by the excess insurers" pertains to XL, which issued second level excess policies above the Genesis and National Union policies. (DE 292 at 21). It is not at all clear what National Union hopes the Court might conclude from this and its other references to XL in its response brief as what XL may or may not have done is not at issue in this litigation and is wholly irrelevant to the actually pertinent question of whether National Union detrimentally relied on ERII's determination.

Union in its response. (DE 292 at 21). Because National Union did not contribute to the Securities Action settlement as it should have, it, unlike Genesis, has had the benefit of its $5 million for the past nearly six years and will continue to have the benefit of those funds until this matter is finally resolved. *See Corner v. Famers Ins. Exch.*, No. 89-35072, 1990 WL 42270, at *2 (9th Cir. Apr. 10, 1990) (rejecting insured's claim of estoppel on the grounds that it would result in a windfall and holding that "[e]quity will not grant them such a windfall"). Absent any detrimental reliance by National Union on ERII's erroneous initial coverage determination, National Union's estoppel claim must fail.[7]

**D. The Doctrine of Quasi-Estoppel Does Not Apply**

National Union also argues that the equitable doctrine of "quasi-estoppel" bars ERII from placing coverage for the Securities Action in the proper policy period. This doctrine has no application here, though, because National Union cannot establish any of its elements.[8] As set forth in National Union's response brief, (DE 292 at 22 (citing *Castillo*, 230 P.3d at 1139)), in order to invoke quasi-estoppel National Union must first demonstrate that ERII affirmatively took the position in this litigation that the 03/04 ERII Policy provided coverage for the Securities Action and settlement. ERII never has taken this position in this action.[9] Indeed, its consistent position from the outset was that it would place coverage in whichever of its policies was determined to be applicable. (DE 26 at 15–16, ¶¶ 23–25; DE 100 at 6). Because ERII never has

[7] National Union's arguments in response to Magma's motion for summary judgment concerning whether National Union's supposed reliance on ERII's treatment of the purported notice of circumstances and Securities Action was justified are, therefore, irrelevant. They also are meritless in light of ERII's clear reservation of rights in its November 9, 2004 letter and subsequent correspondence, and its consistently stated position in this action that it stood ready to place coverage for the Securities Action in either the 03/04 ERII Policy or the 04/06 ERII Policy based on developments in this action. (DE 279-5 at 27–28; DE 279-5 at 36, Ex. 1, Dendinger Decl., Ex. A at 2 n.1; DE 279-6 at 8; DE 26 at 15–16, ¶¶ 23–25; DE 100 at 6).

[8] Even if National Union could satisfy all of the elements of quasi-estoppel, it still would not necessarily be entitled to invoke it. *See People v. Castillo*, 230 P.3d 1132, 1139–40 (Cal. 2010) ("We do not invariably enforce the judicial estoppel doctrine merely because all of its elements are met. [N]umerous decisions have made clear that judicial estoppel [like other forms of estoppel] *is an equitable doctrine*, and its application . . . is discretionary." (emphasis in original, internal quotations and citations omitted)).

[9] Whatever ERII might have said or done prior to this litigation is irrelevant. *See Castillo*, 230 P.3d at 1139.

taken the position in this litigation that the 03/04 ERII Policy provides coverage for the Securities Action, it follows that ERII never has been "successful" in asserting that position. And, of course, ERII's determination and present position that, in light of the Ninth Circuit's July 12, 2010 decision, it is the 04/06 ERII Policy that provides coverage for the Securities Action and settlement cannot be "inconsistent" with a position that it never took.[10]

### E. California Insurance Code Sections 22 and 250 are Inapplicable

The sole remaining legal argument National Union continues to cling to is that sections 22 and 250 of the California Insurance Code bar coverage for the Securities Action under the National Union Excess Policy.[11] These code sections codify what is known as the "loss-in-progress" rule (sometimes also referred to as the "known loss doctrine"), which is based on "a fundamental principle of insurance law that an insurer cannot insure against a loss that is known or apparent to the insured." *Prudential-LMI Commercial Ins. v. Superior Court*, 798 P.2d 1230, 1244 n.7 (Cal. 1990). "Section 22 defines 'insurance' as a 'contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent *or* unknown event.'" *Montrose Chem. Corp. v. Admiral Ins. Co.*, 913 P.2d 878, 904 (Cal. 1995) (quoting Cal. Code § 22) (emphasis in original). "Accordingly, when a loss is 'known or apparent' before a policy of insurance is issued, there is no coverage." *Id.* (quoting *Prudential-LMI*, 798 P.2d at 1244 n.7).

California takes a narrow view of when a loss becomes "known or apparent." *See State v. Hydrite Chemical Co.*, 695 N.W.2d 816, 825 n.14 (Wis. Ct. App. 2005) (noting that California's "narrow definition" of the loss-in-progress rule lies at one end of the range of approaches in

---

[10] As part of its quasi-estoppel argument, National Union touts the Ninth Circuit's statement in its February 5, 2013 decision that there has been no judicial determination of whether ERII's initial placement of the Securities Action under the 03/04 ERII Policy was incorrect. While that may be true as a technical matter, it is equally true that, in light of the Ninth Circuit's earlier, July 12, 2010, decision, no reasonable insurer in ERII's position could have continued to maintain that the information provided by Magma in September 2004 was an adequate notice of circumstances with respect to the later-filed Securities Action. Therefore, ERII made the reasoned and correct decision to transfer the claim from the 03/04 ERII Policy to the 04/06 ERII Policy.

[11] National Union does not include this argument in its response to Genesis' motion. Because it does make it in its response to Magma's motion, though, Genesis addresses it here.

applying the doctrine). In the liability insurance context, the loss-in-progress rule will bar coverage only for a "known *liability*." *Montrose*, 913 P.2d at 905 (emphasis in original). Accordingly, "the loss-in-progress rule will not defeat coverage for a claimed loss where it had yet to be established, at the time the insurer entered into the contract of insurance with the policyholder, that the insured had a legal obligation to pay damages to a third party in connection with a loss." *Id.* at 906 (emphasis added); *see also Monteleone v. Allstate Ins. Co.*, 51 Cal. App. 4th 509, 518 (1996) ("Where there is uncertainty about the imposition of liability and no legal obligation to pay has yet been established, there is an insurable risk for which coverage may be sought . . . .").

When National Union issued its policy to Magma, there had been no determination of liability in connection with the Securities Action. Indeed, many of the events on which that litigation was premised had not even happened, (DE 63-5, Ex. G at 1–2, 11–16 (addressing events)), and the litigation had not been filed. *See Stonewall Ins. Co. v. City of Palos Verdes Estates*, 46 Cal. App. 4th 1810, 1847 (1996) ("The *earliest* date anyone could conceivably argue that it was *established* that the [insured] had a legal obligation to pay damages . . . was . . . when the jury verdict in the [third-party claimant's] case was rendered." (emphasis in original)). National Union can cite to no authority for the proposition that Magma's mere knowledge of the potential that an action could be filed will defeat coverage under section 22. *See Montrose*, 913 P.2d at 904 ("[T]he fact that [the insured] knew it was more probable than not it would be sued . . . is not enough to defeat the potential of coverage."). Accordingly, section 22 does not bar coverage for the Securities Action.[12]

[12] National Union asserts that Magma was aware that "a 'directors and officers liability claim' was likely to arise out of the [patent infringement] action." (DE 286 at 20 (emphasis added)). This assertion falls well short of what the California cases require to constitute a "known loss," but it is not an accurate factual assertion in any event. There is no evidence that Magma believed in late 2004 that a D&O claim "was likely," only that Magma's broker told Mr. Nace that Magma had in the past seen similar actions "morph into a D&O matter." (DE 104 at 2, ¶ 7; DE 294-1, Ex. A, Ex. 10).

### F. Genesis is Entitled to Recover its Settlement Payment and Interest from National Union Under the Doctrine of Equitable Subrogation

National Union continues to argue that, even if it owes coverage for the Securities Action, which it does, Genesis cannot recover its settlement payment from National Union as Magma's subrogee. Since the Court (Judge Ware) first rejected this assertion in its December 20, 2010 order, a determination not disturbed by the Ninth Circuit, National Union has abandoned all but two of its arguments. It now argues only that Genesis has not satisfied the causation and superior equities elements of a claim for equitable subrogation. Neither of these arguments has merit.

#### 1. National Union's Breach of Its Insurance Contract with Magma Establishes the Necessary Causation

National Union erroneously asserts that to state a claim for subrogation, Genesis must prove that National Union proximately caused Magma's loss. (DE 292 at 14–15). Specifically, National Union argues that Magma, not National Union, caused Magma's loss because "the only 'wrongdoer' responsible for Magma's alleged securities violations was Magma, which allegedly used intellectual property belonging to Synopsis in patents issued by Magma." (*Id.*). National Union's focus on the alleged securities violations is misplaced. The right to which Genesis has become subrogated is Magma's right to recover against National Union for breach of Magma's insurance contract with National Union. *See Clarendon Nat'l Ins. Co. v. Ins. Co. of the West*, No. CV F 99 5461 SMS, 2006 WL 2594452, at *2 (E.D. Cal. Sept. 11, 2006) (applying California law).

In *Clarendon*, as in *Employers Mutual Liability Insurance Co. of Wisconsin v. Pacific Indemnity Co.*, 334 P.2d 658 (Cal. 1959), discussed in Genesis' memorandum of law in support of its motion for summary judgment, and the present case, one insurer (Clarendon) sued another insurer (ICW) to recover the funds Clarendon had paid in a settlement. Clarendon alleged that it had paid money to defend and settle a claim against the insured; ICW's policy and not Clarendon's policy covered the loss; and Clarendon was entitled to recoup the entire amount it paid from ICW under "the law of equitable subrogation and equitable indemnity." 2006 WL 2594452, at *1. The court ruled in Clarendon's favor, holding that "[t]he right to which Clarendon has become subrogated is the right to coverage defined by the ICW policy. It is thus a

contractual right to which Clarendon has succeeded and which defines the obligation in question." *Id.* at *3.

Thus, *Clarendon* shows that National Union's argument that "[u]nder no stretch of the imagination can it be alleged that National Union . . . was the proximate cause of the alleged securities violations which prompted the settlement" is simply irrelevant. The question is whether National Union breached its insurance contract with Magma by refusing to participate in the Securities Action, which it did. And the right to which Genesis is subrogated is Magma's right to recover for that breach of contract. *Id.* at *2

In arguing to the contrary, National Union relies primarily on *Patent Scaffolding Co. v. William Simpson Construction Co.*, 256 Cal. App. 2d 506, 515–16 (1997), and *Golden Eagle Insurance Co. v. Continental Insurance Co.*, No. C-92-4391-JPV, 1993 U.S. Dist. LEXIS 1519 (N.D. Cal. Feb. 5, 1993). Neither of these cases, however, involved the scenario presented here, i.e., a situation where two insurers have a common insured and one insurer pays a loss for which the other actually is liable. *Patent Scaffolding* was a case in which several insurers had insured against a loss and, after paying the loss, tried to shift responsibility for it to a non-insurer third party. 256 Cal. App. 2d at 507–08. On these facts, which bear no relation to the present case, the court did not allow an equitable subrogation claim without a showing that the third party had, in fact, caused the underlying loss.[13] *Id.* at 512, 516.

Likewise, in *Golden Eagle*, the plaintiff-homeowner accused a broker and the plaintiff's insurer of negligent cancellation of the plaintiff's homeowner insurance policy. 1993 U.S. Dist. LEXIS 1519, at *1. The court held the broker responsible for the erroneous cancellation. *Id.* at

---

[13] *Fireman's Fund Insurance Co. v. Wilshire Film Ventures*, 52 Cal. App. 4th 553 (1997), explained that:

> [t]he problem with *Patent Scaffolding's* "causal connection" approach is that it appears to preclude recovery in any case in which the defendant's negligence is not the cause of the insured's loss, a result inconsistent with the rule articulated in *Patent Scaffolding* itself and the cases on which it relies. [However], the first element of a subrogation claim is satisfied if the insurer proves that the insured suffered a loss for which the defendant is liable *either* (a) because the defendant is a wrongdoer whose act or omission caused the loss *or* (b) because the defendant is legally responsible to the insured for the loss caused by the wrongdoer.

*Id.* at 557 (emphasis in original).

*1–2. In a later suit, the broker's errors and omissions insurer tried to shift the loss to the homeowner's insurer, asserting that it had manipulated the defense in the first case to cause the broker (but not the insurer) to be found liable. *Id.* at *5. Thus, in *Golden Eagle*, like *Patent Scaffolding*, an insurer sought to recover from a third party for a loss it had contracted to cover. In the present case, by contrast, Genesis was forced to cover a loss for which it was not liable and now seeks to recover from the insurer that actually did contract to provide coverage for the loss.

**2. The Ninth Circuit's Determination that Genesis Owed No Coverage for the Securities Action or Settlement Establishes Genesis' "Superior Equities"**

The Ninth Circuit has definitively determined that the Genesis Excess Policy provided no coverage for the Securities Action and that, therefore, Genesis had no obligation to contribute to the settlement of that action. No such determination has been made as to National Union—whether it owes coverage for the Securities Action and settlement under its policy is the question presently before the Court—and it is therefore possible, and Genesis believes probable, that National Union will be found to owe coverage. As such, Genesis occupies a superior equitable position vis-à-vis National Union with respect to the $5 million settlement payment. Assuming the Court determines that National Union does, in fact, owe coverage for the Securities Action, as Genesis believes it must, Genesis's equitable position will be strengthened further.[14] National Union can hardly claim that it would be "unjust" to require it to repay Genesis for a loss for which the Court determines National Union, not Genesis, was contractually liable.

In *Employers Mutual*, the plaintiff insurer, like Genesis, stepped in to protect the insured (Atkinson) after the defendant insurer, who was liable for the loss, refused to do so. The court noted that "plaintiff was under a moral obligation to protect Atkinson since Atkinson in getting insurance from both companies had attempted to get, and thought it had, sufficient coverage to be fully protected. If plaintiff had followed defendant's course of conduct," the court continued, "Atkinson would have been thrown on its own resources although it had paid premiums for

[14] If National Union were somehow found not to owe coverage such that Magma cannot recover from it, Genesis would be unable to recover from National Union either and would be left to recoup its settlement payment and interest from Magma. In that circumstance, therefore, the question of "superior equities" would be moot.

protection." 334 P.2d at 662. The court, therefore, concluded that "[p]ayment of the debt of another under a moral obligation will support equitable subrogation; and the remedy will be applied in all cases where demanded by the dictates of equity, good conscience, and public policy." *Id.* at 664. So, too, in the present case, in which Genesis fulfilled its "moral obligation," and National Union failed to do so.

### G. Genesis Is Entitled To Recover Ten Percent Prejudgment Interest

As with the question of Genesis' right to recover its settlement payment from National Union as Magma's subrogee, this Court (Judge Ware) also has previously held that Genesis is entitled to recover prejudgment interest from National Union calculated at a rate of ten percent per annum. (DE 200 at 2). This determination was not disturbed by Ninth Circuit on appeal and is not subject to being revisited by this Court now. (*See* DE 208). Even if that were not the case, though, for all the reasons previously accepted by Judge Ware, as set forth in Genesis's memorandum in support of its motion for summary judgment, Genesis is entitled to recover ten percent prejudgment interest from National Union.[15]

In its effort to avoid this conclusion, National Union first attempts to sew confusion where there is none in asserting that "[i]n various actions involving claims by insurers for reimbursement of settlement proceeds or defense costs arising out of coverage disputes, this jurisdiction has refused to award pre-judgment interest on such claims asserting that the right to reimbursement was established by the judgment." This simply is not correct, and the cases on which National Union relies are inapposite. The Ninth Circuit has expressly stated that these cases "are not precedent in this circuit" and that "[t]he precedent in this circuit is set forth in our *Highlands* case interpreting California law." *Evanston Ins. Co. v. OEA, Inc.*, 566 F.3d 915, 921 (9th Cir. 2009). Moreover, the Ninth Circuit has consistently recognized that "[w]hile a factual dispute respecting damages will preclude a grant of prejudgment interest under § 3287(a), a legal

[15] As the California Court of Appeals has clearly held, "[i]f the requirements of section 3287, subdivision (a) are met, an award of pre-judgment interest is mandatory." *Emp'rs Mut. Cas. Co. v. Philadelphia Indem. Ins. Co.*, 169 Cal. App. 4th 340, 347 (2008); *see also N. Oakland Med. Clinic v. Rogers*, 65 Cal. App. 4th 824, 828 (1998) ("Under section 3287, subdivision (a) the court has no discretion, but must award pre-judgment interest upon request, from the first day there exists both a breach and a liquidated claim.").

dispute will not." *Highlands Ins. Co. v. Continental Cas. Co.*, 64 F.3d 514, 521 (1995); *see also Evanston*, 566 F.3d at 921 ("It is clear that the 'vesting' provision as interpreted by the California courts and our opinion in *Highlands* relying on California law, requires that the *amount* must be vested, not that the legal entitlement to that amount be vested." (emphasis in original)).

Second, National Union argues that it should not be required to pay prejudgment interest because "accrual of interest on a liquidated claim is suspended during any period of time a defendant is prevented from paying the debt by law or by any act of the plaintiff." (DE 292 at 23 (citing Cal. Civ. Code. § 3287(a))). Notably, National Union does not actually assert that it has at any time been "prevented" from paying the $5 million limit of liability of its excess policy. Nor could it. Even if National Union were correct that it never has been obligated to pay because the 04/06 ERII Policy never has been determined to have been exhausted, and it is not, not being obligated to pay is far different than being prevented from paying. National Union could have paid its $5 million at any time; it simply has chosen not to. National Union does not contend otherwise.

Finally, in an attempt to avoid paying the full amount of the statutory prejudgment interest to which Genesis is entitled, National Union contends that interest should be calculated at "the applicable prime rate or, at a maximum, 7% per annum," not ten percent per annum as clearly required by California law. In supposed support of this assertion, National Union cites to Article XV of section I of the California Constitution, which provides that "[t]he rate of interest upon a judgment rendered in any court of this state <u>shall be set by the Legislature</u> at not more than 10% per annum," that "[s]uch rate <u>may</u> be variable and based upon interest rates charged by federal agencies or economic indicators, or both," and that "<u>[i]n the absence of the setting of such rate by the Legislature</u>, the rate of interest on any judgment rendered in any court of the state shall be 7% per annum." (DE 292 at 24 (emphasis added)). National Union does not dispute, because it cannot, that the California Legislature has set the rate of interest at ten percent per annum. Cal. Civ. Code. § 3289(b) ("If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a

breach."). This is within the bounds set by the California Constitution, and the fact that the Legislature has set an interest rate renders the default, seven percent rate set forth in the Constitution irrelevant. Moreover, while this rate is not "variable" or "based upon interest rates charged by federal agencies or economic indicators," this is entirely permissible. There is nothing in the Constitution that requires this; it only provides that the Legislature "may" do this if it wishes. The Legislature made a different choice and opted for a fixed interest rate. Because the Legislature has set the rate of interest on breach of contract actions at ten percent, this Court is required to apply that rate. *See Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez)*, 484 F.3d 1098, 1101 (9th Cir. 2007) ("It is well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism."); *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988) ("The recognized general rule is that state law determines the rate of prejudgment interest in diversity actions."). The Court cannot simply disregard California law, as National Union would have it do, based on National Union's vague notion that awarding interest at this rate somehow would not be fair.[16]

## III. CONCLUSION

For the foregoing reasons, as well as those set forth in Genesis' Motion for Partial Summary Judgment and the materials submitted therewith, Genesis is entitled to partial summary judgment against National Union in the amount of $5 million plus prejudgment interest at the rate of 10 percent per annum.

THIS SPACE INTENTIONALLY BLANK

[16] It is telling that National Union cites no authority from this Court or the Ninth Circuit, relying instead on a forty-five year-old decision from the Second Circuit. (DE 292 at 24 (citing *Norte & Co. v. Huffines*, 416 F.2d 1189, 1191–92 (2nd Cir. 1969))).

Dated: January 30, 2015

By: /s/ Robert J. Stumpf, Jr.

Robert J. Stumpf, Jr. (Cal. Bar No. 72851)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
E-mail: RStumpf@sheppardmullin.com

AND

Lewis K. Loss
(Admitted Pro Hac Vice)
LOSS, JUDGE & WARD, LLP
Two Lafayette Centre
1133 21st Street, N.W.
Suite 450
Washington, D.C. 20036
Telephone: (202) 778-4060
Facsimile: (202) 778-4099
Email: lloss@ljwllp.com

*Attorneys for Plaintiff and Counterclaim Defendant Genesis Insurance Company*