**LEWIS BRISBOIS BISGAARD & SMITH** LLP
GLENN A. FRIEDMAN, SBN 104442
  Email:  glenn.friedman@lewisbrisbois.com
MICHAEL K. JOHNSON, SBN 130193
  Email: michael.johnson@lewisbrisbois.com
PAUL A. DESROCHERS, SBN 214855
  Email:  paul.desrochers@lewisbrisbois.com
 333 Bush Street, Suite 1100
San Francisco, CA  94104-2872
Telephone: 415.362.2580
Facsimile:  415.434.0882

Attorneys for Defendant and Counter/Cross-Defendant
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GENESIS INSURANCE COMPANY,<br><br>                    Plaintiff/Counter-Defendant,<br><br>          vs.<br><br>MAGMA DESIGN AUTOMATION, INC. *et al*,<br><br>                    Defendant/Counter-Claimant. | Case No. 06-CV-05526 EJD<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, AS TO MAGMA'S CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:    June 9, 2016**<br>**Time:    9:00 a.m.**<br>**Crtrm.: 8, 4th Floor**<br>**Judge:  Hon. Edward J. Davila** |
| AND ALL RELATED COUNTER-CLAIMS, CROSS-CLAIMS, AND THIRD PARTY COMPLAINTS. | |

MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR BREACH OF
CONTRACT AND BREACH OF THE COVENANT;  MEMORANDUM OF POINTS AND AUTHORITIES

1    **PLEASE TAKE NOTICE** that on  June 9, 2016 , at 9:00 a.m., before the Honorable United

2    States District Judge Edward J. Davila, in Courtroom 8 of the above-captioned Court located at 280

3    South First Street, San Jose, California, 95113, Defendant and Counter/Cross-Defendant  ("National

4    Union") will and hereby does move the Court pursuant to Fed. R. Civ. P. 56 for summary judgment

5    against Magma Design Automation, Inc. ("Magma"), on Magma's claims for (1) breach of contract

6    and (2) breach of the implied covenant of good faith and fair dealing.

7        This Motion is based on this Notice, the Points and Authorities below, the Separte Statement

8    of Facts, declaration of counsel and other evidence filed and lodged herewith, the record before the

9    Court, and such further evidence or argument which may be submitted.

10   DATED: January 12, 2016                LEWIS BRISBOIS BISGAARD & SMITH LLP
                                            By:_____/s/ Paul A. Desrochers_____
11                                              Glenn A. Friedman
                                                Michael K. Johnson
12                                              Paul A. Desrochers
                                                Attorneys for Defendant and Counter/Cross Defendant
13                                              NATIONAL UNION FIRE INSURANCE COMPANY
14                                              OF PITTSBURGH, PA.

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS ............................................................................................................... 1

   A.    Factual Background ................................................................................ 1

      1.    Magma's Insurance Policies ....................................................... 1

      2.    Underlying Litigation and ERII Acceptance of Notice of
         Circumstances ............................................................................ 3

   B.    Procedural History ................................................................................. 5

      1.    Filing of the Instant Action ........................................................ 5

      2.    Settlement of the Securities Actions ........................................... 6

      3.    First Motions for Summary Judgment and First Appeal ............ 6

      4.    Second Motions for Summary Judgment and Second Appeal ..... 9

      5.    Third Motions for Summary Judgment and Third Appeal ......... 10

III.  STANDARD ON SUMMARY JUDGMENT ..................................................... 11

IV.   NATIONAL UNION IS ENTITLED TO SUMMARY JUDGMENT
    AGAINST MAGMA'S CLAIM FOR BREACH OF CONTRACT. ................... 12

V.    NATIONAL UNION IS ENTITLED TO SUMMARY JUDGMENT
    AGAINST MAGMA'S CLAIM FOR BAD FAITH. ........................................ 14

   A.    There Was No Breach Of Contract, Therefore There Is No Bad Faith ......... 14

   B.    Magma Cannot Claim Bad Faith Because It Has Not Been Damaged ......... 14

   C.    National Union is Entitled to Summary Adjudication of Magma's "Bad
      Faith" Claim Because There is a Genuine Dispute Regarding Coverage
      Under the National Union Policy ........................................................... 15

      1.    Legal Standards for "Genuine Dispute" Defense to Bad Faith ......... 15

      2.    There Has Been At All Times A Genuine Dispute As To Which
         Policy Period Should Be Invoked ............................................. 18

         (a)    The "Notice of Circumstances" Issue ........................... 18

         (b)    The Exhaustion Issue ................................................... 21

   D.    Post-Litigation Conduct May Not Form the Basis for Bad Faith ........... 23

VI.   CONCLUSION ................................................................................................ 25

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page

## SUPREME COURT CASES

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ........................................................... 12

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) ...................................................... 11, 12

*Matsushita Elec. Indus. v. Zenith Radio Corp.*
  475 U.S. 574 (1986) ........................................................... 11

## FEDERAL COURT CASES

*Addisu v. Fred Meyer, Inc.*
  198 F.3d 1130 (9th Cir. 2000) ............................................. 11

*Amadeo v. Principal Mut. Life Ins. Co.*
  290 F.3d 1152 (9th Cir. 2002) ............................................. 16

*Arbol Media, Inc. v. Hartford Cas. Ins. Co.*
  No. SACV 02-0244-JVS(MLGx), 2003 U.S. Dist. LEXIS 28465 (C.D. Cal. July 7, 2003) ... 24

*Barlow v. Ground*
  943 F.2d 1132 (9th Cir. 1991) ............................................. 12

*Bravo v. U.S. Life Ins. Co.*
  701 F. Supp. 2d 1145 (E.D. Cal. 2010) ................................. 16

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*
  971 F.2d 272 (9th Cir. 1992) ......................................... 17, 24

*Cont'l Cas. Co. v. U.S. Fid. & Guar. Co.*
  516 F. Supp. 384 (N.D. Cal. 1981) ...................................... 23

*Crenshaw v. Mony Life Ins. Co.*
  No. 02cv2108-LAB (RBB), 2004 U.S. Dist. LEXIS 9883 (S.D. Cal. Apr. 30, 2004)...16, 24, 25

*Franceschi v. Am. Motorists Ins. Co.*
  852 F.2d 1217 (9th Cir. 1988), cert. denied, 507 U.S. 914 (1993) ......................... 17

*Genesis Ins. Co. v. Magma Design Automation, Inc.*
  386 F. App'x 728 (9th Cir. 2010) ........................................... 9

*Genesis Ins. Co. v. Magma Design Automation, Inc.*
  06 F. App'x 679 (9th Cir. 2013) ........................................... 10

*Her v. State Farm Ins. Co.*
  No. 1:13-CV-1095 AWI GSA, 2015 U.S. Dist. LEXIS 31310 (E.D. Cal. Mar. 13, 2015) ..... 16

*Nautilus Ins. Co. v. OneBeacon Ins. Group, Ltd.*
  No. CV 12-08399 DDP (JCGx), 2014 U.S. Dist. LEXIS 62713 (C.D. Cal. May 6, 2014) ..... 13

*Safeco Ins. Co. v. Guyton*
  692 F.2d 551 (9th Cir. 1982) ............................................. 17

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Scammacca v. Royal Maccabees Life Ins. Co.*
   9 F. App'x 608 (9th Cir. 2001) .................................................................................. 24

*S.J. Amoroso Constr. Co. v. Exec. Risk Indem., Inc.*
   No. C 06-2572, 111, 2009 U.S. Dist. LEXIS 116080 (N.D. Cal. Dec. 11, 2009) ................. 14

*T.G.S. Transp., Inc. v. Canal Ins. Co.*
   216 F. App'x 708 (9th Cir. 2007) ............................................................................. 18

**CALIFORNIA STATE CASES**

*1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*
   135 Cal. App. 4th 1008 (2006) ................................................................................. 14

*Cal. Physicians' Serv. v. Superior Court*
   9 Cal. App. 4th 1321 (1992) .................................................................................... 23

*Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*
   175 Cal. App. 3d 1 (1985) ................................................................................. 16, 19

*Ceresino v. Fire Ins. Exch.*
   215 Cal. App. 3d 814 (1989) ................................................................................... 13

*Chateau Chamberay Homeowners Ass'n v. Associated Internat. Ins. Co.*
   90 Cal. App. 4th 335 (2001) ......................................................................... 16, 17, 25

*Cmty. Redevelopment Agency v. Aetna Cas. & Sur. Co.*
   50 Cal. App. 4th 329 (1996) .................................................................................... 22

*Coleman v. Gulf Ins. Group*
   41 Cal. 3d 782 (1986) ............................................................................................ 25

*Congleton v. Nat'l Union Fire Ins. Co.*
   189 Cal. App. 3d 51 (1987) ................................................................................. 16, 17

*Cont'l Cas. Co. v. Royal Ins. Co.*
   219 Cal. App. 3d 111 (1990) ................................................................................... 23

*De Anza Santa Cruz Mobile Estates Homeowners Ass'n v. De Anza Santa Cruz Mobile Estates*
   94 Cal. App. 4th 890 (2001) .................................................................................... 24

*Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.*
   227 Cal. App. 3d 563 (1991) ................................................................................... 22

*Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*
   130 Cal. App. 4th 1078 (2005) ....................................................................... 12, 13, 14

*Fireman's Fund Ins. Co. v. Md. Cas. Co.*
   65 Cal. App. 4th 1279 (1998) .................................................................................. 13

*Fraley v. Allstate Ins. Co.*
   81 Cal. App. 4th 1282 (2000) .................................................................................. 17

*Green Wood Indus. v. Forceman Internat. Dev. Group, Inc.*
   156 Cal. App. 4th 766 (2007) .................................................................................. 13

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*J.B. Aguerre, Inc. v. Am. Guarantee & Liab. Ins. Co.*
  59 Cal. App. 4th 6 (1997) ........................................................................................ 15

*Jordan v. Allstate Ins. Co.*
  148 Cal. App. 4th 1062 (2007) ................................................................................. 16

*KPFF, Inc. v. Cal. Union Ins. Co.*
  56 Cal. App. 4th 963 (1997) ............................................................................... 18, 19

*Kransco v. Am. Empire Surplus Lines Ins. Co.*
  23 Cal. 4th 390 (2000) ............................................................................................. 19

*Love v. Fire Ins. Exch.*
  221 Cal. App. 3d 1136 (1990) .................................................................................. 14

*Morris v. Paul Revere Life Ins. Co.*
  109 Cal. App. 4th 966 (2003) ................................................................................... 18

*Nager v. Allstate Ins. Co.*
  83 Cal. App. 4th 284 (2000) ..................................................................................... 17

*Nies v. Nat'l Auto. & Cas. Ins. Co.*
  199 Cal. App. 3d 1192 (1988) .................................................................................. 23

*Old Republic Ins. Co. v. Fsr Brokerage*
  80 Cal. App. 4th 666 (2000) ..................................................................................... 23

*Opsal v. United Servs. Auto. Ass'n*
  2 Cal. App. 4th 1197 (1991) ..................................................................................... 16

*Palmer v. Ted Stevens Honda*
  193 Cal. App. 3d 530 (1987) .................................................................................... 24

*Patent Scaffolding Co. v. William Simpson Constr. Co.*
  256 Cal. App. 2d 506 (1967) .................................................................................... 13

*Piscitelli v. Friedenberg*
  87 Cal. App. 4th 953 (2001) ..................................................................................... 14

*Prichard v. Liberty Mut. Ins. Co.*
  84 Cal. App. 4th 890 (2000) ..................................................................................... 13

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*
  161 Cal. App. 4th 184 (2008) ................................................................................... 21

*Ringler Assocs. v. Md. Cas. Co.*
  80 Cal. App. 4th 1165 (2000) ................................................................................... 13

*R & B Auto Center, Inc. v. Farmers Group, Inc.*
  140 Cal. App. 4th 327 (2006) ................................................................................... 18

*San Diego Hous. Com v. Indus. Indem. Co.*
  68 Cal. App. 4th 526 (1998) ..................................................................................... 14

*/ / /*

**TABLE OF AUTHORITIES**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Silberg v. Cal. Life Ins. Co.*
    11 Cal. 3d 452 (1974) ................................................................................. 22

*State Farm Fire & Cas. Co. v. Superior Court*
    45 Cal. App. 4th 1093 (1996) ..................................................................... 16

*Tomaselli v. Transamerica Ins. Co.*
    25 Cal. App. 4th 1766 (1994) ..................................................................... 25

*Tradewinds Escrow v. Truck Ins. Exch.*
    97 Cal. App. 4th 704 (2002) ....................................................................... 13

*Wells Fargo Bank v. Cal. Ins. Guarantee Ass'n*
    38 Cal. App. 4th 936 (1995) ......................................................................... 2

*Wilson v. 21st Century Ins. Co.*
    42 Cal. 4th 713 (2007) ................................................................................ 16

### ILLIONIS CASE

*Harbor Ins. Co. v. Arthur Andersen & Co.*
    149 Ill. App. 3d 235 (1986) ........................................................................ 18

### KENTUCKY CASE

*Knotts v. Zurich Ins. Co.*
    197 S.W. 3d 512 (Ky. 2006) ....................................................................... 24

### FEDERAL RULES

Fed. R. Civ. P. 56 ................................................................................................ 1
Fed. R. Civ. P. 56(a) ......................................................................................... 11
Fed. R. Civ. P. 56(c) ......................................................................................... 11


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# I.    INTRODUCTION

This case has a long history.  However, there have been several constants.

First, it is undisputed that in 2004, Executive Risk Indemnity Inc. ("ERII") accepted the "notice of circumstances" provided to it by its insured Magma Design Automation, Inc. ("Magma") that could lead to a claim under its 2003/2004 claims made policy.  This decision by ERII was subsequently relied upon and acted on by Magma and its insurers when the underlying Securities Actions were being defended by ERII and settled by Magma's insurers.  There is no dispute that the defense and settlement of the underlying case were fully funded by Magma's insurers, the primary carrier, ERII, the first layer excess carrier, Genesis, and the second layer excess carrier, XL.

Second, it is undisputed that the primary policy in the 2004-06 policy period – the policy period that included National Union's $5 Million excess policy – was not exhausted by payments from the 2004-06 primary policy limits.  ERII defended the Securities Actions under the 2003-04 primary policy, and the settlement was funded with ERII's remaining limits from the 2003-04 primary policy.  It was not until after the decision in Genesis II, as this action was pending, that ERII purported to "reallocate" those payments from the 2003-04 policy period, to the 2004-06 policy period.

Third, it is undisputed that the settlement funds in question were paid by Genesis.

Finally, under well-established California law, and based on the undisputed facts, there has at all times been a genuine dispute among the parties as to whether the Genesis 2003-04 Excess Policy or the National Union 2004-2006 Excess Policy should apply.  Therefore Magma cannot prove a claim for breach of contract or breach of the implied covenant against National Union.

# II.    FACTS

## A.    Factual Background

### 1.    Magma's Insurance Policies

Magma obtained a $10 million Directors and Officers ("D&O") liability insurance policy from Executive Risk Indemnity, Inc. ("ERII") for the period of December 15, 2003 to December 15, 2004 ("ERII 2003-04 Policy").  ( Fact 1. ) [Reference is to the Moving Party National Union's Separate Statement, submitted herewith pursuant to the Court's Standing Order for Civil Cases, section IV.B.] The ERII 2003-04 Policy contained a "notice of circumstances" provision, Section 15(b), stating:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

(b)      If during the Policy Period an Insured:

(i)      becomes aware of circumstances which could give rise to a Claim and gives written notice of such circumstances to the Company; … then any Claim subsequently arising from the circumstances referred to in (i) above … shall be deemed to have been first made during the Policy Period in which the written notice described in (i) … above was first given by an Insured to the Company, provided any such subsequent Claim is reported to the Company as set forth in Subsection 15(a) above. With respect to any such subsequent Claim, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent Claim is actually made.  (Fact 8.)

Magma also obtained a first-layer excess D&O liability insurance policy from Genesis for the same policy period ("Genesis 2003-04 Policy"). (Fact 2.)  The Genesis 2003-04 Policy is a "following form" policy that incorporates the terms, conditions, and exclusions of the primary ERII 2003-04 Policy,[1] and it had a policy limit of $5 million. (Fact 3.)

After the expiration of the 2003-04 Policy, Magma renewed its primary $10 million D&O liability insurance policy with ERII for the period December 15, 2004 to March 30, 2006 ("ERII 2004-06 Policy"). (Fact 4.)

Magma did not renew its first-layer excess liability insurance policy with Genesis, but instead obtained a new first-layer excess insurance policy from National Union for the 2004-06 period ("National Union 2004-06 Policy"). (Fact 5.)  Like the Genesis 2003-04 Policy, the National Union 2004-06 Policy is a following form policy, and it also had a policy limit of $5 million. (Fact 5.)  The National Union 2004-06 Policy includes an "exhaustion" provision which states:

It is expressly agreed that liability for any covered loss with respect to Claims first made against the Insureds during the Policy Period … and reported in writing to the Insurer pursuant to the terms of this policy shall attach to the Insurer only after the Underlying Insurers and/or the Insureds or the Company shall have paid the full amount of the Total Underlying Limits … .  (Fact 26.)

The National Union 2004-06 Policy defines "Total Underlying Limits" as "the amount set forth in item 4(b) of the Declarations, which is the aggregate sum of the limit of liability of all Underlying Policies."  (Definitions, para. II.(f).)  The term "Underlying Policy(ies)" is defined to mean

---

[1]      "A 'following form' policy incorporates the terms and conditions of another carrier's policy and provides the same scope of coverage as the underlying policy." *Wells Fargo Bank v. Cal. Ins. Guarantee Ass'n*, 38 Cal. App. 4th 936, 940 (1995).



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT

1   "any policy set forth in item 5 of the Declarations."  (Definitions, para. II(h).)  The National Union

2   2004-06 Policy Declarations state in Item 4(b) that its "Total Underlying Limits" are $10 Million, and

3   in Item 5, the Declarations identify the primary underlying policy as Chubb [ERII] policy no. 6800-

4   1349, with limits of $10 Million, **for the 2004-06 policy period**. (emphasis added) (Fact 27.)

5       Above the Genesis and National Union first layer excess policies, there was a second layer

6   excess insurer, XL Insurance Specialty Insurance Company ("XL").  XL provided excess coverage for

7   Magma in both the 2003-04 and 2004-06 policy periods, with limits of $5 million per claim above the

8   underlying $15 million coverage ("XL Excess Policy"). (Fact 6.)

9               **2.      Underlying Litigation and ERII Acceptance of Notice of Circumstances**

10      As a result of a contentious, long-standing dispute between Synopsys, Inc. and Magma, in

11  September 2004, Synopsys filed an action against Magma alleging patent infringement: *Synopsys, Inc.*

12  *v. Magma Design Automation*, No. 3:04-cv-03923-MMC (N.D. Cal.) ("*Synopsys* Action").  (Fact 7.)

13      Since the *Synopsys* Action was filed during the 2003-04 policy period, Magma notified ERII

14  and Genesis of the action: Magma's insurance broker, ABD Insurance and Finances Services

15  ("ABD"), sent a letter dated September 28, 2004 with a copy of the *Synopsys* complaint to ERII, to

16  Genesis, and to XL, to serve as a notice of circumstances pursuant to the 2003-04 Policy, should a

17  future D&O claim arise out of the *Synopsys* Action. (Fact 9.)  National Union did not insure Magma at

18  this time, and was not privy to Magma's communications with those insurers.

19      On or about November 9, 2004, Rian Jorgensen of ABD called Richard Nace of ERII to

20  request that ERII accept the *Synopsys* complaint as a notice of circumstances under the ERII 2003-04

21  Policy.  In this discussion, Mr. Jorgensen advised Mr. Nace that Magma had a patent lawsuit "morph

22  into a D&O matter in the past and [that Magma wanted] to be really careful." (Fact 10.)  Thus, Magma

23  had reason to believe at that time that its directors and officers could be sued as a result of the

24  *Synopsys* Action.

25      Subsequent to Mr. Nace's discussion with Mr. Jorgensen, and pursuant to Magma's request,

26  ERII issued a coverage letter to Magma in which it agreed to accept the *Synopsys* complaint as a

27  "notice of potential future claim," thus preserving coverage under the ERII 2003-04 Policy for any

28  future D&O claim arising out of the *Synopsys* Action. (Fact 11.)  In his March 7, 2008 declaration

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   submitted in support of Magma's opposition to various summary judgment motions in this action, Mr.

2   Nace stated that, based on the information provided to him by Magma and Magma's broker, "On or

3   about November 9, 2004, I sent a letter … to Ms. Roemer at Magma accepting the Patent Litigation as

4   notice of circumstances that could give rise to a Claim under the 2003 Policy pursuant to Section

5   15(b) of the … 2003 policy ("Notice of Potential Claim" or "NOPC")." (Facts 10, 11)

6       On December 28, 2004, XL notified Magma that it was adopting the same position as ERII

7   and agreed to accept the *Synopsys* complaint and Magma's September 28, 2004 letter as "notice of

8   circumstances" under the XL 2003-04 Policy. (Fact 12.)

9       Genesis did not reject Magma's request that it accept the *Synopsys* complaint as a "notice of

10  circumstances" under its 2003-04 policy nor did Genesis in any way indicate the notice of

11  circumstance was insufficient or inadequate.  (Fact 13.)  Thus, Genesis was silent on the issue and

12  never affirmatively accepted the *Synopsys* patent lawsuit as notice of circumstances that could lead to

13  a claim against Magma's directors and officers.

14      Following its receipt of ERII's November 9, 2004 correspondence accepting "notice of

15  circumstances" under the ERII 2003-04 Policy, Magma did not provide further information to ERII or

16  its other carriers regarding the *Synopsys* patent infringement claim or any potential claims that could

17  arise.  There was no reason for Magma to provide additional information to ERII inasmuch as ERII

18  had stated in writing that the information already provided satisfied ERII's needs for a notice of

19  circumstances. (Fact 14.)

20      In June 2005, after the expiration of the 2003-04 Policy, Magma's shareholders filed a

21  securities class action against Magma, *In re Magma Design Automation, Inc. Securities Litigation*,

22  No. 3:05-cv-02394-CRB (N.D. Cal.), and in July 2005, Magma's shareholders filed a shareholder

23  derivative action against Magma, *Willis v. Madhavan et al.*, No. 105CV045834 (Cal. Super. Ct., Santa

24  Clara County) (collectively, the "Securities Actions"). (Fact 15.)

25      While the Securities Actions were filed during the 2004-06 policy period, ERII concluded,

26  based upon the information it had previously received from Magma and its broker, that the earlier

27  *Synopsys* action constituted a "notice of circumstances" as to the Securities Actions, and placed the

28  coverage under its 2003-04 Policy. (Fact 16.)

MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT



In a declaration filed with this court, Mr. Nace explained that, upon receipt of the Securities Class Action, he "reviewed ERII's files and determined that the Securities Class Action arose from the circumstances that were the subject of the NOPC ["Notice of Potential Claim"] that I discussed with Mr. Jorgensen on or about November 9, 2004, and that the Securities Class Action therefore should be a claim deemed to have been first made during the Policy Period of the 2003 Policy, which is when Magma had provided the NOPC." He made the same determination with regard to the Derivative Action.   Mr. Nace also determined that the Securities Class Action and Derivative Action were "Related Claims" and "therefore must be treated as a single Claim first made on the date the earliest of the Claims was deemed made, that is, during the Policy Period of the 2003 Policy." (Fact 17.)

National Union first learned about Magma's prior notice from ERII's coverage letter which indicated that coverage would not be provided under the ERII 2004-06 Policy. (Fact 19)  Accordingly, the defense of the Securities Actions was funded under the ERII 2003-04 Policy. (Fact 20.)

Genesis disagreed with ERII's placement of coverage under its 2003-04 policy, and denied coverage for the Securities Actions based on its contention that it had not accepted the notice of circumstances provided by Magma, or agreed with the decisions by ERII and XL to accept "notice of circumstances" under the 2003-04 policies. (Fact 18.)  Because the loss had been placed in the 2003-04 policy period by the primary carrier, National Union denied coverage under its policy. (Fact 19.)

**B.     Procedural History**

       **1.     Filing of the Instant Action**

In September 2006, Genesis commenced the instant action. It filed a complaint for declaratory relief against Magma, seeking a declaration that the securities actions did not invoke the Genesis 2003-04 Policy, and thus Genesis owed no coverage. [Dkt. No. 1.]  In October 2006, Magma, through its counsel Farella Braun + Martel ("Farella Braun") filed an answer and counterclaim seeking a determination as to whether the Genesis 2003-04 Policy or the National Union 2004-06 Policy applied to the securities actions.  [Dkt. No. 10.] Magma also filed a third-party complaint against National Union seeking the same determination, and against ERII seeking a declaration as to whether the ERII 2003-04 Policy or the ERII 2004-06 Policy applied.  [Dkt. No. 11.]  Magma's third-party complaint did not include a claim for bad faith against National Union.  (Fact 30.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-4483-9980.1                                                      5                                      06-CV-05526 EJD
MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

1    In December 2006, ERII answered and counterclaimed for declaratory relief seeking a

2    declaration that the securities actions were covered by either the ERII 2003-04 Policy or the ERII

3    2004-06 Policy, but not both. [Dkt. No. 26.]  At Magma's request, the coverage litigation was stayed

4    pending resolution of the Securities Actions. [Dkt. No. 48.]

5                    **2.      Settlement of the Securities Actions**

6    In November 2007, Magma and its insurers settled the Securities Actions. (Fact 21.) ERII paid

7    the remaining limits from its $10 million of its policy limit towards the settlement, and recorded it as

8    coverage under the 2003-04 Policy. (Fact 22.)  Genesis paid its $5 million policy limits towards the

9    settlement, purportedly under a full reservation of rights.  Moreover, XL contributed its $5 million

10   limits under the XL 2003-04 Policy. (Fact 23.)

11   Other than satisfying its retention obligation under its policy with ERII, Magma did not

12   contribute from its own pocket any money to fund its defense of any of the covered claims asserted in

13   the Securities Actions or in the settlement of the Securities Actions. (Fact 24.)  As the loss had been

14   placed in the 2003-04 policy period, National Union did not contribute to the settlement.

15                    **3.      First Motions for Summary Judgment and First Appeal**

16   Following settlement of the Securities Actions, the parties resumed the instant litigation and

17   Genesis and National Union filed motions for partial summary judgment. [Dkt. Nos. 85 and 87]

18   Although neither motion was directed at it, ERII submitted a "Statement of Position" with

19   discussion of its analysis of the Securities Actions and the basis for its determination that they

20   constituted "related claims" under the ERII policies.  ERII advised the Court and all parties that:

21       "ERII has committed to contribute what remains of the Limits of Liability to **the ERII
         03/04 Policy** toward settlement of the [Securities Actions].  Upon ERII's contribution

22       toward these settlements, the **Limits of Liability of the ERII 03/04 Policy will be
         exhausted** and ERII will have no further obligations under that Policy.  **If** this Court

23       should determine, however, that the [Securities Actions] are properly deemed first
         made during the Policy Period of the ERII 04/06 Policy instead, ERII will adjust its

24       records to reflect that all amounts paid in connection with those actions were paid
         under the ERII 04/06 Policy.  **If** this should occur, the Limits of Liability of the ERII

25       04/06 Policy would be exhausted by the amount of ERII's payments instead, and ERII
         will have no further obligations under that Policy." (Fact 29.)

26

27   Magma, through Farella Braun, opposed Genesis' motion for partial summary judgment,

28   taking the position that "**Magma provided Genesis with sufficient Notice of Circumstances during**

4844-4483-9980.1                                                        6                                              06-CV-05526 EJD

MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   the 2003-2004 Policy Period." Magma's counsel argued that "Genesis waived any right to reject

2   Magma's Notice of Circumstances as "defective." It was Magma's express position that "The

3   Underlying Actions are all related claims deemed made during the 2003-04 Policy Period." Magma's

4   opposition was signed by its attorney John D. Green of Farella Braun. (Fact 31.)

5         Magma also opposed National Union's Motion for Partial Summary Judgment, on the basis

6   that, although ERII "accepted its obligation to provide coverage to Magma under the 2003-04 Policy,"

7   should the Court determine that the Securities Actions should be deemed as falling within the 2004-06

8   policy period, "ERII will reallocate its payment to that second policy period in accordance with

9   Court's ruling." Magma contended that such "reallocation" would exhaust the 2004-06 ERII Policy

10  and "trigger coverage under the National Union Policy." In conclusion, Magma reiterated its position

11  that: "… **Magma believes that the Genesis Policy is triggered, given the timing of notice and**

12  **Genesis's duty to investigate and its duty to advise the insured as to any shortcomings in such**

13  **notice**." Magma's opposition was signed by its attorney John Green of Farella Braun. (Fact 32.)

14        With its papers, Magma submitted the declaration of Mr. Nace, ERII's adjuster responsible for

15  the handling of the claims at issue, wherein Mr. Nace explained that in September 2004, ERII's claim

16  department received a letter from Magma's insurance broker, enclosing a copy of the complaint in the

17  Synopsys Action, and that the letter "requested that ERII accept the letter as a notice of Claim or as a

18  notice of circumstances that could give rise to a Claim under the 2003 Policy." Nace thereafter spoke

19  on the telephone with Magma's broker, who again "requested that ERII accept the Patent Litigation as

20  a notice of circumstances that could give rise to a Claim under the 2003 Policy," and Magma's broker

21  further explained that "Magma had, in the past, had a patent suit become a directors' and officers'

22  liability claim." Accordingly, Nace sent a letter to Magma "accepting the Patent Litigation as notice

23  of circumstances that could give rise to a Claim under the 2003 Policy …." (Fact 10)

24        At the hearing of the motions, Magma's attorney Katina Ancar explained Magma's position to

25  the court as follows, and specifically told that court that the arguments it was advancing (the same

26  arguments relied upon by National Union) are "reasonable:"

27        **There's a reasonable argument and basis for why one policy should be chosen**
    **over another.** [¶] Magma believes that it's the '03 – '04 policy which should be

28       covered and, therefore, the excess policies should cover the underlying claims and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Magma believes that for two reasons:  One, because Magma provided a Notice of Circumstance to Genesis and Notice of Circumstance which Genesis accepted; and, two, because the underlying claims are related to the patent infringement case pursuant to the related claims provision in the '03 – '04 policies.  (Fact 33.)

Thus, in 2008, ERII had made it known that its payments were being made pursuant to the 2003-04 Policy, and Magma stated the position that Magma's notice of circumstances given to Genesis triggered coverage under Genesis' policy.  Both ERII and Magma had represented to the court, and everybody understood, that "if" the Court determined that there was coverage under the 2004-06 Policy, "then" National Union's policy might be triggered, but not before.

In July 2008, the district court granted partial summary judgment for National Union, holding that the *Synopsys* Action constituted a notice of circumstances that triggered the 2003-04 Policy, and therefore, Genesis was responsible for providing the first-layer excess coverage of the Securities Actions. (Fact 34.) In reaching its decision, the court explained:

It is undisputed that Magma sent both ERII and Genesis the Infringement Action complaint and accompanying letter, which each party acknowledges was intended to serve as a notice of circumstances.  …  While Magma may not have identified an alleged "Wrongful Act" committed by an insured person, such an identification is not clearly required by the policy language. The policy language refers to the nature of "any alleged Wrongful Acts," which allows for the potential that there may not be "any alleged Wrongful Acts" at the time of the notice.  …  This comports with the underlying purpose of the notice of circumstances—to give notice of potential future claims related to the circumstances.

Magma also made known to ERII and Genesis that it viewed a D&O claim as the potential for covered damages in two ways: (1) by requesting the companies to accept the Infringement Action as a proper notice of circumstances; and (2) by specifically mentioning to Mr. Nace that a patent infringement claim could give rise to a covered claim.  …

Accordingly, the Court finds that Magma gave a proper notice of circumstances within the ERII 03/04 Policy Period.

 (Fact 35.)  In other words, the district court found in 2008 that there was coverage under the 2003-04 Policy and therefore, no coverage under the 2004-06 Policy.

The matter was appealed to the Ninth Circuit (Appeal No. 09-15204), and Magma reiterated its position on appeal.  [*See generally* Brief of Appellee and Cross-Appellant Magma, USCA Case No. 09-15204, Dkt. Item No. 18.]  At oral argument, Magma's counsel Dennis Cusack argued to the panel among other things that "**Magma and National Union and, I think, Executive Risk agree that**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    **coverage in this case ought to fall to Genesis** … ."  Counsel explained, "Executive Risk, the primary

2    carrier, with no dog in this fight, looked at the policy, looked at the same facts, the infringement action

3    and the subsequent securities action and concluded that the earlier policy year, Executive Risk and

4    Genesis above, applies to this case given the notice of circumstances provisions in its policy."

5    Counsel stated "… we specifically told Genesis and Executive Risk … [t]his is a notice of

6    circumstance.  We're telling you that a subsequent claim covered by the directors and officers liability

7    policy may follow.  [¶]  Now, Executive Risk took that infringement action complaint.  An

8    experienced claims manager, presumably applying common sense, their experience **and acting in**

9    **good faith**, said, yes, we accept this as a notice of circumstance." (Fact 36.)

10        Despite the position taken by Magma with regard to the "notice of circumstances" issue, that

11   Magma's own counsel had told the court were "reasonable" and "in good faith," the Ninth Circuit

12   reversed the district court's decision. The Court concluded that the notice of circumstances that

13   Magma provided to Genesis was inadequate, and thus the Genesis 2003-04 Policy was not triggered.

14   See, Genesis Ins. Co. v. Magma Design Automation, Inc. ("Genesis I"), 386 Fed. App'x. 728, 730 (9th

15   Cir. 2010). The case was remanded. (Fact 37.)

16                      **4.     Second Motions for Summary Judgment and Second Appeal**

17        On remand, Genesis filed an amended complaint seeking to recover the $5 million it paid

18   towards the settlement of the securities actions under alternative theories of restitution against Magma

19   and equitable subrogation against National Union.  (Fact 38.)  In response, Magma filed an amended

20   counterclaim and crossclaim asserting claims for: (1) declaratory relief against Genesis, (2)

21   declaratory relief against National Union, (3) breach of contract against National Union, and (4)

22   breach of the implied covenant of good faith and fair dealing against National Union. (Fact 39.)

23        National Union filed FRCP Rule 12(b)(6) motions to dismiss as to both the Genesis and

24   Magma amended pleadings. The primary basis for National Union's motions to dismiss was that

25   neither Genesis nor Magma had plead, nor could they plead, exhaustion of the ERII 2004-06 primary

26   policy underlying the National Union excess policy and without exhaustion of the underlying primary

27   policy there is no coverage under an excess policy. (Fact 40.)

28        Shortly after National Union filed its Rule 12(b)(6) motions, both Genesis and Magma filed

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-4483-9980.1                                    9                              06-CV-05526 EJD
MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

1 motions for summary judgment as to their respective claims. (Fact 41)

2 In December 2010, the district court granted partial summary judgment for Genesis, holding

3 that National Union owed coverage because the Ninth Circuit already ruled that the Genesis 2003-04

4 Excess Policy was not triggered.  The court held that Genesis was entitled to recover the $5 million

5 from National Union under an equitable subrogation theory.  National Union appealed. (Fact 41.)

6 In February 2013, the Ninth Circuit reversed. *Genesis Ins. Co. v. Magma Design Automation,*

7 *Inc.* ("Genesis II"), 506 Fed. Appx. 679, 680 (9th Cir. 2013).  The Ninth Circuit held that ERII

8 invoked its 2003-04 Policy, thus ERII's 2004-06 Policy was not exhausted, and therefore, coverage

9 under the National Union 2004-06 Policy could not be triggered. (*Id.* at p. 3) The Court explained that

10 ERII's statement that it would "adjust its records" to reflect exhaustion of the ERII 2004-06 Policy

11 was "explicitly contingent" on a judicial determination that ERII's decision to invoke the 2003-04

12 Policy based on the notice of circumstances was incorrect; however, "[t]here has been no such

13 determination."  The Court's prior decision in *Genesis I* dealt only with notice to Genesis, not ERII.

14 Since Genesis failed to establish that ERII's 2004-06 policy had been exhausted, the Ninth Circuit

15 reversed and remanded the case with instructions to "determine whether ERII correctly treated the

16 [*Synopsys*] complaint as notice of circumstances that could give rise to a covered claim under its

17 policy." (Fact 42.)

18 **5.      Third Motions for Summary Judgment and Third Appeal**

19 In July 2013, following remand from the Court of Appeal, National Union was permitted to

20 refile its motions to dismiss.  In December 2013, this Court granted National Union's motions to

21 dismiss on the grounds that neither Genesis's amended complaint nor Magma's amended

22 counterclaim and crossclaim alleged exhaustion of the ERII 2004-06 Policy. (Fact 43.)  Genesis and

23 Magma were granted leave to amend and refile their respective pleadings.  The Court also allowed the

24 parties to engage in limited discovery to determine whether there was a material difference between

25 the notice of circumstances sent to Genesis, which the Ninth Circuit found to be inadequate, and the

26 notice sent to ERII. (Fact 45.)

27 In July 2014, Genesis filed its second amended complaint, and Magma filed its Second

28 Amended Counterclaim and Crossclaim. (Fact 46.)  Magma's crossclaim  against National Union

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   alleges a claim for declaratory relief in regard to exhaustion of the primary ERII 2004-06 Policy; a

2   claim for breach of contract on the basis that National Union refused "to reimburse Genesis the $5

3   million Genesis paid towards the settlement of the Underlying Actions;" and a claim for breach of the

4   implied covenant of good faith and fair dealing. (Fact 25.)

5       As damages, Magma contends that it "faces a demand from Genesis to reimburse it in the

6   amount of $5 million plus interest. Magma has also incurred, and will continue to incur, attorney's

7   fees and costs to respond to Genesis's demands." (Fact 25.)

8       In January 2015, Genesis and Magma each filed Motions for Partial Summary Judgment. [See

9   Dkt. Nos. 278, 281.]  After full briefing and oral argument, the court granted Genesis's motion for

10  summary judgment as to its claim for equitable subrogation against National Union, and granted in

11  part Magma's motion for summary judgment  as to its claim for declaratory relief.  (Fact 47.)  The

12  court entered judgment against National Union, and awarded Genesis the full $5 Million that Genesis

13  contributed to the settlement of the Securities Actions, plus prejudgment interest.  The court certified

14  the judgment for appeal under Rule 54(b), and the appeal is currently pending. (Fact 48.)

15      This motion concerns Magma's claims that remain pending in this court.  Magma's claims for

16  Breach of Contract and for Breach of the Implied Covenant of Good Faith and Fair Dealing.

17  **III.     STANDARD ON SUMMARY JUDGMENT**

18      A motion for summary judgment or partial summary judgment should be granted if "there is

19  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

20  Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving

21  party bears the initial burden of informing the court of the basis for the motion and identifying the

22  portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

23  demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

24  (1986).  If the moving party meets this initial burden, the burden then shifts to the non-moving party

25  to go beyond the pleadings and designate specific materials in the record to show that there is a

26  genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324.  The court must draw

27  all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita*

28  *Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    A genuine issue for trial exists if the non-moving party presents evidence from which a

2  reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

3  material issue in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986);

4  *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).  Conversely, summary judgment must be

5  granted where a party "fails to make a showing sufficient to establish the existence of an element

6  essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex Corp.*,

7  477 U.S. at 322.

8  **IV.   NATIONAL UNION IS ENTITLED TO SUMMARY JUDGMENT AGAINST**
   **MAGMA'S CLAIM FOR BREACH OF CONTRACT.**
9

10    To support an action at law for breach of contract, the plaintiff must show it has suffered

11  damage.  Accordingly, where an insured's defense and indemnity is fully funded by other insurers, the

12  insured has not been damaged by a non-participating insurer's failure to contribute, and the insured

13  cannot state a claim for breach of contract against the non-participating insurer.  *Emerald Bay Cmty.*

14  *Ass'n. v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1088 (2005) ("*Emerald Bay*").

15    In *Emerald Bay*, a homeowners association was sued for defamation, and the association was

16  insured by both a directors and officers liability policy issued by Federal, and a commercial general

17  liability policy issued by Golden Eagle. *Id.* at 1083.  Federal (with some contribution to defense fees

18  by Golden Eagle) fully defended and settled the claims. The appellate court affirmed the trial court's

19  judgment for Golden Eagle that was premised on the finding that plaintiff "suffered no cognizable

20  damages" on the first cause of action for breach of contract or the second cause of action for breach of

21  the implied covenant of good faith and fair dealing. *Id.* at 1087.  In affirming, the court of appeal

22  stated, "[s]ince defendant paid a portion of plaintiff's legal expenses and Federal, which concededly

23  had an independent obligation to defend and indemnify plaintiff in the Lopez action, paid the balance

24  of those expenses plus the settlement, plaintiff cannot show it suffered any contract damages." *Id.* at

25  1089.  The Court further explained:

26        The fact that several insurance policies may cover the  same risk does not increase the
          insured's right to recover for the loss, or give the insured the right to recover more than
27        once. Rather, the insured's right of recovery is restricted to the actual amount of the
          loss. Hence, where there are several policies of insurance on the same risk and the
28        insured has recovered the full amount of its loss from one or more, but not all, of the

4844-4483-9980.1                                              12                              06-CV-05526 EJD

MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    insurance carriers, the insured has no further rights against the insurers who have not
2    contributed to its recovery.

3    *Id*. at 1090 (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co*., 65 Cal. App. 4th 1279, 1295 (1998)).

4    *See also Ringler Assocs. v. Md. Cas. Co*., 80 Cal. App. 4th 1165, 1187-88 (2000) ("Thus, even were

5    we to agree with Ringler's contention that respondents [insurers] breached a duty to defend,

6    respondents would still not be liable to Ringler for damages arising from breach of that duty as a

7    matter of law. Ringler was adequately protected by other insurers, and respondents' withdrawal from

8    its defense did not enhance its defense liability or increase the costs it incurred in defense of the

9    underlying lawsuits."); *Nautilus Ins. Co. v. OneBeacon Ins. Group, Ltd*., No. CV12-08399 DDP

10   (JCGx), 2014 U.S. Dist. LEXIS 62713, 19-20 (C.D. Cal. 2014) (following *Emerald Bay* and

11   concluding that a claim of "losses in connection with this [insurance] action" were not sufficient to

12   support a claim for breach of contract and bad faith where the insured was fully protected by other

13   insurance).[2]

14       In its crossclaim against National Union, Magma claims as damages that it "faces a demand

15   from Genesis to reimburse it in the amount of $5 million plus interest. Magma has also incurred, and

16   will continue to incur, attorney's fees and costs to respond to Genesis's demands." (Fact 25.)

17       However, a "demand for reimbursement" and attorneys fees incurred to respond to such

18   demand are not cognizable element of damages.  "A plaintiff may not recover damages for an unpaid

19   liability to a third party, unless the plaintiff proves to a reasonable certainty that the liability could and

20   would be enforced by the third party against the plaintiff or that the plaintiff otherwise could and

21   would satisfy the obligation." *Green Wood Indus. v. Forceman Internat. Dev. Group, Inc.*, 156 Cal.

22   App. 4th 766, 776 (2007).  "[I]t is fundamental that damages which are speculative, remote,

23   _____

24   [2]    Numerous California decisions have applied this rule. *See Tradewinds Escrow v. Truck Ins.
     Exch*., 97 Cal. App. 4th 704, 712 (2002) (defendant insurer not liable for costs of defense in third party
25   action "where other insurers were on the risk and assumed the insured's defense"); *Prichard v. Liberty
     Mut. Ins. Co.*, 84 Cal. App. 4th 890, 909 (2000) (no breach of duty to defend where multiple insurers
26   shared total defense expenses); *Ceresino v. Fire Ins. Exch.*, 215 Cal. App. 3d 814, 823 (1989) (where
     one insurer paid for insured's defense in underlying litigation, second insurer's failure to do so "was
27   of no consequence" to insured); *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App.
     2d 506, 510–11 (1967).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Piscitelli v.*

2  *Friedenberg*, 87 Cal. App. 4th 953, 989 (2001).

3      The undisputed facts are that the Securities Actions were fully defended under the ERII 2003-

4  04 primary policy ( the excess carriers – Genesis and XL – had no obligation to pay for the defense),

5  and the settlement of those actions was fully funded with money contributed by the insurers – ERII,

6  Genesis and XL. (Facts 20, 21, 22, and 23.)  Accordingly, National Union is entitled to summary

7  judgment on Magma's claim for breach of contract, as it is undisputed that Magma has no damages.

8  **V.    NATIONAL UNION IS ENTITLED TO SUMMARY JUDGMENT AGAINST MAGMA'S CLAIM FOR BAD FAITH.**

9      **A.    There Was No Breach Of Contract, Therefore There Is No Bad Faith**

10      In California, the essential elements of a cause of action for breach of the implied covenant of

11  good faith and fair dealing are the withholding of benefits due under the insurance policy

12  unreasonably or without proper cause. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)

13  (an insured cannot maintain a bad faith cause of action based on a contract where the contract terms

14  have not been shown to have been breached, i.e., where no coverage was owed).

15      "Where a breach of contract cannot be shown, there is no basis for a finding of breach of the

16  covenant."  *San Diego Hous. Com v. Indus. Indem. Co.*, 68 Cal. App. 4th 526, 544 (1998); *1231*

17  *Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, *13*5 Cal. App. 4th 1008, 1021 (2006)

18  (where a party "could state no cause of action for breach of contract, it could not assert a claim for bad

19  faith.").  Here, there has been no breach of contract, and therefore there can be no bad faith.

20      **B.    Magma Cannot Claim Bad Faith Because It Has Not Been Damaged**

21      It is undisputed that Magma was fully defended in the Securities Actions by the primary

22  carrier, and the settlement of the Securities Actions was fully funded by insurance money.  Having

23  been fully protected, Magma cannot prove a claim of bad faith against National Union.

24      [W]here one insurer fully protects the insured by providing a defense and full coverage
       for a claim, a second insurer's refusal to defend generally cannot support a tort action

25      for breach of the covenant of good faith and fair dealing because the latter's conduct
       will not enhance the insured's cost of defending itself or its exposure to liability.

26

27  *Emerald Bay*, 130 Cal. App. 4th at 1093; See also, *S.J. Amoroso Constr. Co. v. Exec. Risk Indem.*,

28  *Inc.*, No. C 06-2572, 111, 2009 U.S. Dist. LEXIS 116080 (N.D. Cal. Dec. 11, 2009) ("Executive Risk

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   correctly points out that Amoroso's bad faith claim fails as a matter of law because Amoroso cannot

2   show that it incurred any damages as a result of Executive Risk's refusal to defend because

3   Amoroso's other carrier, St. Paul, paid all of its defense costs.")

4       **C.**    **National Union is Entitled to Summary Adjudication of Magma's "Bad Faith"**

            **Claim Because There is a Genuine Dispute Regarding Coverage Under the**

5               **National Union Policy**

6         "Bad faith litigation is not a game, where insureds are free to manufacture claims for recovery.

7   Every judgment against an insurer potentially increases the amounts that other citizens must pay for

8   their insurance premiums." *J.B. Aguerre, Inc. v. Am. Guarantee & Liab. Ins. Co.*, *59* Cal. App. 4th 6,

9   18 (1997).  The above quotation is apt at this juncture of this case, given that this entire dispute arises

10   from Magma's decision to tender "notice of circumstances" of the Patent Infringement Action in the

11   2003-04 policy period, and the primary carrier's decision to accept that notice of circumstances and

12   provide coverage for the ensuring Securities Actions under the 2003-04 primary policy.  These

13   decisions were followed by Magma's continued efforts, during this litigation, to keep the loss placed

14   in that policy period. National Union was not privy to Magma's belief that the *Synopsis* Action could

15   result in a lawsuit against Magma's directors and officers.  Magma did not advise National Union

16   about the Synopsis notice, and did not consult National Union regarding the adequacy of the notice

17   being given by Magma to its 2003-04 insurers.  Quite simply, National Union did not act in bad faith

18   where Magma decided to try to place coverage under the 2003-04 policy period for future lawsuits

19   against its directors and officers arising out of the *Synopsis* Action.

20         As shown by Magma and its counsel's own actions and admissions, by the primary carrier

21   ERII's actions and admissions, and by the rulings of the district court and court of appeal, there is and

22   has been a genuine dispute among the parties as to the proper policy period (2003-04 or 2004-06) for

23   placement of this loss.  Even viewing the facts in the light most favorable to Magma, a jury could not

24   conclude that National Union acted unreasonably.  Therefore, there is no bad faith as a matter of law.

25              **1.**    **Legal Standards for "Genuine Dispute" Defense to Bad Faith**

26         To prevail on a cause of action for breach of the implied covenant of good faith and fair

27   dealing, the plaintiff must establish that: (1) it is in a contractual relationship with the insurance

28   company or is an express beneficiary of an insurance policy; (2) that benefits are due under the policy;

4844-4483-9980.1                              15                          06-CV-05526 EJD

MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1   and, (3) that the insurance company's withholding of benefits is unreasonable or without proper cause.

2   See, *Her v. State Farm Ins. Co.*, No. 1:13-CV-1095 AWI GSA, 2015 U.S. Dist. LEXIS 31310 (E.D.

3   Cal. 2015); *Bravo v. U.S. Life Ins. Co.*, 701 F. Supp. 2d 1145, 1159 (E.D. Cal. 2010).

4   　　　Bad faith requires conduct which goes beyond mere breach of the contract or negligence.  It

5   implies "unfair dealing rather than mistaken judgment." *Congleton v. Nat'l Union Fire Ins. Co.*, 189

6   Cal. App. 3d 51, 59 (1987) (citation omitted).  An erroneous refusal to pay a claim, alone, does not

7   constitute a breach of the implied covenant of good faith and fair dealing – some additional showing

8   of tortious conduct by the insurer is required. *See Opsal v. United Servs. Auto. Ass'n*, 2 Cal. App. 4th

9   1197, 1205 (1991); *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 15 (1985).

10   　　　Under the genuine dispute doctrine,

11   an insurer denying or delaying the payment of policy benefits due to the existence of a
     genuine dispute with its insured as to the existence of coverage liability or the amount
12   of the insured's coverage claim is not liable in bad faith even though it might be liable
     for breach of contract.

13   *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007) (quoting *Chateau Chamberay*

14   *Homeowners Ass'n v. Associated Internat. Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001)) ("*Chateau*

15   *Chamberay*").  *See also Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1073 (2007) ("Where

16   there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the

17   insured, there can be no bad faith liability imposed on the insurer for advancing its side of that

18   dispute."); *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105 (1996) (bad faith

19   requires "a failure or refusal to discharge contractual responsibilities, prompted not by an honest

20   mistake, bad judgment or negligence but rather by a conscious and deliberate act").

21   　　　The doctrine "allows a district court to grant summary judgment when it is undisputed or

22   indisputable that the basis for the denial of benefits was reasonable – for example, where even under

23   the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California

24   law." *Crenshaw v. Mony Life Ins. Co.*, No. 02cv2108-LBA (RBB), 2004 U.S. Dist. LEXIS 9883 (S.D.

25   Cal. April 30, 2004) (quoting *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir.

26   Cal. 2002)).

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-4483-9980.1                                                    16                              06-CV-05526 EJD
MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

1    When the underlying historical facts are not in dispute, the objective reasonability of the

2  insurer's actions and decisions may be determined as a question of law. *Chateau Chamberay*, 90 Cal.

3  App. 4th at 346. [3]

4    When applying the doctrine, "the reasonableness of the insurer's decisions and actions must be

5  evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of

6  subsequent events that may provide evidence of the insurer's errors." *Id.* at p. 347.  The genuine

7  dispute rule may apply where there is a genuine issue of fact, such as the amount of the insured's loss,

8  as well as a genuine question of law, such as whether the insurer's denial of coverage was reasonable.

9  *Id.,* at p. 348 fn. 7.  The court must consider the totality of the circumstances. *Nager v. Allstate Ins.*

10 *Co.*, 83 Cal. App. 4th 284, 288 (2000).

11    If at the time the insurer makes the decision to deny coverage, it has "a good reason to dispute

12 liability," the insurer is not susceptible to a claim of bad faith failure to make a more thorough

13 investigation. *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272 (9th Cir.

14 1992) (the duty to investigate ends when the insurer has a reasonable basis to deny coverage even if

15 that basis is ultimately determined to be incorrect).  See also, *Franceschi v. American Motorists Ins.*

16 *Co.*, 852 F.2d 1217, 1220 (9th Cir. 1988) ("*Franceschi*") (although the insurer's failure to provide

17 benefits was deemed a breach of contract, the court upheld summary judgment in favor of the insurer

18 dismissing the claim for tortious breach of the covenant of good faith and fair dealing).

19    In *Franceschi*, the insurer refused to pay a claim because a genuine issue existed concerning

20 interpretation of the contract terms and liability. Although the insurer's interpretation of the contract

21 was found to be incorrect, this court concluded as a matter of law that the insurer did not violate its

22 duty of good faith. "[A] court can conclude as a matter of law that an insurer's denial of a claim is not

23 unreasonable, even if the court concludes the claim is payable under the policy terms, so long as there

24

25

26 [3]    Many cases have decided the "genuine dispute" issue by motion for summary judgment. *See,*

27 *e.g.*, *Congleton*, 189 Cal. App. 3d at 62; *Chateau Chamberay, supra*; *Fraley v. Allstate Ins. Co.*, 81
Cal. App. 4th 1282, 1293 (2000); *Nager v. Allstate Ins. Co.*, 83 Cal. App. 4th 284, 293 (2000).

28

1  existed a genuine issue as the insurer's liability." *Id*. at p. 1220 (citing *Safeco Ins. Co.  v. Guyton*, 692

2  F.2d 551, 557 (9th Cir. 1982)).

3  **2.     There Has Been At All Times A Genuine Dispute As To Which Policy
         Period Should Be Invoked**

4  **(a)     The "Notice of Circumstances" Issue**

5  There was a genuine dispute among the parties as to the sufficiency of the "notice of

6  circumstances" given by Magma's broker ABD, which precludes a finding that National Union has

7  acted in bad faith.  The undisputed facts show that Magma, ERII and XL each believed that the notice

8  given by ABD satisfied the "notice of circumstances" clause in ERII's 2003-04 Policy, and each

9  expressed that position in writing.  Additionally, the district judge in the first instance found the notice

10  to be sufficient, which is highly probative on the issue.  See, *Morris v. Paul Revere Life Ins. Co.*, 109

11  Cal. App. 4th 966, 976 (2003) (" … the fact that a court had interpreted the law in the same manner as

12  did the insurer, whether before or after, is certainly probative of the reasonableness, if not necessarily

13  the ultimate correctness, of its position.") *R & B Auto Center, Inc. v. Farmers Group, Inc., 14*0 Cal.

14  App. 4th 327, 354 (2006) ("we disagree with any suggestion that court opinions rendered after an

15  insurer has made its coverage decision can never be considered in determining whether the insurer

16  acted in bad faith"); *T.G.S. Transp., Inc. v. Canal Ins. Co.*, 216 Fed. App'x. 708, 709 (9th Cir.  2007)

17  (noting that "[t]he district court was also originally persuaded by this reasoning," as support for

18  affirming summary judgment for the insurer on a bad faith claim, despite that the reviewing Court

19  found in a prior appeal that the district court erroneously found no coverage under the policy).

20  The facts and applicable case law show there is a "genuine dispute."  In *KPFF, Inc. v.*

21  *California Union Ins. Co*., 56 Cal. App. 4th 963, 973 (1997) ("*KPFF*") the court held that service of

22  pleadings may be sufficient to trigger coverage under a "notice of circumstances" provision:

23  [W]e think the transmission of pleadings in this case can serve as a means of reporting
     a claim; and if the pleadings contain material relevant both to the reporting of a claim
24  and to circumstances covered by the awareness provision, they can serve the dual
     purpose of both reporting a claim and giving written notice of circumstances which
25  may subsequently give rise to other claims.

26  *Id*. at p. 973 (citing *Harbor Ins. Co. v. Arthur Andersen & Co.* (1986) 149 Ill.App.3d 235).

27  Moreover, the court in *KPFF* held, "[t]he insured has reason to expect the insurer to employ an

28  informed judgment in processing claims." *Id*. at p. 974.  Mr. Nace, a Vice President at ERII with 18+

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 years of insurance coverage and adjusting experience, testified he did just that. (Facts 16, 17.) It is no

2 less reasonable for an excess carrier, such as National Union here, to have the same expectation

3 regarding the primary carrier's exercise of judgment.

4     The insured's intent may also be important.  See, *KPFF*, 56 Cal. App. 4th 975  ("In short,

5 since the pleadings were not intended as written notice under the awareness clause …, they cannot be

6 regarded as providing the kind of written notice that constitutes an insuring event under the awareness

7 provision.").  Here, Magma's broker sent the Patent Infringement complaint to ERII, Genesis and XL

8 with the intent and for the specific purpose of triggering the notice of circumstances provision.  (Fact

9 9) ("Enclosed is a copy of a complaint for patent infringement received from Magma Design

10 Automation, Inc.  Please accept this letter as a notice of claim and/or circumstances under the

11 captioned policy.").

12     Indeed, the insured's conduct that is relied upon by an insurer may itself afford a defense to a

13 claim of bad faith.  *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 408 (2000)

14 ("Evidence of an insured's misconduct may factually disprove the insurer's liability for bad faith by

15 showing the insurer acted reasonably under the circumstances.").  See also, *Cal. Shoppers, Inc.*, 175

16 Cal. App. 3d at 55 ("[I]t is our view that a mistaken withholding of policy benefits, at least where, as

17 here, such mistake … has been contributed to by the very party claiming those policy benefits, is

18 consistent with observance of the implied covenant of good faith and fair dealing because the mistake

19 supplies the 'proper cause'.").

20     Here, Magma's own conduct was the basis for the coverage position taken by National Union

21 and this, as part of the totality of circumstances, shows that National Union acted reasonably.

22     The undisputed facts establish the following:

23     At Magma's direction, and because of its desire that the Patent Infringement Action and any

24 potential successive Securities actions be placed in the 2003-04 policy period, Magma's broker ABD

25 gave notice of circumstances to the 2003-04 insurers prior to the expiration of the 2003-04 policy

26 period: the letter sent by Mr. Jorgensen specifically stated that Magma was requesting its insurers

27 accept the patent infringement complaint as a "notice of claim and/or circumstances" under the 2003-

28 04 policies. (Fact 9.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    ERII accepted the notice of circumstances provided by ABD to trigger coverage for the

2  2003-04 policy period. (Fact 11.)

3    The second layer excess carrier, XL, following the position of the primary carrier, also

4  accepted the notice of circumstances provided by ABD to trigger coverage for the 2003-04 policy

5  period.  (Fact 12.)

6    ERII defended the securities action under the 2003-04 policy. (Facts 20.)

7    ERII paid the settlement from the 2003-04 policy. (Fact 22.)

8    ERII advised the court on March 7, 2008, that it would not reallocate the settlement

9  payment to the 2004-06 until such time as the court made a formal determination that ERII had erred

10  by placing the loss in the 2003-04 policy period. (Fact 29.)

11    This action was initially filed against Magma by Genesis, not National Union. [Dkt. No. 1.]

12    In opposition to Genesis' motion for summary judgment which sought to determine that the

13  notice of circumstances was not sufficient, Magma took the position that it had provided Genesis with

14  sufficient notice of circumstance during the 2003-04 policy period and that Genesis, because it failed

15  to respond or otherwise act on the notice given, had waived any right to argue that the notice was

16  insufficient.  Magma argued that the Patent Infringement Action and the Securities Actions constituted

17  related claims and should be deemed made during the 2003-04 policy period.  (Facts 31, 32.)

18    At the hearing of the motions for summary judgment, Magma's attorney told the court,

19  "**There's a reasonable argument and basis for why one policy should be chosen over another.**

20  [¶]  Magma believes that it's the '03 – '04 policy which should be covered and … Magma believes

21  that for two reasons:  One, because Magma provided a Notice of Circumstances to Genesis and notice

22  of circumstance which Genesis accepted; and, two, because the underlying claims are related to the

23  patent infringement case pursuant to the related claims provision in the '03-'04 policies."  (Fact 33.)

24    The district court agreed with ERII and Magma that the notice of circumstances Magma

25  provided to its insurers was sufficient to preserve coverage under the '03- '04 policies.  (Facts 34, 35.)

26    Although reversing as to Genesis, the Court of Appeals in Genesis I specifically did not

27  decide whether the notice of circumstances provided to ERII was sufficient.  (Fact 37.)

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-4483-9980.1                                          20                                06-CV-05526 EJD
MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

On remand, the district court deemed the ERII 2004-06 Policy exhausted and placed coverage under the 04-06 policy period; however, the court did not address the issue of the sufficiency of the notice given to ERII.  The Ninth Circuit reversed the judgment and drected that further proceedings be conducted to determine if ERII "correctly treated the patent-infringement complaint as notice of circumstances that could give rise to a covered claim under its policy." (Fact 42.)

Irrespective of whether the notice was sufficient, National Union had no obligation to pay any settlement under its policy until the ERII 2004-06 primary policy was exhausted by payment of the limits of that policy.  (Fact 42.)

According to Mr. Nace's July 23, 2013 declaration, it was not until some point after the Ninth Circuit's decision in Genesis II that ERII "re-allocated" the settlement payment to its 2004-06 policy, notwithstanding the fact that no court had determined that ERII's decision to accept notice of circumstances under its 2004-03 policy was improper.   (Fact 44.)

The facts and circumstances of this case, including Magma's own desire and efforts to place the loss in the 2003-04 policy period, and its attorneys admission to the court that "[t]here's a reasonable argument and basis" to place the loss in the 2003-04 policy period, establish a genuine dispute regarding the notice of circumstances given by Magma's broker.

### (b)      The Exhaustion Issue

National Union's excess policy unambiguously provides National Union is only responsible for coverage "after the Underlying Insurers and/or Insured or the Company have paid the full amount of the Total Underlying Limits," and the "Total Underlying Limits" are identified as the "aggregate sum of the limit of liability of all Underlying Policies," namely the ERII 2004-06 Policy.  (Fact 27.)

> 'Excess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. . . .   In short, excess insurance is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage.  [Citations omitted.]  **California case law has consistently protected the limited and shielded position of the excess carrier when the obligations of the excess carrier are set in clear phrases.**

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 194 (2008) (quotation marks removed, emphasis added).  "It is settled under California law that an excess or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-4483-9980.1                                     21                          06-CV-05526 EJD
MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

1  secondary policy does not cover a loss, nor does any duty to defend the insured arise until all of the

2  primary insurance has been exhausted." *Cmty. Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50

3  Cal. App. 4th 329, 339 (1996).

4          Here, it is undisputed that ERII accepted Magma's "notice of circumstances" under the 2003-

5  04 policy period; that ERII defended Magma in the Securities Actions under the the ERII 2003-04

6  Policy; and that ERII did so based on its determination that the Securities Actions arose from the same

7  circumstances as the matter which was the subject of Magma's "notice of circumstances," i.e., the

8  Patent Infringement action. (Facts 10, 11.)  It is also undisputed that ERII, Genesis, and XL funded the

9  settlement of the Securities Actions under the coverage provided by their respective 2003-04 policies.

10  ERII readily acknowledged the loss was placed in the 2003-04 policy period, and advised this court

11  that it would "re-allocate" the loss only upon a judicial determination that it should not have placed

12  the loss in the 2003-04 policy period.  Indeed, Magma had not even properly plead exhaustion of the

13  ERII 2004-06 Policy as a prerequisite to coverage under the National Union policy until the filing of

14  Magma's Second Amended Complaint, in 2014. [See Dkt. No. 255 at p. 17:4-7.]  Up to and until ERII

15  just recently purported to "reallocate" its settlement payment from the 2003-04 policy period to the

16  2004-06 policy period (without any judicial determination that payment under the 2003-2004 policy

17  was improper), the only primary policy exhausted by settlement of the Securities Actions was the

18  ERII 2003-04 Policy. In fact, both ERII and Magma stated in their court submissions that National

19  Union had no obligation unless there was a judicial determination that coverage was under the 2004-

20  06 policy period, and the primary policy for that period was exhausted..

21          National Union had no duty to act contrary to the wishes of its insured that the loss be placed

22  in the 2003-04 policy period.  The duty of good faith and fair dealing requires an insurer to avoid

23  acting adversely to its insured's interests. *Silberg v. Cal. Life Ins. Co.*, 11 Cal. 3d 452, 460 (1974)

24  ("The covenant requires that neither party will do anything to injure the right of the other to receive

25  the benefits of the agreement . . . ").

26          Moreover, National Union had no duty to supervise or contradict the decisions of the

27  underlying primary insurer. *Diamond Heights Homeowners Assn. v. National Amer. Ins. Co.,* 227 Cal.

28  App. 3d 563, 578 (1991) ("[T]he primary insurer has control over the defense which arises from its

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   duty to defend. The right of control extends to all aspects of the defense, including the negotiation of

2   any settlement prior to trial.  The excess insurer has no right to step in and try to settle the case, unless

3   perhaps it has exercised its option … to associate with the primary insurer in the defense.");

4   *Continental Casualty Co. v. Royal Ins. Co.*, 219 Cal. App. 3d 111, 119 (1990) ("There is no authority

5   that holds an excess carrier should be charged with making sure the primary carrier fulfills its good

6   faith obligations to the insured.")  *Continental Casualty Co. v. U.S. Fidelity & Guaranty Co.*, 516 F.

7   Supp. 384, 392 (N.D. Cal. 1981) (an excess carrier has no duty to mitigate damages where the primary

8   carrier controls the litigation – "Moreover, with USF&G in control of the litigation as the primary

9   carrier, it would have been improper for the insured or excess carrier to step in and try to settle it.")

10      Here, the primary policy underlying the National Union policy was never exhausted until years

11  after the Securities Actions were settled by way of contributions from Magma's other insurers, and

12  after much litigation in this action.  Moreover, there was no judicial determination that coverage was

13  to be provided by the 2004-06 Policy when, years later, ERII reallocated its payments from the 2003-

14  04 Policy to the 2004-06 Policy for its customer Magma.  Thus not only was there a legitimate issue

15  about exhaustion, the undisputed facts are that the "Total Underlying Limits" of the National Union

16  policy were <u>not</u> exhausted.  Therefore there can be no bad faith liability as a matter of law.

17          **D.      Post-Litigation Conduct May Not Form the Basis for Bad Faith**

18      National Union's actions in defense of this litigation may not form the basis of a bad faith

19  claim.  It is important to keep in mind that this lawsuit was first initiated by Genesis against Magma

20  only [Dkt. No. 1], and National Union was only brought into this action by way of a Third Party

21  Complaint filed by Magma against National Union and ERII.  [See Dkt. No. 11.]

22      Under California law, an insurer may not be held liable for bad faith based on positions taken

23  in a suit seeking policy benefits.  *Nies v. Nat'l Auto. & Casualty Ins. Co.*, 199 Cal. App. 3d 1192, 1201

24  (1988) ("National [the insurer] had an absolute right to defend against plaintiff's claim. That right

25  necessarily included the right to litigate the correctness of its original position … .").  See also, *Old*

26  *Republic Ins. Co. v. Fsr Brokerage*, 80 Cal. App. 4th 666, 688 (2000) (the litigation privilege "bars a

27  bad faith claim predicated solely on the insurer's defensive pleadings… .");  *California Physicians'*

28  *Service v. Superior Court*, 9 Cal. App. 4th 1321, 1330 (1992) (following *Nies*, and noting that the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-4483-9980.1                                    23                            06-CV-05526 EJD
MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

communication sought to be used as the basis for the plaintiffs' bad faith claim is defensive pleading, which is the subject of immunity under Civil Code § 47, subd. (b)); *Arbol Media, Inc. v. Hartford Cas. Ins. Co.*, No. SACV 02-0244-JVS(MLGx), 2003 U.S. Dist. LEXIS 28465, *6-7 (C.D. Cal. 2003) (excluding expert opinion that "Hartford's litigation conduct was unreasonable and a breach of the covenant of good faith and fair dealing" because it would wrongfully impair the defendants' right to have their day in court." ); *De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates,* 94 Cal. App. 4th 890, 918 (2001) ("A lay jury is not well suited to evaluate the relative merits of a legal position taken by a party. Furthermore, due process considerations are implicated  . . . . Pursuing authorized forms of relief before courts . . . is a protected right and cannot be the basis for tort liability, except in a properly pleaded action for malicious prosecution." [Citations omitted.]); *Palmer v. Ted Stevens Honda*, 193 Cal. App. 3d 530, 538-39 (1987) ("once litigation has commenced, the actions taken in its defense are not, in our view, probative of whether defendant in bad faith denied the contractual obligation prior to the lawsuit"); *Knotts v. Zurich Ins. Co.*, 197 S.W. 3d 512, 519 (Ky. 2006) ("Since *White*, however, California's courts have not accepted the invitation to allow broader evidence of post-filing conduct. In fact, California courts have sharply limited the application of *White* so as to prohibit admission of evidence of the vast majority of post-filing conduct, namely, litigation techniques and strategies.").

Moreover, an insurer is not liable for bad faith based on alleged failure to conduct further investigation onece a genuine dispute arises.  *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F. 2d 272, 283 (9th Cir. Cal. 1992), *cert. denied*, 507 U.S. 914 (1993) ("Once Hartford understood Pacific's interpretation of the contract and a genuine dispute over liability existed, Hartford was under no further duty to investigate Brinderson's claim on the bond. As Brinderson concedes, Hartford had every right to await the outcome of the liability dispute before paying on the performance bond."); *Scammacca v. Royal Maccabees Life Ins. Co.*, 9 Fed. App'x. 608, 611 (9th Cir. Cal. 2001) ("Under California law, an insurer discharges its duty of good faith if it investigates thoroughly until a genuine dispute over liability arises; once such a dispute arises, it need investigate no further."); *Crenshaw v. Mony Life Ins. Co.*, 2004 U.S. Dist. LEXIS 9883 ("[I]f at the time the insurer makes the decision to deny coverage, it has a good reason to dispute liability, the insurer is not

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-4483-9980.1                                        24                          06-CV-05526 EJD
MPA ISO MOTION FOR SUMMARY JUDGMENT BY NATIONAL UNION AS TO MAGMA'S CLAIMS FOR
BREACH OF CONTRACT AND BREACH OF THE COVENANT

1  susceptible to a claim of bad faith failure to make a more thorough investigation.").

2  An insurer is also not liable for bad faith because it decides to appeal an adverse judgment.

3  *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1766, 1770-71 (1994) (holding that a judgment

4  extinguishes and entirely replaces the contract rights sued upon, and that "[A] judgment creditor may

5  not sue for 'bad faith' damages if the judgment debtor chooses to appeal rather than pay, even though

6  the judgment debtor is an insurer. … [T]he fundamental nature of the right to appeal should not be

7  undermined by post hoc jury determinations in a bad faith action.").  See, *Coleman v. Gulf Ins. Group*,

8  41 Cal. 3d 782, 790, 795 (1986) (sanctions by reviewing court are the appropriate remedy for

9  frivolous appeals – bad faith liability could chill otherwise meritorious appeals).

10  Even if National Union ultimately does not prevail in this litigation, that does not prove bad

11  faith.  See, *Chateau Chamberay*, 90 Cal. App. 4th 335 (2001) ("Where there is a genuine issue as to

12  the insurer's liability under the policy . . . there can be no bad faith liability imposed on the insurer for

13  advancing its side of that dispute."); *Crenshaw v. Mony Life Ins. Co.*, 2004 U.S. Dist. LEXIS 9883

14  (S.D. Cal. 2004) ("If an insurer loses a declaratory relief suit, only the parties' contract rights are

15  affected, not the 'reasonableness' of the insurer's claims handling practices.").

16  Accordingly, based on the undisputed facts, National Union is entitled to summary judgment

17  on Magma's bad faith claim, because its coverage positions have at all times been reasonable, and

18  National Union is entitled to litigate the correctness of its coverage positions.  This is true even if

19  ultimately it may be concluded that the loss in question should be placed in the 2004-06 policy period.

20  **VI.   CONCLUSION**

21  For the reasons stated, National Union respectfully requests that the Court grant this Motion,

22  and award summary judgment for National Union as against Magma's claims for breach of contract

23  and breach of the implied covenant of good faith and fair dealing.

24  DATED: January 12, 2016             LEWIS BRISBOIS BISGAARD & SMITH LLP
                                         By:_____/s/ Paul A. Desrochers_____
25                                         Glenn A. Friedman
                                           Michael K. Johnson
26                                         Paul A. Desrochers
                                           Attorneys for Defendant and Counter/Cross
27                                         Defendant NATIONAL UNION FIRE
                                           INSURANCE COMPANY OF PITTSBURGH, PA

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW