Dennis M. Cusack (State Bar No. 124988)
dcusack@fbm.com
Shea J. Kenny (State Bar No. 305068)
skenny@fbm.com
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Defendant, Counterclaimant and Crossclaimant MAGMA DESIGN AUTOMATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GENESIS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>MAGMA DESIGN AUTOMATION, INC., and NATIONAL UNION FIRE INSURANCE COMPANY,<br><br>Defendants. | Case No. C06 5526 EJD<br><br>**MAGMA DESIGN AUTOMATION INC'S MEMORANDUM IN OPPOSITION TO NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 9, 2016<br>Time: 9:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge: Hon. Edward J. Davila |
| MAGMA DESIGN AUTOMATION, INC.,<br><br>Counter/Crossclaimant,<br><br>vs.<br><br>GENESIS INSURANCE COMPANY, and NATIONAL UNION FIRE INSURANCE COMPANY,<br><br>Counter/Cross Defendants, | **<u>Accompanying Documents</u>:** |

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
A. This Motion Is More Evidence Of National Union's Bad Faith ..... 1
B. The Context For This Motion ..... 1
II. STATEMENT OF MATERIAL DISPUTED AND UNDISPUTED FACTS ..... 3
A. National Union Studiously Ignored Magma's Bad Faith Allegations ..... 3
B. National Union Offered Meritless Defenses And Delay ..... 3
C. The First Appeal Decided The Only Issue In The Case ..... 4
1. The Parties' Express Reservations Of Rights Identified One Issue ..... 4
2. The Pleadings Identified One Issue ..... 5
3. Magma Settled The Securities Actions With One Issue In Mind ..... 6
4. After Magma Settled The Securities Actions, National Union Represented To This Court That Magma Would Be Covered ..... 7
5. After The First Appeal, National Union Said Magma Should Be Left Without Coverage ..... 8
6. National Union's Refusal To Acknowledge Exhaustion Of ERII's 04-06 Policy Exhibits The Worst Kind Of Intransigence ..... 8
a. ERII could not act on the Ninth Circuit's ruling ..... 9
b. Demand for unnecessary discovery ..... 9
c. "Waiver" and "estoppel" theories ..... 10
7. In Desperation, National Union Asserted A Misrepresentation Claim It Was Then Forced To Withdraw ..... 11
8. National Union Has Continued To Assert A "Known Loss" Defense Despite A California Supreme Court Case Precluding It ..... 11
9. National Union Still Refuses To Do The Right Thing ..... 12
D. Magma Has Suffered Damages Because Of National Union's Breach ..... 12
III. LEGAL STANDARDS FOR THIS SUMMARY JUDGMENT MOTION ..... 13
A. Summary Judgment Standard ..... 13
B. Bad Faith Liability ..... 13
IV. NATIONAL UNION'S BAD FAITH DECISIONS ARE NOT IMMUNIZED BY THIS LAWSUIT ..... 14
V. MAGMA IS ENTITLED TO DISCOVERY ..... 17
VI. MAGMA HAS BEEN DAMAGED ..... 18
VII. NO "GENUINE DISPUTE" EXISTS REGARDING THE SUBJECT OF MAGMA'S BAD FAITH CLAIM ..... 20
A. National Union's Position On The Notice Of Circumstances Issue Before The First Appeal Was Decided Is Not The Subject Of Magma's Bad Faith Claim ..... 20

B. The "Genuine Dispute" Defense Does Not Apply To Liability Policies .............. 21

C. The Genuine Dispute Defense Does Not Provide An End Run Around National Union's Burden On Summary Judgment .............................................. 21

D. National Union Has Never Had A Reasonable Basis For Refusing To Pay Its Policy Limits After The First Appeal ............................................................ 22

1. National Union Has Owed Magma A Continuing Duty To Investigate And Evaluate Magma's Claim .............................................. 22

2. National Union Has Made A Series Of Bad Faith Claims Decisions ....... 23

VIII. CONCLUSION ........................................................................................................ 24

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

# TABLE OF AUTHORITIES

## FEDERAL CASES


*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000)........................................ 13

*Amadeo v. Principal Mut. Life Ins. Co.*,
290 F.3d 1152 (9th Cir. 2002)........................................ 22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................ 13

*Arbol Media, Inc. v. Hartford Cas. Ins. Co.*,
No. SACV 02-0244-JVS (MLGx) 2003 U.S. Dist. LEXIS 28465 (C.D. Cal. July 7, 2003)........................................ 16

*Barlow v. Ground*,
943 F.2d 1132 (9th Cir. 1991)........................................ 13

*Bernstein v. Travelers Ins. Co.*,
447 F. Supp. 2d 1100 (N.D. Cal. 2006)........................................ 14, 22

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,
971 F.2d 272 (9th Cir. 1992)........................................ 16, 21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................ 13

*Competitive Technologies v. Fujitsu Ltd.*,
286 F. Supp. 2d 1118 (N.D. Cal. 2003)........................................ 15

*Crenshaw v. Mony Life Ins. Co.*,
No. 02-cv2108-LAB (RBB) 2004 U.S. Dist. LEXIS 9883 (S.D. Cal. May 3, 2004)....... 16, 21

*Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
No. 09-CV-140-GPC-KSC, 2014 WL 1286392 (S.D. Cal. Mar. 28, 2014)........................................ 15

*Franceschi v. Am. Motorists Ins. Co.*,
852 F.2d 1217 (9th Cir. 1988)........................................ 21

*Harbison v. Am. Motorists Ins. Co.*,
636 F. Supp. 2d 1030 (E.D. Cal. 2009)........................................ 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................ 13

*Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*,
752 F.3d 807 (9th Cir. 2014)........................................ 22

*Scammacca v. Royal Maccabees Life Ins. Co.*,
9 Fed App'x. 608 (9th Cir. 2001)........................................ 16

*T.G.S. Transp., Inc. v. Canal Ins. Co.*,
216 Fed. App'x. 708 (9th Cir. 2007)........................................................................ 20

**STATE CASES**

*Aetna Cas. & Sur. Co. v. Allsteel, Inc.*,
709 N.E.2d 680 (Ill. App. 1999) ........................................................................ 8

*CalFarm Ins. Co. v. Krusiewicz,*
131 Cal. App. 4th 273 (2005)........................................................................ 21

*California Physicians' Service v. Superior Court*,
9 Cal. App. 4th 1321 (1992)........................................................................ 16

*Century Sur. Co. v. Polisso,*
139 Cal. App. 4th 922 (2006)........................................................................ 21

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*,
90 Cal. App. 4th *335* (2001)........................................................................ 21, 22

*Coleman v. Gulf Ins. Group,*
41 Cal. 3d 782 (1986) ........................................................................ 17

*De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates,*
94 Cal. App. 4th 890 (2001)........................................................................ 16

*Egan v. Mutual of Omaha Ins. Co.*,
24 Cal. 3d 809 (1979) ........................................................................ 14

*Green Wood Indus. v. Forceman Int'l Dev. Group, Inc.*,
156 Cal. App. 4th 766 (2007)........................................................................ 19

*Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*,
176 Cal. App. 4th 172 (2009)........................................................................ 21

*Howard v. Am. Nat'l Fire Ins. Co.*,
187 Cal. App. 4th 498 (2010)........................................................................ 21

*Jonathan Neil & Assoc., Inc. v. Jones,*
33 Cal. 4th 917 (2004) ........................................................................ 20

*Jordan v. Allstate Ins. Co.*,
148 Cal. App. 4th 1062 (2007)........................................................................ 14

*Knotts v. Zurich Ins. Co.*,
197 S.W. 3d 512 (Ky. 2006) ........................................................................ 16

*Montrose Chemical Corp. v. Admiral Ins. Co.*,
10 Cal. 4th 645 (1995) ........................................................................ 11-12

*Morris v. Paul Revere Life Ins. Co.*,
109 Cal. App. 4th 966 (2003)........................................................................ 20

*Mt. Hawley Ins. Co. v. Lopez*,
215 Cal. App. 4th 1385 (2013)........ 21

*Neal v. Farmers Ins. Exch.*,
21 Cal. 3d 910 (1978) ........ 14

*Nies v. Nat'l Auto & Cas. Ins. Co.*,
199 Cal. App. 3d 1192 (1988)........ 15

*Old Republic Ins. Co. v. FSR Brokerage, Inc.*,
80 Cal. App. 4th 666 (2000)........ 15

*Palmer v. Ted Stevens Honda*,
193 Cal. App. 3d 530 (1987)........ 16

*Piscitelli v. Friedenberg*,
87 Cal. App. 4th 953 (2001)........ 19

*R & B Auto Center, Inc. v. Farmers Group, Inc.*,
140 Cal. App. 4th 327 (2006)........ 20-21

*Risely v. Interinsurance Exchange of the Automobile Club*,
183 Cal. App. 4th 196 (2010)........ 18, 19

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
78 Cal. App. 4th 847 (2000)........ 14

*Tomaselli v. Transamerica Ins. Co.*,
25 Cal. App. 4th 1766 (1994)........ 17

*White v. Western Title Ins. Co.*,
40 Cal. 3d 870 (1985) ........ 14, 15, 16

*Wilson v. 21st Century Ins. Co.*,
42 Cal. 4th 713 (2007) ........ 21, 22

*Wint v. Fidelity & Cas. Co.*,
9 Cal. 3d 257 (1973) ........ 18, 19

**STATE STATUTES**

Cal. Civ. Code
§ 47........ 14
§ 47(b) ........ 15
§ 3300........ 20

Cal. Ins. Code
§ 22........ 11

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P.
56(d) ........ 1, 18
56(a) ........ 13
56(c) ........ 13

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

## OTHER AUTHORITIES

Croskey et al., Cal. Practice Guide: Insurance Litigation ¶ 12:618 (The Rutter Group 2012) .......... 21

John K. DiMugno & Paul E.B. Glad, Cal. Ins. Law Handbook (The Rutter Group 2015) .......... 15

# I. INTRODUCTION

## A. This Motion Is More Evidence Of National Union's Bad Faith.

Magma's effort to get National Union to pay this claim has become the trial of Sisyphus pushing a boulder up the hill. National Union's defense to its reprehensible conduct is: We are permitted to keep kicking the boulder down the hill until a court issues a final order to stop.

For almost six years, National Union has refused to pay what it owes Magma. In this motion, National Union attacks bad faith allegations *Magma has not made* and ignores the bad faith allegations Magma has made. It also claims that Magma has not been injured even though Magma risks liability of $5 million plus interest to Genesis and cannot recover the $1,094,811 it contributed to the Securities Action settlement. To these worthless arguments, National Union adds that it is entitled to act as badly as it wants while this suit is pending.

National Union claims managers since July 2010 have ignored undisputed facts and controlling law. In the meantime, interest is accruing at $500,000 per year. When the latest appeal is finally adjudicated, it will have *doubled* the $5 million it owes. With no rational explanation for this conduct, National Union must be motivated by malice towards Magma.

We do not know for sure because -- despite this Court's order permitting discovery on Magma's bad faith claim -- National Union has refused to turn over any information about its decisions after October 2006. So, in addition to the substantive emptiness of the motion, its efforts to hide the record of its bad faith conduct provides a separate reason for denying National Union's motion under Federal Rule of Civil Procedures 56(d).

National Union's conduct since July 2010 leads to one conclusion: National Union believes it has no obligation to honor a contract unless and until a court orders it to do so and can act with impunity in the meantime. National Union sold Magma a lawsuit, not insurance.

## B. The Context For This Motion.

Given the long history of this case and National Union's misdirected statement of facts, we provide here a brief overview to put the bad faith claim Magma actually brought into context. This case is about coverage for Securities Actions filed against Magma in 2005. Magma and its insurers knew immediately that a dispute existed over whether the ERII/National Union 04-06

policy year applied (when the Securities Actions were filed), or the ERII/Genesis 03-04 policy year applied (when Magma notified ERII and Genesis of the Synopsys Action).

These policies require that a "claim" be made during the policy period. Normally, the 04-06 Policies would apply when the Securities Actions were filed. But a feature of "claims-made" policies – a "notice of circumstances" – threw this into doubt. Under a "notice of circumstances" provision, if a claim has not yet been made but the insured has information to indicate a covered claim may be made after the policy expires, it can notify its current insurer and that insurer will provide coverage if the claim later materializes.[1]

In late 2004, Synopsys had filed a patent infringement action against Magma. Magma notified ERII and Genesis. Magma knew that the Synopsys Action itself was not covered but asked the insurers to treat it as a "notice of circumstances" in case a covered claim arose out of it. The only information Magma gave them was the Synopsys Action complaint.

When the Securities Actions were filed in 2005, ERII decided to treat the Synopsys Action as a "notice of circumstances" as to the Securities Actions. Genesis objected that the Synopsys Action did not provide the specific information called for by the "notice of circumstances" provision to put Genesis on notice of the later filed Securities Actions. National Union adopted ERII's position. Within three months, Magma and the insurers knew they had a dispute as to whether Genesis and ERII had received a "notice of circumstances" that would shift coverage from the 04-06 Policies to the 03-04 Policies.

ERII provided the same coverage in both policy years, so it said it would abide by the outcome of the dispute. It was a single legal issue: Was the Synopsys Action a "notice of circumstances"? If "Yes," ERII and Genesis would provide coverage under the 03-04 Policies. If "No," ERII and National Union would provide coverage under the 04-06 Policies. That's all this case was about for five years, until National Union lost.

No one disputed the facts regarding what information had been given to ERII and Genesis

[1] The insured would otherwise face a gap in coverage. The later claim would not be covered under the existing policy because it expired before the claim was asserted. It would likely not be covered under the later policy because the insured would have to disclose the circumstances on an insurance application and the new insurer would refuse to insure that potential claim.

in 2004. No one doubted, too, what should happen if it were decided that the 04-06 Policies applied. ERII would simply make a bookkeeping change to reflect payment under the 04-06 Policies. No one questioned any of this – until National Union lost.

Magma's bad faith claim has never been about the "notice of circumstances" issue. Magma took National Union's side. But the Ninth Circuit agreed with Genesis. The case should have ended in July 2010 with the First Appeal. Instead, National Union has refused to pay. But National Union owes a continuing duty to Magma, even during this lawsuit, to investigate and evaluate coverage, and decide whether to pay, in good faith. National Union's repeated baseless refusals to pay after the First Appeal are the subject of the bad faith claim. The evidence of those bad faith decisions is overwhelming; therefore, this motion should be denied.

## II. STATEMENT OF MATERIAL DISPUTED AND UNDISPUTED FACTS

### A. National Union Studiously Ignored Magma's Bad Faith Allegations.

Magma's bad faith claim describes National Union's conduct *after* the First Appeal. [Magma's Amended Crossclaim (Dkt. No. 255, at ¶44); Magma's Second Amended Crossclaim (Dkt. No. 255, at ¶60).] At that point, no reasonable basis existed for National Union to refuse to pay Genesis on Magma's behalf. As a result, most of National Union's facts regarding the parties' positions on the "notice of circumstances" through the First Appeal are not disputed or material. Below are the facts material to the bad faith claim Magma actually alleges.

### B. National Union Offered Meritless Defenses And Delay

National Union's statement of facts confirms that, before the First Appeal, the only issue was whether Genesis or National Union owed coverage for the Securities Actions. That turned on whether Genesis had received a "notice of circumstances" in 2004. National Union's statement of facts (Op. Brief at 1-9) mentions no other issue.

After the First Appeal, however, someone at National Union made repeated decisions to not pay and raise the following frivolous excuses instead, ***none of which it had articulated in the five years before the First Appeal***:

- **Prior Notice.** Even though the Ninth Circuit ruled the Synopsys Action was not a "notice of circumstances," National Union contended that it was a "prior notice"

for purposes of an exclusion in its policy.

- **ERII cannot act on its contractual obligation to Magma.** ERII could not, after the First Appeal, apply the Ninth Circuit's ruling to the facts and administer the claim in the ordinary course of its business to show exhaustion of its 04-06 Policy.
- **It Needed Discovery**. After ***eight years***, National Union suddenly decided it should investigate what happened in 2004 with the notice of circumstances.
- **Waiver**. After ***nine years***, someone at National Union brushed aside ERII's statements reserving its rights and claimed that ERII had *waived* its rights.
- **Estoppel**. After ***nine years of avoiding payment***, National Union claimed it somehow suffered injury because of the position ERII took.
- **Known Loss**. National Union said the Securities Actions -- filed in 2005 -- were a "known loss" *in 2004* when Magma bought the National Union policy.
- **Misrepresentation**. In ***2014***, National Union for the first time asserted that Magma misrepresented the risk of the Synopsys Action when it applied for the National Union policy in ***2004***.

### C. The First Appeal Decided The Only Issue In The Case

#### 1. The Parties' Express Reservations Of Rights Identified One Issue

National Union's claims managers have the following undisputed facts in their claims file. The insurers' responses to the tender of the Securities Actions establish only one issue in the case:

**August 23, 2005**: ERII's first reservation of rights letter in response to the Securities Actions said that it would respond under the 03-04 Policy pursuant to the "notice of circumstances," but under a full reservation of rights. Magma AMF 1. [August 23, 2005 Letter from ERII to Magma (Cusack Decl., Exh. A).][2]

**August 26, 2005**: National Union adopted ERII's position and denied coverage on that ground. This was its only stated reason for denying coverage. Magma AMF 2. [August 26, 2005 Letter from National Union to Magma (Cusack Decl., Exh. B).]

[2] "Magma AMF" refers to Magma's Additional Material Facts in Opposition to National Union's Motion for Summary Judgment. "Cusack Decl." refers to the Declaration of Dennis M. Cusack in Opposition to National Union's Motion for Summary Judgment, and exhibits attached.

**August 31, 2005**: Genesis disagreed that the Synopsys Action constituted a "notice of circumstances" and denied coverage. Magma AMF 3. [August 31, 2005 Letter from Genesis to Magma (Cusack Decl., Exh. C).]

**September 16, 2005**: Magma stated to all insurers that Magma would protect its rights to coverage under either the 03-04 Policies or the 04-06 Policies. Magma AMF 4. [September 16, 2005 letter from Magma to National Union (Cusack Decl., Exh. D).]

Therefore, within three months everyone knew that a dispute existed as to whether Genesis and ERII had received a "notice of circumstances" that would require the 03-04 Policies, rather than the 04-06 Policies, to provide coverage for the Securities Actions. All parties also knew that everyone was reserving their rights. No one raised any other issue.

**May 24, 2006**: When ERII started paying defense costs above the self-insured retention, it said it would pay under its 03-04 Policy but would deem its payments made under the 04-06 Policy if it were determined that Genesis's position was correct. Magma AMF 5. [May 24, 2006 Letter from Terrence R. McInnis to Mary E. McCutcheon (Cusack Decl., Exh. E).]

**December 5, 2006**: After Genesis filed this action, ERII sought a declaration that the Securities Actions "are properly treated as a single Claim first made during *either* the 03/04 Policy Period *or* the 04/06 Policy Period, *but not both*." Magma AMF 6 [ERII Answer and Counterclaim (Dkt. No. 26), at ¶ 25 (emphasis original).] ERII confirmed this position when it filed its 2008 Statement of Position:

> If this Court should determine, however, that the Securities Class Action, the Derivative Action and the Unfair Competition Action are properly deemed first made during the Policy Period of the ERII 04/06 Policy instead, ERII will adjust its records to reflect that all amounts paid in connection with those actions were paid under the ERII 04/06 Policy. If this should occur, the Limits of Liability of the ERII 04/06 Policy would be exhausted by the amount of ERII's payments instead, and ERII will have no further obligations under that Policy.

Magma AMF 7. [Dkt. No. 100, at 6:11-16.]

### 2. The Pleadings Identified One Issue

National Union's Answer to Magma's cross-complaint did not cite any of the specific defenses it has raised since the First Appeal. Magma AMF 8 [Answer, Dkt. No. 25.]

Magma filed a Motion to Stay the coverage litigation pending resolution of the Securities Actions. Magma AMF 9 [Motion, Dkt. No. 33.] Magma described the issue as a game of "hot-potato" between Genesis and National Union. [*Id.* at 5:12-25.] National Union did not dispute that characterization (it filed no response to the Motion to Stay).

Moreover, the parties' first Joint Case Management Conference Statement stated that the case was about which of the two excess policies applied to the loss, depending on the "notice of circumstances" issue. Magma AMF 10 [Joint CMC Stmt, Dkt. Item No. 38.] National Union mentioned no other issues. National Union remained silent over the next eight months as Genesis pressed the Court to lift the stay and allow the parties to brief the issues. Magma AMF 11 [Green Decl., Exh. 7 (Dkt. No. 168-2); Order Lifting Stay (Dkt. No. 57).]

### 3. Magma Settled The Securities Actions With One Issue In Mind

Magma and plaintiffs in the Securities Actions engaged in settlement discussions in October 2007. Before the class action settled in principle, National Union never told Magma that it might be uninsured for the $5 million funded from the Genesis/National Union layer.

On October 30, 2007, plaintiffs demanded $17 million to settle the action, the amount plaintiffs understood to be the available insurance limits. Magma AMF 12 [Exh. A to Declaration of Clayton Parker ("Parker Decl., Dkt. No. 168-3"); *see also* 3/7/08 Simon Decl., Dkt. No. 99, at ¶ 2] The $17 million consisted of ERII's $10 million primary layer, plus $5 million from the Genesis/National Union layer, plus $5 million from the next excess layer provided by X.L. Insurance Company, minus an estimated $3 million paid by ERII to that date for defense costs. Magma AMF 13 [Parker Decl., ¶ 4.] Genesis and National Union each received a copy of the letter. Magma AMF 14 [Simon Decl., Dkt. No. 99, at ¶ 2; Green Decl., Exh. 8.]

Magma negotiated with plaintiffs assuming that the $5 million Genesis/National Union layer was available to fund any settlement. Magma AMF 15 [Parker Decl., ¶ 5.] On October 31, 2007, Magma demanded that Genesis and National Union fund a settlement of as much as $17 million. Magma AMF 16 [Green Decl., Exh. 9.] National Union replied: "Please be advised that National Union continues to maintain its coverage position concerning this matter in all respects. This position has been made known to Magma Design counsel in the ongoing coverage action

before Judge James Ware." Magma AMF 17 [*Id.* at Exh. 8.] The only position National Union had made known was that the claim was deemed made in the Genesis policy year.

Magma then demanded that Genesis and National Union fund a counter offer to plaintiffs. Magma AMF 18 [*Id.* at Exh. 10.] Genesis agreed but National Union refused only on the grounds that "coverage for the claim is provided by Genesis and not AIG [*i.e.*, National Union]." Magma AMF 19 [*See id.* at Exh. 12 (confirming letter).]

### 4. After Magma Settled The Securities Actions, National Union Represented To This Court That Magma Would Be Covered

Following the settlement, National Union filed a motion for summary judgment on February 1, 2008. Magma AMF 20 [2/1/08 Motion, Dkt. No. 87.] It the course of briefing the "notice of circumstances" issue, it raised its Prior Notice exclusion for the first time but only to bolster its claim that Genesis should pay, not that Magma should pay. It still represented to this Court that *either* Genesis *or* National Union would pay.

Genesis filed its own motion and opposed National Union's. It assured this Court that "this pending coverage litigation was limited to this claims-made issue ***and that under no circumstance would Magma not have coverage for the settlement***." Magma AMF 21 [Genesis Opp. (Dkt. No. 98), at 1:14-19 (emphasis added).] At the hearing, the Court twice stated its assumption that coverage would be provided under one policy or the other:

> The Court: . . . That's the first proposition I'm trying to suggest. In other words, I cannot leave the policy holder here in a situation where neither Genesis nor National Union is on the hook for the excess, that one or the other is on the hook for the excess.

Magma AMF 22 [Transcript, Exh. 19 to Green Decl. (Dkt. No. 168-2), at 54:24-55:4.] The Court later repeated its assumption:

> But it seems to me that was the point of my consistency question. It wasn't as well phrased as you just articulated it. That's at the heart of the Court's concern, ***and I would wish to hear further from any party who takes a position that that is not the case***, that you could find yourself in a circumstance where the notice of circumstances was inadequate, for example, because it didn't have the detail, and, therefore, it's defective and that would relieve an excess policy in what you're calling year two of an obligation of pick it up. . . . I didn't hear that clearly, and so I'm not considering that's the argument.

Magma AMF 23 [*Id.* at 64:17-65:5 (emphasis added).] ***National Union did not speak up.***

In its ensuing Order, Judge Ware restated his understanding that the coverage litigation was about "whether Genesis or National Union must provide excess coverage after ERII's coverage obligations are exhausted." Magma AMF 24 [MSJ Order, (Dkt. No. 112) at 3:3-7 (footnote omitted).] The Court ruled that the claim was properly deemed first made in Genesis's policy year. National Union MF 34. The Ninth Circuit reversed, holding that the Synopsys Action complaint did not provide a "notice of circumstances" to Genesis. National Union MF 37.

### 5. After The First Appeal, National Union Said Magma Should Be Left Without Coverage.

After the First Appeal, everything changed. A National Union claims manager ignored the record and representations and contended for the first time that Magma was not covered at all.

First, it decided to cite its Prior Notice exclusion. Magma AMF 25 [National Union Motion to Dismiss (Dkt. No. 161), at 8-10.] National Union argued: The information Genesis and ERII got was not a "notice" for purposes of a "notice of circumstances," but it was a "notice" for purposes of its "prior notice" exclusion. *Id.* In other words: "Heads National Union wins; tails Magma loses." Magma's coverage should fall through a hidden trap door because it gave *too much* notice. This position had no good faith basis in the language of the policies or the reasonable expectations of the insured. National Union's position was so obviously wrong that only one case in the entire country had addressed it and found the position completely at odds with why claims-made policies have "notice of circumstances" provisions. *Aetna Cas. & Sur. Co. v. Allsteel Inc.*, 709 N.E.2d 680 (Ill. App. 1999). Magma AMF 26 [Magma's Motion for Summary Adjudication (Dkt. No. 168-1), at 18; National Union's Opposition to Magma's MSJ (Dkt. No. 175), at 13-15.] This Court and the Ninth Circuit in the Second Appeal dismissed National Union's argument. Magma AMF 27 [Order on MSJs (Dkt. No. 186), at 9-11; Mem. Op. (Dkt. No. 213) at 2-3.] But National Union wasn't done.

### 6. National Union's Refusal To Acknowledge Exhaustion Of ERII's 04-06 Policy Exhibits The Worst Kind Of Intransigence.

Before the First Appeal, National Union never contended that ERII's decision to treat the

Synopsys Action as a "notice of circumstances" forever bound it to paying only under is 03-04 Policy. How could it? ERII reserved its rights. ERII owed a duty to Magma to follow the Ninth Circuit's ruling. ERII had received the same information in as Genesis. But in 2010, National Union began objecting to "exhaustion."

a. **ERII could not act on the Ninth Circuit's ruling**

First National Union contended, bizarrely, that the First Appeal had decided as a matter of law that ERII had exhausted its 03-04 Policy and ERII therefore could not do otherwise. Magma AMF 28 [National Union Motion to Dismiss (Dkt. No. 161), at 5-8.] But the Ninth Circuit had not breathed a word about exhaustion. Magma AMF 29 [Mem. Op. (Dkt. No. 139).]

Then it contended more broadly that ERII had decided to pay its limits out of the 03-04 Policy and it could not change that decision, even to conform to the Ninth Circuit's ruling and its obligations to Magma. Magma AMF 30 [*See, e.g.*, (Dkt. No. 175), at 16-18.] No reasoning was offered, at least at first. While briefing the Second Appeal, National Union's position morphed into: We don't have to act on the known and available facts until a final court order declares exhaustion; an order requires proof that ERII has actually changed its records; and ERII can't change its records until a court decides that ERII also did not get a "notice of circumstances."

b. **Demand for unnecessary discovery**

We never should have had to reach the Second Appeal, The Ninth Circuit rejected the Prior Notice defense and implicitly rejected the notion that ERII's initial decision was somehow binding. But the Ninth Circuit decided that ***it*** did not have a record from which it could rule that ERII had exhausted the 04-06 Policy.

But National Union did. In 2013, ***eight years*** after this case first arose, a National Union claims manager looked at the file and saw the evidence of what information Magma gave to ERII and Genesis in the fall of 2004 regarding a "notice of circumstances": (1) the correspondence between Magma and ERII and Genesis; and (2) the Declarations of Richard Nace, ERII's claims handler. Mr. Nace's Declarations confirmed that ERII had received no material information in 2004 beyond what Genesis had received, and that ERII had in fact exhausted the 04-06 Policy. Magma AMF 31 [Nace 2008 Decl. (Dkt. No. 104), at ¶ 7, 2:9-10.] That claims manager also

knew that National Union had never investigated this issue beyond the information it had already received, or contended that other relevant evidence existed. In fact, National Union had pointedly decided not to investigate further. After the Securities Actions settled, National Union said it wanted discovery before the Court heard summary judgment motions on the "notice of circumstances" issue. Magma AMF 32 [Joint CMC Statement (Dkt. No. 80), at ¶ 6.] Yet, it filed its own motion and opposed Genesis's motion without requesting any discovery. Magma AMF 33 [National Union 2008 MSJ (Dkt. No. 89); National Union Opp. to Genesis's 2008 MSJ (Dkt. No. 96).]

Even after the First Appeal in 2010, National Union propounded discovery, but only to Genesis and not on this issue. Magma AMF 34 [Interrogatories, Document Requests, 10/26/10, attached as Exhs. F and G to the Cusack Decl.] It then opposed Magma's 2010 motion for summary adjudication without demanding discovery. Magma AMF 35 [National Union Opp. to Magma's 2010 MSJ (Dkt. No. 175).]

When National Union insisted on discovery in 2013 after the Second Appeal, it knew (1) for eight years it had breached its duty to investigate; and (2) that a further inquiry would show what it already knew. That discovery did confirm that ERII received exactly the same information in 2004 that Genesis had received. The Ninth Circuit had ruled that this was insufficient as a matter of law to trigger coverage under the 03-04 Policies; therefore, the 04-06 ERII Policy was triggered. ERII at the same time confirmed that, in light of the facts and the Ninth Circuit's ruling, it did in fact exhaust its 04-06 Policy beneath National Union's. Magma AMF 36 [2013 Nace Decl. (Dkt. No. 245, Exh. A); Amended Order, 8/31/15 (Dkt. No. 313), at 10-19.]

c. **"Waiver" and "estoppel" theories**

The National Union claims manager still refused to pay the claim. National Union did not articulate "waiver" and "estoppel" as defenses until it filed its Third Party Complaint against ERII in August 2014 – ***nine years after tender of the Securities Actions***. Magma AMF 37 [National Union's Third Party Complaint (Dkt. No. 259), at ¶¶ 49-63.] The claims manager had to have consciously ignored all of the reservations of rights, pleadings and Statements of Position ERII

had set out that made these defenses farcical. That same claims manager also had to lie to say that National Union had suffered some "detriment" because of ERII's conduct. National Union has never said what that detriment was because it could not possibly have suffered any. It has avoiding paying for years by hiding behind ERII. This Court held that the undisputed facts conclusively refuted these defenses. *See* Amended Order (Dkt. No. 313), at pp. 11-13.

**7. In Desperation, National Union Asserted A Misrepresentation Claim It Was Then Forced To Withdraw**

In 2014 for the first time, National Union also asserted two counterclaims against Magma, both alleging a spurious claim of misrepresentation in Magma's 2004 application for the National Union policy. Magma AMF 38 [National Union's Answer and Second Amended Counterclaim (Dkt. No. 258), at pp. 20-30.] National Union relied on statements in what it claimed was an "application" provided by Magma. Magma AMF 39 [*Id.* at Exh. A.] But the document on its face showed that it was an *internal* National Union document. Moreover, it discussed the Synopsys Action ***and the National Union underwriter concluded that Magma was a high risk***. Magma AMF 40 [*Id.* at Exh. A, at pp. 6 of 62, 32 of 62.] On July 31, 2014, Magma demanded that it withdraw the misrepresentation counterclaims, as they had no good faith basis and had been filed without a modicum of due diligence. Magma AMF 41 [7/31/14 email from D. Cusack, Exh. H to the Cusack Decl.] National Union stipulated to dismissal of the counterclaims with prejudice. Magma AMF 42 [Stipulation (Dkt. No. 261).]

**8. National Union Has Continued To Assert A "Known Loss" Defense Despite A California Supreme Court Case Precluding It**

Along the way, National Union said it would not pay because of Cal. Ins. Code § 22, the "loss-in-progress" or "known loss" rule. This issue was raised for the first time in National Union's reply brief on its motion to dismiss filed in 2010. Magma AMF 43 [National Union Reply (Dkt. No. 182), at 4-6.] It repeated it again in its appellate brief on the Second Appeal. Magma AMF 44 (Dkt. No. 14-1), at 34-36.] National Union raised the same defense again in opposition to Magma's last motion for summary judgment. Magma AMF 45 [National Union Opp. (Dkt. No. 286), at 20-22.] National Union never cited *Montrose Chemical Corp. v. Admiral*

*Ins. Co.*, 10 Cal. 4th 645 (1995) to the District Court or to the Ninth Circuit, even though it is controlling authority and even though Magma had pointed National Union to it. Magma AMF 46.

**9. National Union Still Refuses To Do The Right Thing**

Even now, National Union owes a continuing duty to review the file, including all of the facts and evidence, the Ninth Circuit's decisions, and this Court's decisions, and make a good faith judgment about whether to pay the claim. So far, it has made the decision again to not pay the claim. A jury certainly could find that the continued refusal to acknowledge its obligation, in light of the entire record, is unreasonable, without proper cause and, indeed, malicious.

**D. <u>Magma Has Suffered Damages Because Of National Union's Breach</u>**

When National Union still refused to pay after the First Appeal, Genesis amended its complaint to add a cause of action for restitution against Magma. National Union MF 38. Genesis then moved for summary judgment against Magma, arguing that it was entitled to recover its $5 million plus interest from Magma. Magma AMF 47 [2010 Genesis Motion for Summary Judgment (Dkt. No. 169), at 11-14.] On December 20, 2010, the Court partially adjudicated Genesis's restitution claim in favor of Genesis, ruling that Genesis had reserved its rights to seek reimbursement. Magma AMF 48 [2010 MSJ Order (Dkt. No. 186), at 8-9, 11.] Magma paid approximately $56,192 in attorneys' fees and costs on the cross-motions for summary judgment filed between Genesis and Magma in 2010. Magma AMF 49 [Cusack Decl. at ¶9.]

In addition, Magma in fact paid $1,094,811 out-of-pocket to settle the Securities Actions. A total amount of $17,189,622 was paid to defend and settle the Securities Actions (above Magma's SIR), consisting of $3,409,622 in defense costs, $13.5 million in settlement of the securities class action, and $280,000 in settlement of the derivative action. Magma AMF 52 [Magma/ERII Settlement Agreement, at pp. 3 and 4 (Exh. L to the Cusack Decl.).] After ERII paid its $10 million and Genesis paid its $5 million, $2,189,622.65 fell into the XL layer. Magma AMF 53 [Magma/ERII Settlement Agreement.] XL's 03-04 policy has a 50% co-insurance provision (requiring Magma to pay 50% of any covered loss otherwise within the XL policy).

Magma AMF 50 [XL 03-04 Policy and Co-Insurance Endorsement attached thereto (Exh. I to the Cusack Decl.) The XL 04-06 policy provides $5 million in limits, but *without* the 50% co-insurance provision. Magma AMF 51 [XL 04-06 Policy, (Exh. J to the Cusack Decl.) XL paid $1,094,811 under the Co-Insurance Endorsement to its 03-04 Policy, subject to a reservation of rights. Magma AMF 55 [XL/Magma Settlement Agreement, Exh. K to the Cusack Decl.] Magma paid $1,094,811 under the Co-Insurance Endorsement to the 03-04 Policy, subject to a reservation of rights. Magma AMF 56 [*Id*. And see Exh. M to the Cusack Decl.] Because the claim properly belongs in the 04-06 policy year, Magma has lost the use of the money it paid and is owed by XL because of National Union's breach. Magma AMF 57 [XL/Magma Settlement Agreement, Exh. K to the Cusack Decl.]

## III. LEGAL STANDARDS FOR THIS SUMMARY JUDGMENT MOTION

### A. Summary Judgment Standard

A motion for summary judgment or partial summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

**B. <u>Bad Faith Liability</u>**

An insurer is liable for breach of the implied covenant of good faith and fair dealing if it denied coverage unreasonably and without proper cause. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979); *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 920-21 (1978). The insured need not show that the insurer acted maliciously or immorally. *See Neal*, 21 Cal. 3d at 921 n.5.

An insurer's failure to conduct a thorough investigation before denying coverage is also bad faith. *Egan*, 24 Cal. 3d at 819; *see also Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*., 78 Cal. App. 4th 847, 879-80 (2000) (adequacy of the investigation of the claim is a critical factor). Even if an insurer denies coverage on grounds that were incorrect but reasonable, its failure to investigate can still be grounds for a finding of bad faith liability. *Jordan v. Allstate Ins. Co*., 148 Cal. App. 4th 1062, 1072-74 (2007). Nor can an insurer shield itself from bad faith liability by arguing that just one of its many improper coverage defenses had some reasonable basis. *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1111 (N.D. Cal. 2006).

## IV. NATIONAL UNION'S BAD FAITH DECISIONS ARE NOT IMMUNIZED BY THIS LAWSUIT

National Union's motion should be denied, first, because the central legal premise to it is wrong. National Union cannot cloak its unreasonable refusal to pay the claim in the litigation privilege merely because it asserted new and different grounds for denying coverage after suit was filed. The California Supreme Court has held that the insurer's duty of good faith and fair dealing continues even after litigation is commenced. *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 885-87 (1985). "[T]he contractual relationship between insurer and the insured does not terminate with the commencement of litigation." *Id.* at 885. For this reason, an insurer's decisions and statements while litigation is pending may support a claim for bad faith because the conduct is evidence of underlying bad faith claims handling decisions. *Id.* at 885-87. As the court explained in *Jordan v. Allstate Insurance Co.*, 148 Cal. App. 4th 1062, 1076 n.7 (2007):

> [A]n insurer's duty of good faith and fair dealing does not evaporate after litigation has commenced. To hold otherwise would effectively encourage insurers to induce the early filing of suits, and to delay serious investigation and negotiation until after suit was filed when its conduct would be unencumbered by any duty to deal fairly and in good faith.

In *White*, the Court ruled that the litigation privilege in Cal. Civ. Code §47 ("Section 47") protects against liability based on judicial communications, but it does not prevent use of such communications as evidence of an underlying course of conduct. *Id.* at 888. The insured in *White* sought to introduce evidence of low settlement offers from the insurer as evidence of bad faith. *Id.* The Court ruled that Section 47 did not bar admission of the settlement offers to "show that defendant was not evaluating and seeking to resolve their claim fairly and in good faith." *Id.*; *see also Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 685-87 (2000) (citing *White*, observing that the litigation privilege "does not shield all post-litigation conduct by an insurer"). *And see Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 09-CV-140-GPC-KSC, 2014 WL 1286392, at *6 (S.D. Cal. Mar. 28, 2014) (allowing evidence of insurer's "aggressive litigation tactics" for the purpose of proving bad faith conduct and noting that "[f]ederal courts also follow the 'careful distinction' set forth in *White* to allow insureds to introduce evidence of the insurer's litigation conduct in bad faith insurance cases"); *Competitive Technologies v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1153-54 (N.D. Cal. 2003) (litigation privilege did not bar claim of unfair competition based on pursuing bad faith litigation); JOHN K. DIMUGNO & PAUL E.B. GLAD, CAL. INS. LAW HANDBOOK § 11:143 (The Rutter Group 2015) ("The Civil Code § 47(b) judicial communications privilege does not preclude using a judicial communication as evidence of the insurer's liability for noncommunicative conduct.").

Thus, National Union's asserted defenses are evidence of each instance since July 2010 when its claims managers reviewed the facts, policies and law and made a decision to assert another excuse rather than pay the claim. *See White*, 40 Cal. 3d at 888. National Union has repeatedly breached its continuing duty of good faith and fair dealing. Just as in *White*, National Union's asserted defenses are admissible to show that National Union "was not evaluating and seeking to resolve [Magma's] claim fairly and in good faith." *White*, 40 Cal. 3d at 888.

The cases National Union cites do not support its position. *Nies v. Nat'l Auto & Cas. Ins. Co.*, 199 Cal. App. 3d 1192, 1203 n.7 (1988), *rejected* the insurer's argument that its pleadings and affirmative defenses were subject to the litigation privilege in Section 47, citing *White*. The court held it was error to allow an expert to testify about the pleadings because they were not

relevant on the facts of that case. *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666 (2000), addressed a bad faith claim premised *solely* on the insurer filing a lawsuit for reimbursement, where the insured acknowledged that the claim had been paid promptly and in full and no assertion was made of an inadequate investigation. *California Physicians' Service v. Superior Court*, 9 Cal. App. 4th 1321 (1992), similarly addressed case in which the insured had been paid and the bad faith claim was premised solely on the insurer's answer to the complaint and on alleged damages flowing solely from the filing of the pleading. In *Arbol Media, Inc. v. Hartford Cas. Ins. Co.*, No. SACV 02-0244-JVS (MLGx) 2003 U.S. Dist. LEXIS 28465 (C.D. Cal. July 7, 2003), the court addressed in conclusory fashion only whether an expert could testify about the insurer's "litigation conduct." Without more facts, the opinion is neither helpful nor necessarily inconsistent with *White*. *De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates*, 94 Cal. App. 4th 890 (2001), does not address the litigation privilege in the context of an insurer who owes a continuing duty to investigate and evaluate coverage. In that case, plaintiffs cited to defendants' cited pleadings as evidence of malice, not as evidence of an underlying pattern of decision-making. *Palmer v. Ted Stevens Honda*, 193 Cal. App. 3d 530, 539 (1987), also did not address an insurer's bad faith, but only ruled that evidence of court sanctions levied against defendant was not relevant to whether defendant acted in bad faith before the litigation started. *Knotts v. Zurich Ins. Co.*, 197 S.W. 3d 512 (Ky. 2006), is neither a persuasive gloss on California law nor is it inconsistent with *White* because it does allow evidence of an insurer's post-litigation conduct under some circumstances, just not litigation "strategy and techniques." Magma is not claiming that National Union's "strategy and techniques" are in bad faith, but that continuing to refuse to pay the claim, and offering pretextual reasons for doing so, are in bad faith.

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc*. 971 F.2d 272 (9th Cir. 1992), *cert. denied*, 507 U.S. 914 (1993), does not help National Union. There, the court held that a genuine dispute existed over a contract interpretation. Here, the Ninth Circuit resolved the only genuine dispute in the First Appeal. After that point, no genuine dispute has existed regarding National Union's obligation to pay Genesis. *Scammacca v. Royal Maccabees Life Ins. Co.*, 9

Fed App'x. 608 (9th Cir. 2001), and *Crenshaw v. Mony Life Ins. Co.*, No. 02-cv2108-LAB (RBB) 2004 U.S. Dist. LEXIS 9883 (S.D. Cal. May 3, 2004), are inapposite for the same reason. In each case, the court held that the insurer conducted a thorough investigation and denied coverage based on a reasonable interpretation of its contract and the facts.

National Union also misapplies *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1766 (1994) and *Coleman v. Gulf Ins. Group*, 41 Cal. 3d 782 (1986). In both cases, plaintiffs alleged that the insurer filed an appeal in bad faith after a judgment was entered against the insurer. *Coleman* held that claimants could not allege bad faith because they were third-party claimants, not parties to the contract. *Tomaselli* rejected a similar bad faith claim by the insured because, once the judgment was entered on the insured's bad faith claim, the contractual obligations were extinguished and replaced by the judgment. With the contract at an end, no bad faith could arise. Here, no judgment has ever been entered on Magma's breach of contract claim, so National Union's implied contractual obligation of good faith has never ceased. National Union's continuing refusal to pay Magma's claim, for all of the pretextual reasons it has asserted, is actionable bad faith.

In addition, as we explain in more detail below, the Ninth Circuit's decision in the Second Appeal to allow National Union to take discovery on the exhaustion issue does not insulate National Union. The Ninth Circuit did not have National Union's claim file in front of it. Both before and after the Second Appeal, a National Union claims handler knew that the file showed no reasonable basis either to challenge exhaustion of the ERII 04-06 Policy or to take discovery.

## V. MAGMA IS ENTITLED TO DISCOVERY

The second principal reason to deny National Union's motion is that National Union has obstructed discovery on Magma's bad faith claim. This Court (Dkt. No. 315 at ¶2) allowed Magma to conduct discovery on its bad faith claim. Magma sent document requests and interrogatories to National Union. Among other things, National Union has refused to produce any documents or information – including even the names of its claims managers – about its response to Magma's coverage claim after October 30, 2006. (*See* Cusack Decl. at ¶¶16 and 17 meet and confer letters attached as Exh. N and O.) National Union relies on the same "litigation

conduct" defense it has raised in this motion. But as we point out above (*see* discussion, *supra* at pp. 14 - 16), this discovery will provide relevant evidence about the decisions made by National Union's claims managers, the facts they considered and ignored, the investigations they made and refused to bother with, and the law they applied and disregarded. The Court should therefore in any case deny the motion under Federal Rule of Civil Procedures 56(d).

## VI. MAGMA HAS BEEN DAMAGED

National Union argues that an insured cannot sue for bad faith if it has been fully protected by another carrier. (*See* Op. Brief at 12-13.) In every case it cites, however, the insured was fully protected *without recourse*. That is not the case here. Genesis has sued Magma to get its money back and this Court ruled that Genesis reserved its right to do so. Therefore, Magma has not been fully protected. National Union's breach exposes Magma to liability to Genesis for now almost $9 million. Magma has had to spend over $56,000 to forestall Genesis obtaining a judgment against Magma. In other words, it does not matter that National Union will not pay the money directly to Magma; it will pay the money to Genesis to extinguish Magma's liability.

An insured who has been put at risk of liability by a breaching insurer has been damaged even if the insured did not pay money out of pocket. In *Wint v. Fidelity & Cas. Co.*, 9 Cal. 3d 257 (1973), an insurer refused to defend its insured against a wrongful death lawsuit. Great American, with a $10,000 policy, defended but Fidelity, with a $100,000 policy, refused. The insured stipulated to a judgment of $80,000 and assigned his claims against Fidelity to plaintiff in exchange for a covenant not to execute. Great American paid its limits. In the plaintiff's direct action against Fidelity, Fidelity argued that its breach of the duty to defend had not damaged its insured, because Great American had provided a defense. The Supreme Court disagreed. Great American's policy only had limits of $10,000, as compared to Fidelity's limits of $100,000, so Fidelity's breach put the insured at risk of an inadequate defense and excess liability. That risk was sufficient to hold Fidelity liable for breach of contract. *Id*. at 263.

*Wint* was followed in *Risely v. Interinsurance Exchange of the Automobile Club*, 183 Cal. App. 4th 196 (2010). On facts almost identical to those in *Wint*, Auto Club cited *Emerald Bay* and *Ceresino*, the same cases National Union relies on, to argue that Auto Club cannot be held to

have breached the homeowners policy if the insured got a defense under another policy. The court of appeal rejected this argument. It held that an insurer may be liable if the breach exposed the insured to additional *potential* liability. *Id*. at 214 - 215. It specifically distinguished *Emerald Bay* on the grounds that in that case, the insured was fully protected from both the cost of defense and any exposure to liability. *Id*. Citing *Wint*, the court stated:

> *In cases in which the insured faces potential liability beyond the policy limits of the defending insurer's policy*, courts have concluded that an insured can demonstrate that he has suffered damages from an insurer's breach of the duty to defend, apart from defense costs, *in the form of exposure to personal liability*.

*Id*. (emphasis added).

Both *Wint* and *Risely* address a breach of the duty to defend, but the principal applies equally to National Union's breach of its duty to indemnify. Magma has not been fully protected by Genesis's funding of the Securities Action settlement. National Union's breach has left Magma exposed to liability to Genesis for $5 million plus interest. According to the California Supreme Court, that is damage sufficient to support a cause of action for breach of contract.

*Green Wood Indus. v. Forceman Int'l Dev. Group, Inc.*, 156 Cal. App. 4th 766 (2007), cited by National Union, supports Magma. There, defendant was found liable for breach of an agreement to sell scrap metal and argued that plaintiff was not entitled to recover an amount attributable to a claim by a third party buyer. The court said:

> A plaintiff may not recover damages for an unpaid liability to a third party, *unless the plaintiff proves to a reasonable certainty that the liability could and would be enforced by the third party against the plaintiff* or that the plaintiff otherwise could and would satisfy the obligation.

*Id*. at 776 (emphasis added).[3]

Genesis no doubt could and would enforce its claim against Magma because it is in fact seeking to do so. Genesis has sued Magma for restitution, filed a summary judgment motion, and won it in part. It is thus "reasonably certain" that Genesis could and would enforce its claim against Magma. At minimum, a disputed issue of fact exists that precludes summary judgment.

[3] *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001), also cited by National Union, merely states that speculative damages are not recoverable. That was a tort case addressing lost future profits, so it has no bearing on the issue here.

National Union's breach also required Magma to pay $1,094,811 towards the Securities Action settlement. While Magma will be able to recover the money it paid from XL, National Union's breach was the proximate cause of Magma's loss of use of $1,094,811 for eight years. Cal. Civ. Code §3300. National Union can hardly contend that Magma's damages were not a foreseeable consequence of National Union's failure to exhaust, given how vociferously it has defended its refusal to pay based on its contention that ERII had not exhausted. These policies are not just promises to pay money only. They are written expressly subject to other policies written in the same year (*e.g.*, regarding exhaustion) and written in prior or succeeding years (*e.g.*, regarding "notices of circumstances" and "related claims"). That Magma would suffer the harm it has with respect to Genesis and XL is thus entirely foreseeable. *See Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 939-940 (2004)(acknowledging that damages beyond the amount due under the policy may be recoverable for breach of contract if foreseeable).[4]

## VII. NO "GENUINE DISPUTE" EXISTS REGARDING THE SUBJECT OF MAGMA'S BAD FAITH CLAIM

### A. National Union's Position On The Notice Of Circumstances Issue *Before* The First Appeal Was Decided Is Not The Subject Of Magma's Bad Faith Claim

National Union mostly discusses the "notice of circumstances" issue before the First Appeal. But Magma's bad faith claim arises out of decisions made by National Union's claims managers to deny coverage – despite the undisputed facts and law in their claims file -- *after* the Ninth Circuit decided the "notice of circumstances" issue. The Ninth Circuit's decision settled the one genuine dispute in this case. National Union's position on the "notice of circumstances" prior to the First Appeal is therefore irrelevant to Magma's bad faith claim.

National Union's cases make Magma's point. They state that an insurer's denial of coverage is reasonable – even if ultimately incorrect – when it has relied on case law supporting

[4] While Magma did not expressly allege this particular item of damages in its Second Amended Cross-Complaint, National Union already offered into evidence all of the material facts: the XL 03-04 (co-insurance) and 04-06 (no co-insurance) Policies; that XL funded the Securities Action settlement under the 03-04 Policy with the 50% co-insurance provision; and thus that its refusal to pay is preventing Magma from accessing the more valuable XL 04-06 Policy. *See* National Union's Opposition to Magma's 2015 MSJ (Dkt. No. 286), at 2:13-19; 4:24-28; and 8:5-13. Thus, National Union cannot now complain; however, if necessary, Magma will move to amend its complaint to remove any possible objection.

its position. *See, e.g.*, *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966 ( 2003); *T.G.S. Transp., Inc. v. Canal Ins. Co.*, 216 Fed. App'x. 708 (9th Cir. 2007); *R & B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327 (2006). Here, on the other hand, National Union has denied coverage ***after*** the Ninth Circuit decided the one dispositive issue and ***in spite of*** that decision.

**B. The "Genuine Dispute" Defense Does Not Apply To Liability Policies**

Every "genuine dispute" case cited by National Union addresses a first-party[5] policy. *See, e.g., Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272 (9th Cir. 1992); *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217 (9th Cir. 1988); *Crenshaw v. Mony Life Ins. Co.*, No. 02-cv-2108-LAB (RBB), 2004 U.S. Dist. LEXIS 9883 (S.D. Cal. April 30, 2004); *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713 (2007); *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001). The "genuine dispute" defense does not apply to claims under third-party liability policies. *See Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1424 and 1424 n.19 (2013) ("[t]he extent to which the 'genuine dispute' doctrine may apply in third party cases is presently unclear" and "[i]t is doubtful that the [defense] applies in third party duty to defend cases") (quoting Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2012) ¶ 12:618); *see also Howard v. Am. Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498, 530-31 (2010) (noting that "it has never been held that an insurer in a third party case may rely on a genuine dispute over coverage to refuse settlement"); *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 951 (2006) (finding it inapplicable to a third-party duty to defend case).[6]

[5] A "first-party" policy provides coverage directly to an insured for its own loss; for example, a homeowner's policy covering a fire loss. A "third-party" policy provides coverage for an insured's liability for losses to a third party.

[6] The few cases purporting to apply it in a third-party context did so only where legal precedent directly supported the insurer's position. *See e.g., Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*, 176 Cal. App. 4th 176, 202 (2009)(not bad faith where refusal to defend objectively reasonable based on then-existing, but subsequently overturned, legal precedent); *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 291-92 (2005) (not bad faith for breach of duty to indemnify where unsettled law made insurer's denial of coverage "objectively reasonable"). No such circumstances exist here.

**C. The Genuine Dispute Defense Does Not Provide An End Run Around National Union's Burden On Summary Judgment**

In any case, disputed issues of material fact preclude summary judgment for National Union. "A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson*, 42 Cal. 4th at 723-24 (emphasis original). "[A] dispute is not 'legitimate' unless it is founded on a basis that is reasonable under all the circumstances." *Id*. at 724 n.7. Thus, "there are limits to the applicability of the genuine dispute doctrine." *Bernstein v. Travelers, Ins. Co*., 447 F. Supp 2d 1100, 1114 (N.D. Cal. 2006). For example, "[t]he genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." *Harbison v. American Motorists Ins. Co*., 636 F. Supp. 2d 1030, 1039 (E.D. Cal. 2009).

Moreover, the "genuine dispute" defense does not alter a court's standard for deciding a motion for summary judgment, nor change the moving party's burden. *See Wilson*, 42 Cal. 4th at 724. A court may only grant summary judgment in favor of the insurer when it is indisputable that the basis for the insurer's denial of benefits was reasonable. *Id*. "[A]n insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." *Id*. (citing *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161-62 (9th Cir. 2002)). "The issue remains a question of fact unless only one inference may be drawn from the evidence." *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 824 (9th Cir. 2014)(emphasis original). *See also Bernstein*, 447 F. Supp. 2d at 1114 ("[C]ourts should not forget that an insurer's bad faith is ordinarily a question of fact to be determined by the jury by considering the evidence of motive, intent and state of mind.") (citing *Chateau Chamberay*, 90 Cal. App. 4th at 350).

**D. National Union Has Never Had A Reasonable Basis For Refusing To Pay Its Policy Limits After The First Appeal**

**1. National Union Has Owed Magma A Continuing Duty To Investigate And Evaluate Magma's Claim**

After the First Appeal, the National Union claims managers owed a duty to Magma to apply that ruling to the known facts. They had a duty to read their policy and apply it in light of

any relevant law, and to make good faith judgments about National Union's contractual obligations. If material facts were uncertain, they had a duty to investigate. This is what claims managers are hired to do. They may not abdicate their responsibilities just because a lawsuit is pending. The lawsuit is not a license to act in bad faith. When those claims managers kept deciding not to pay and raised one objection after another with no good faith basis for doing so, these claims managers were acting not just unreasonably, but maliciously.

**2. National Union Has Made A Series Of Bad Faith Claims Decisions.**

A reasonable jury could find, first, that National Union's decision to do anything but pay Genesis after the First Appeal was unreasonable and without proper cause. The only issue had been decided. No facts supported any other decision. Even more, National Union had led Magma, Genesis, ERII and the Court to believe that it would pay if Genesis won the First Appeal. Thus, a reasonably jury could conclude that National Union acted in bad faith when, by refusing to pay the claim in July 2010, it both ignored the undisputed facts and law in its file, and turned its prior representations to the parties and the Court over a five year period into lies.

A reasonable jury could find as well that in each and every instance when a National Union claims manager decided to assert another defense rather than pay, each decision was made without any reasonable basis solely in order to avoid payment and harass Magma.

**Prior Notice**. A jury could find that (1) National Union did not even read its own policy, because the Ninth Circuit found that the policy language did not support this argument; (2) did not consider the law, because the one case to address this issue rejected it; and (3) did not stop to ask if the argument made sense in the context of this claims-made policy.

**ERII could not act on the Ninth Circuit's ruling**. The purpose of the First Appeal was to instruct all the parties, ERII included, whether the money should be paid out of the 03-04 Policies or the 04-06 Policies. A jury could therefore not help but find National Union in bad faith for reading the First Appeal and inventing a ruling the Ninth Circuit did not make. Nor can National Union possibly have acted in good faith when it refused to pay the claim in light of (1) the Ninth Circuit's ruling, (2) the undisputed fact that ERII had received the same information as Genesis in 2004, (3) ERII's promise to exhaust the correct 04-06 Policy, and (4) its obligation, if

it had any doubt, to confirm that ERII acted on that promise. If it had doubts about whether ERII had in fact re-allocated its payment to the 04-06 Policy, it had only to pick up the phone and call. It was bad faith to take the position that what it knew to be true could not be acted on unless every fact was formally adjudicated. For this reason, National Union cannot hide behind the Second Appeal, where the Ninth Circuit remanded for further discovery. National Union already knew the undisputed facts. It became bad faith to hide behind this suit well before the Second Appeal.

**Demand for unnecessary discovery**. It cannot have been reasonable for a National Union claims manager to review the file *eight years* after the case first arose, see the correspondence from 2004, read the *two* Nace Declarations, note that National Union twice made a decision not to investigate further, and then decide it could not pay the claim without discovery into what ERII knew in 2004. Moreover, after discovery was completed in 2014, it was unreasonable still to refuse to pay the claim.

**Waiver and estoppel**. The decision to refuse to pay based on these objections is so directly contrary to the undisputed facts regarding ERII's statements (*see* discussion *above* at pp. 11 - 12) that a reasonable jury could only conclude that National Union is acting maliciously.

**Known Loss**. National Union has refused to pay on this ground despite controlling legal authority from the California Supreme Court.

**Misrepresentation**. The decision to assert this defense as a reason to not pay was either malicious or incompetent or both. National Union relied on statements in a document that directly contradicted the misrepresentation claim. And it took National Union nine years to figure all that out. This defense was so misbegotten, National Union voluntarily withdrew it.

Disputed issues of material fact exist, therefore, as to whether National Union's claims managers, after the First Appeal, conducted an adequate investigation of Magma's claim for coverage, and reasonably evaluated the facts and law, before making each decision to assert a defense, one after the other, rather than pay the claim.

## VIII. CONCLUSION

For the foregoing reasons, Magma requests that the Court deny National Union's motion for summary judgment.

Dated: February 16, 2016

FARELLA BRAUN & MARTEL LLP

By: /s/
Dennis M. Cusack

Attorneys for Defendant, Counterclaimant and Crossclaimant MAGMA DESIGN AUTOMATION, INC.