**LEWIS BRISBOIS BISGAARD & SMITH LLP**
GLENN A. FRIEDMAN, SBN 104442
Email: Glenn.Friedman@lewisbrisbois.com
MICHAEL K. JOHNSON, SBN 130193
Email: Michael.Johnson@lewisbrisbois.com
PAUL A. DESROCHERS, SBN 214855
Email: Paul.Desrochers@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, CA 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Defendant and Counter/Cross-Defendant
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

GENESIS INSURANCE COMPANY,

Plaintiff/Counter-Defendant,

vs.

MAGMA DESIGN AUTOMATION, INC. *et al*,

Defendant/Counter-Claimant.

AND ALL RELATED COUNTER-CLAIMS, CROSS-CLAIMS, AND THIRD PARTY COMPLAINTS.

Case No. 06-CV-05526 EJD

**REPLY MEMORANDUM IN SUPPORT OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S MOTION FOR SUMMARY JUDGMENT AS TO MAGMA'S CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**Date: June 9, 2016**
**Time: 9:00 a.m.**
**Crtrm.: 8, 4th Floor**
**Judge: Hon. Edward J. Davila**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. REPLY TO MAGMA'S "FACTS" .......... 2

III. ARGUMENT .......... 5

A. The Court Should Not Be Distracted By Magma's Efforts To Divert The Focus Of National Union's Arguments As The Underlying Premise Of Magma's Opposition Is Not Supported By The Case Law Or The Facts Of the Case .......... 5

1. The premise of Magma's arguments is flawed. .......... 5

2. The cases cited by Magma in support of its arguments are either distinguishable or actually support National Union's position .......... 7

B. Magma Suffered No Damage Based On Any Conduct By National Union .......... 8

C. The "Genuine Dispute" Doctrine Is Applicable To The Matters At Issue And Bars Magma's Bad Faith Claim .......... 10

1. Magma's "One Genuine Issue" Argument Lacks Merit .......... 10

2. The "Genuine Dispute" Doctrine Applies To Liability Policies .......... 11

D. Magma's Contention That The Discovery It Propounded To National Union Is Relevant To National Union's Entitlement To Summary Judgment Lacks Merit And Is Unsupported By Either The Facts Or The Evidence .......... 12

IV. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Everson v. Leis*,
556 F.3d 484 (6th Cir. 2009) .......... 13

*Mackey v. Pioneer Nat. Bank*,
867 F.2d 520 (9th Cir. 1989) .......... 14

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......... 13

*Swoger v. Rare Coin Wholesalers*,
803 F.3d 1045 (9th Cir. 2015) .......... 13

*Tatum v. City and Cnty. of San Francisco*,
441 F.3d 1090 (9th Cir. 2006) .......... 13

*Trask v. Franco*,
446 F.3d 1036 (10th Cir 2006) .......... 13

## CALIFORNIA STATE CASES

*CalFarm Ins. Co. v. Krusiewicz*,
131 Cal. App. 4th 273 (2005) .......... 11, 12

*Century Surety Co. v. Polisso*,
139 Cal. App. 4th 922 (2006) .......... 11

*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*,
90 Cal. App 4th 335 (1989) .......... 12

*Dalrymple v. United Services Auto. Association*,
40 Cal. App. 4th 497 (1995) .......... 11, 12

*Griffin Dewatering Corp. v. Northern Ins. Co. of New York*,
176 Cal. App. 4th 172 (2009) .......... 12

*Howard v. American National Fire Insurance Co.*,
187 Cal. App. 4th 498, 530 ( 2010) .......... 11

*Jordan v. Allstate Insurance Co.*,
148 Cal. App. 4th 1062 (2007) .......... 7, 8

*Mt. Hawley Insurance Co. v. Lopez*,
215 Cal. App. 4th 1385 (2013) .......... 11

*Risely v. Interinsurance Exchange of the Automobile Club*,
183 Cal. App. 4th 196 (2010) .......... 9, 10

*White v. Western Title Ins Co.*,
40 Cal. 3d 870 (1985)........................................................................................... 7

*Wint v. Fidelity & Casualty Co.*,
9 Cal. 3d 257 (1973)........................................ 9, 10

**Rules**

Fed. R. Civ. P. Rule 56(d) ........................................ 12, 13

**Treatise**

*Croskey et al.*, *Cal. Practice Guide: Insurance Litigation* (The Rutter Group 2015)..................... 11

*Schwarzer, Tashima & Wagstaffe, Cal. Practice Guide: Fed. Civ. Pro. Before Trial*
(The Rutter Group 2013)........................................ 13

## I. INTRODUCTION

In opposing National Union's Motion for Summary Judgment, Magma raises no disputed issues of material fact to counter National Union's arguments. Instead, Magma seeks to distance itself from previous positions it has taken, engages in revisionist history, and improperly asserts a plethora or additional irrelevant facts in an effort to muddy the waters and create disputed issues of fact where none exist.

National Union's Separate Statement of Facts clearly and succinctly sets forth each material fact supporting its entitlement to Summary Judgment as to Magma's claims for breach of contract and breach of the covenant of good faith and fair dealing. Further, National Union set forth the evidence from the record supporting each material fact upon which it relied in support of its defenses to Magma's claims. In response, Magma does not dispute National Union's facts, instead sets forth numerous additional, irrelevant and inaccurate "material facts" which have no bearing on the issues raised in National Union's motion, and that do nothing to refute National Union's arguments. Furthermore, in asserting this multitude of additional facts, Magma has violated this Court's standing order with regard to responsive separate statements and has grossly exceeded the permitted page limitations. Based upon Magma's failure to comply with the Court's rules, the Court should strike Magma's responsive separate statement.

National Union is entitled to summary judgment as against Magma's breach of contract cause of action because it is established that:

- Magma had primary, first layer excess and second layer excess insurance coverage totaling $20 Million for both the 2003-2004 and the 2004-2006 policy periods.
- The *Synopsys* Action arose during the first policy period.
- Magma gave "notice of circumstances" to its 2003-2004 carriers seeking to preserve coverage for future claims arising from the *Synopsys* Action.
- ERII and XL accepted notice of circumstances under their 2003-04 policies and preserved coverage for future claims arising from the *Synopsys* Action.
- The securities class action and shareholder derivative suits are filed based upon the facts alleged in the *Synopsys* Action.
- ERII accepts coverage for the Securities Actions under its 2003-2004 policy based on the previously accepted notice of circumstances provided by Magma.

- Magma cannot demonstrate that it has suffered any damages to support its breach of contract claim, as the defense and the settlement of the Securities Actions were funded by its insurers.

Similarly, National Union is entitled to summary judgment as against Magma's cause of action for breach of covenant of good faith because it is established that:

- Magma cannot show that National Union breached the insurance contract, which is a predicate to breach of the implied covenant.
- There is and has been a genuine dispute regarding coverage for the Securities Actions under the National Union policy and the exhaustion of the limits of the underlying primary policy.

Accordingly, National Union is entitled to summary judgment as against Magma's breach of contract and breach of the covenant claims and requests that the Court grant its motion.

## II. <u>REPLY TO MAGMA'S "FACTS"</u>

In its rendition of the "facts" of the case and the litigation, Magma resorts to revisionist history in an effort to support its "one genuine issue" theory of the case. Despite the fact that it fails to substantively dispute the material facts asserted by National Union demonstrating National Union's entitlement to summary judgment on the subject claims, Magma resorts to raising a myriad of irrelevant facts and with much supposition and conjecture seeks to present them in a manner it hopes will convince the court that there exist issues to prevent summary judgment.

Furthermore, Magma has improperly sought to expand the scope of the issues to be addressed and has violated the Court's standing order regarding Responsive Separate Statements. (Judge Edward J. Davila's Standing Order for Civil Cases, § IV. B(2).) Pursuant to section IV. B(2), Magma was to respond to National Union's statement of material facts indicating whether each of the facts listed is disputed or undisputed and, if disputed, to cite to evidence in the record establishing the dispute. Further, Magma was to identify any additional material facts it asserts establish a genuine issue which would preclude summary determination of the matters at issue. The Court's Standing Order further states: "**The Responsive Separate Statement shall add no more than 5 pages to the Moving Separate Statement**." In a flagrant violation of this Court's standing order, Magma's responsive separate statement adds an additional fourteen (14) pages to National Union's Moving Separate Statement. In fact, Magma includes eleven (11) pages of "additional material facts" in its

attempt to manufacture issues to defeat National Union's motion. Moreover, Magma's purported "additional material facts" are not *material*. Because Magma has ignored this Court's Standing Order, its Responsive Separate Statement should be stricken.

Magma has not, and can not, dispute the material facts asserted by National Union which demonstrate its entitlement to summary judgment. Along this vein, Magma goes to great length to assert that National Union first raised the possibility that there were defenses to coverage under its policy after the Ninth Circuit's decision in *Genesis I*. However, the undisputed and unchallenged declaration of Glenn A. Friedman submitted in support of National Union's Opposition to Magma's first Motion for Summary Judgment (Dkt No. 176), clearly establishes that Magma's counsel was apprised <u>prior to the settlement of the Securities Actions</u> regarding National Union's position on this issue. In his uncontroverted declaration, Mr. Friedman states that:

> "[d]uring the course of this litigation and before the underlying Securities Actions were settled in November 1997, I had several discussions with Magma's counsel in which I disputed Magma's assertion that all parties "understood" that the excess coverage dispute was an "either/or" proposition, i.e., that first-layer excess coverage would be afforded for Magma in the Securities Actions under either the Genesis or the National Union policies. In these discussions, I informed Magma's counsel that Magma could be without first-layer excess coverage if it did not prevail in establishing coverage under the Genesis Excess Policy in effect during the 03/04 policy period. In that regard, I specifically advised Magma's counsel that even if the Court found that the notice of circumstances provided to ERII and Genesis to be deficient in some respect, it was conceivable that Magma could be deprived of coverage based on the terms, conditions, exclusions and exceptions to coverage of the National Union Excess Policy." (Dkt No. 176 at ¶ 12)

Based on the November 2010 Friedman Declaration, it is evident that, prior to settlement of the Securities Actions, Magma was apprised of National Union's disagreement with the "either or" position being asserted by Magma, and that Magma was advised it could be deprived of coverage for the Securities Actions under the National Union policy based upon the "terms, conditions, exclusions and exceptions to coverage" of the National Union policy. National Union was clear that Magma could not ignore the provisions of the insurance contract between Magma and National Union if

Magma failed to establish coverage pursuant to its insurance contract with Genesis.[1] Accordingly, Magma's unsupported assertion that it was never advised as to National Union's position prior to settlement and that it settled the Securities actions assuming that the National Union policy proceeds were available to fund the settlement are blatantly false.

Another of the more egregious purported "material facts" Magma asserts in the hope to avoid summary judgment is its contention that National Union's <u>sole basis</u> for denying coverage was that Executive Risk placed coverage in the prior policy year. However, Magma ignores the fact that National Union reserved all rights, privileges and defense under its policy with respect to the subject claims. (See Declaration of Dennis M. Cusack in Opposition to National Union's Motion for Summary Judgment ("Cusack Decl"), Exhibit B at pg 4.) Magma is correct that National Union's letter denying coverage did not specifically raise lack of exhaustion as a defense to coverage, since the primary insurer had not placed coverage under National Union's policy year and, as such, there was no potential for coverage under the policy. It is axiomatic that, before coverage is available under an excess policy, the insured must demonstrate that it has satisfied all conditions to coverage under the policy – in particular, exhaustion of the underlying primary policy. Accordingly, exhaustion of the primary policy was always a prerequisite to coverage under the National Union policy and was a genuinely disputed issue in the case.

National Union will address the remainder of Magma's "additional material facts" in its Reply Separate Statement as per this Court's Standing Order.

/ / /

/ / /

/ / /

/ / /

---

[1] "[N]or shall the terms of this policy be waived or changed except by endorsement issued to form a part hereof, signed by the Insurer or its authorized representative." (See Dkt No. 330 - Declaration of Paul Desrochers ISO National Union's Motion for Summary Judgment, Exhibit B, National Union Excess Policy at Clause X.) There is no such endorsement.

## III. ARGUMENT

### A. The Court Should Not Be Distracted By Magma's Efforts To Divert The Focus Of National Union's Arguments As The Underlying Premise Of Magma's Opposition Is Not Supported By The Case Law Or The Facts Of the Case

#### 1. The premise of Magma's arguments is flawed.

The underlying premise of Magma's opposition, as well as Magma's arguments in support of the purported bad faith conduct of National Union, all relate to Magma's assertion that coverage was afforded for the Securities Actions under the National Union Excess Policy. In its Opposition Brief Magma specifically states that it "is not claiming that National Union's 'strategy and techniques' are in bad faith, but that continuing to refuse to pay the claim, and offering pretextual reasons for doing so, are in bad faith." (Magma's Memorandum in Opposition to National Union's Motion for Summary Judgment ("Magma Brief") at 16:21-23) This premise is flawed and not supported by the facts or the decisions of the Ninth Circuit regarding the two previous appeals in this matter.

In making this argument Magma completely ignores key dispositive facts. First, Magma fails to acknowledge that Executive Risk, the primary insurer on both the 03/04 and 04/06 policy towers, expressly accepted "notice of circumstances" and/or "notice of potential future claims" arising from the Synopsis action in November 2004, specifically with regard to potential D&O claims that may arise from the allegations alleged in the Synopsis action. Second, Magma ignores the fact that, as the primary insurer, Executive Risk's decision to place coverage for the Securities Actions under the 2003-04 policy year, pursuant to its prior express acceptance of "notice of circumstances" under that policy for claims arising out of the allegations in the *Synopsis* case,[2] impacted the coverage positions, and/or available coverage, under the various excess policies.

---

[2] In its August 23, 2005 letter to Magma related to its acceptance of coverage of the Securities Actions, Executive Risk explained its coverage position as follows:

> " ERII received notice of the Synopsys Suit on or about September 29, 2004, and accepted it as notice of circumstances that could give rise to a **Claim**. Because the Complaints constitute **Related Claims** (fn1) subsequently arising out of the Synopsys Suit, such **Claim** is deemed to have been made when ERII received notice of the Synopsys Suit, which was during the December 15, 2003 to December 15, 2004 Policy Period. ERII set up a separate claim file (number 110294) when we first received notice of the Milberg Weiss press release for

(footnote continued)

Executive Risk's decision to place coverage in the 2003-04 policy period precluded coverage under the National Union Excess Policy because, pursuant to the express terms of its policy, National Union's obligations under its policy were not triggered unless and until the proceeds of the underlying policy (the Executive Risk 2004-06 policy) were exhausted. (National Union's Separate Statement of Facts ("Fact") No. 26) This is a basic premise of insurance law and the Ninth Circuit Court of Appeal agreed with National Union's position on this issue in its decision in *Genesis II*. (Dkt No. 208 – USCA 2/5/13 Memorandum of Decision ("*Genesis II*")) Further, in *Genesis II* the Ninth Circuit specifically stated that:

> "2. Coverage under National Union's policy was **contingent on exhaustion** of the primary coverage provided by Executive Risk Indemnity, Inc. ("ERII"), for the 2004-06 policy period. ERII, however treated the 2005 lawsuits as claims under Magma's 2003-04 policy. ERII's statement that it would 'adjust its records' to reflect exhaustion of the 2004-06 policy was explicitly contingent on a judicial determination that its decision was incorrect.
>
> **There has been no such determination.** Our prior decision dealt only with notice to Genesis. **ERII, by contrast, accepted Magma's notice as adequate.** Because Genesis failed to establish that ERII's 2004-06 policy had, as a matter of law, been exhausted, we reverse the district court's partial summary judgment."

(*Genesis II* at ¶ 2.)

Accordingly, until this Court's July 8, 2015 Order, there had been no exhaustion of the Executive Risk 2004-06 policy. Without exhaustion of the underlying primary policy, coverage under the National Union Excess Policy had never been triggered and National Union was under no obligation (contractual or otherwise) to pay its policy proceeds.

---

> Crowell. Please note that we have now closed the file. The Complaints will be handled under the file number originally established for the Synopsys Suit, claim number 95390.
> •••
> (fn1) Pursuant to Policy Section 13.(g), "*[a]ll **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made.*" Because the factual allegations in the Complaints are nearly identical, the constitute **Related Claims** as the term is defined in Policy Section 5."

(See Cusack Decl. at Ex. A)

### 2. The cases cited by Magma in support of its arguments are either distinguishable or actually support National Union's position

Magma contends that National Union's defenses asserted in response to its cross-claims support Magma's claim for bad faith, and it relies primarily on the decisions in *White v. Western Title Ins Co.*, 40 Cal. 3d 870 (1985) and *Jordan v. Allstate Insurance Co.*, 148 Cal. App. 4th 1062 (2007) to bolster its assertions. However, Magma's reliance on these cases is misplaced.

The holding in *White v. Western Title* does not go as far as Magma would have the Court believe with respect to allowing Magma to rely on the positions taken by National Union in defending the claims against it as evidence of bad faith. In fact, even Magma's own citations to *White* and the cases that followed it, support a contrary view. ["an insurer's decisions and statements while litigation is pending ***may*** support a claim for bad faith" (emphasis added, citation omitted) (Magma Brief at 14:22-23); "the litigation privilege 'does not shield all post-litigation conduct by an insurer'" (citation omitted)(Magma Brief at 15:7-9).] Furthermore, *White* is clearly distinguished in that it involved claims by the insured against its title insurance company related to the title insurer's failure to properly prepare its preliminary title report and the insureds subsequent loss of water rights directly related to the insurer's negligent conduct. (*White*, 40 Cal. 3d at 884-885.) In *White* the title insurance company was held to a higher standard of care with respect to its insured and its conduct was deemed prima facie negligent. ( *Id.*) In fact, it was the title insurance carrier's subsequent conduct in seeking to avoid liability associated with its own negligence that was the conduct being offered up to demonstrate bad faith. (*Id.* at 890.)

Accordingly *White* is distinguishable as none of the underlying factors supporting the court's decision are present in the instant action. Unlike *White*, this case involves excess insurance coverage issues (not title insurance); National Union has not been found negligent (nor is there any claim that it acted negligently with respect to its adjustment of the subject claims); and the defenses asserted by National Union were based entirely upon the terms of its policy and not in an effort to avoid liability for its own conduct. Thus, Magma's reliance on *White* is misplaced and its arguments based upon the holding in *White* are irrelevant to the matter at hand.

Magma's reliance on the decision in *Jordan v. Allstate Insurance Co.* is similarly misplaced, however for different reasons. The court's decision in *Jordan* does not support Magma's position, rather, it support's National Union's contention that Magma's bad faith claims lack merit. In *Jordan*, the court specifically states that "Before an insurer can be found to have acted in bad faith for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted unreasonably or without proper cause. Where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, **there can be no bad faith liability imposed on the insurer for advancing its side of that dispute**." (emphasis added.) *Jordan v. Allstate*, 148 Cal. App. 4th at 1072.

In the present action, it is an undisputed fact that coverage was not triggered under the National Union Excess Policy until the underlying Executive Risk primary policy was exhausted. Furthermore, pursuant to the holding of the Ninth Circuit in *Genesis II* and this Court's recent Order granting in part and denying in part Magma's motion for summary judgment, the Executive Risk 04-06 policy underlying the National Union Excess Policy was not exhausted until July 8, 2015. (Dkt. Nos. 208 and 302.) Based on these facts, it is evident that until this Court's July 8, 2015 Order, there was a genuine issue as to National Union's liability for the claims asserted by Magma, and as such "there can be no bad faith liability imposed on [National Union] for advancing its side of the dispute." *Jordan*, at 1072. And the issue still has not been finally decided, as it is currently on appeal.

**B. Magma Suffered No Damage Based On Any Conduct By National Union**

Contrary to Magma's assertions, Magma has not suffered any damage as a result of any alleged breach by National Union. Magma's defense of the securities actions and subsequent settlement of the claims were funded by available insurance except to the extent that Magma had retention and/or shared obligations with its insurers under its contracts. (Fact Nos. 22, 23 and 24.) Magma does not refute this fact.

Magma now attempts to argue that because its 2003-04 second layer excess policy with XL Insurance required it to pay 50% of any liability which was allocated to the second layer excess level and that under the 2004-06 policy with XL it had no such shared liability, that it has been injured by its loss of use of the money it was obligated to pay under the terms of its policy. (Magma Brief at 20:1-12.) However, it is an undisputed fact that National Union did not insure Magma for the 2003-

2004 policy period, and thus, it was not National Union who made the decision to place coverage under the 2003-04 policy period. Executive Risk and XL Insurance made this decision based upon their insurance contracts with Magma for the 2003-2004 policy period and their prior acceptance of *Magma's request* in 2004 that they accept the Synopsis action (and the information contained therein) as "notice of circumstances" or of "potential future claims" arising from the conduct alleged in the Synopsis action. (Fact Nos. 11 and 12.) Further, Magma asserts that National Union's purported refusal to pay has thwarted its ability to pursue reimbursement of these funds from XL.[3] (Magma Brief at 20:1-12.) This argument is entirely without merit as it has been repeatedly affirmed by both this Court and the Ninth Circuit that coverage under the 2004-06 policies was expressly contingent on exhaustion of the underlying Executive Risk 2004-06 policy which, as set forth above, did not occur until this Court's order on July 8, 2015.

Magma's arguments that it was not fully protected for the defense and settlement of the Securities Actions belies the undisputed facts of the case. Magma received all benefits and coverage it was entitled to under the terms of its applicable insurance policies. Magma's contention that it now has suffered injury because National Union's purported breach has potentially exposed it to liability to Genesis for $5 million plus interest is not supported by the facts of the case. Furthermore, the cases relied upon by Magma (*Wint v. Fidelity & Cas. Co.*, 9 Cal. 3d 257 (1973) and *Risely v. Interinsurance Exchange of the Automobile Club*, 183 Cal. App. 4th 196 (2010)), are inapplicable because they are duty to defend cases, they relate to the defense obligations of a primary insurer not indemnification obligations of excess insurers for settlements, and they do not involve the situation as is the case in the instant action where the insured was fully protected from its loss by its excess insurers. It is well

---

[3] Of particular interest is Magma assertion that it will now "be able to recover the money it paid from XL" – this is one of the basis National Union asserted in support of its waiver and estoppel defenses as against Executive Risk's efforts to reallocate its policy payments from the 2003-04 to the 2004-06 policy period. As previously argued by National Union, Executive Risk's "adjustment of its records," was not merely an administrative task and would have adverse impacts on all of the 2004-06 excess insurers who had relied upon Executive Risk's acceptance of notice of circumstances under its 2003-04 policy and its placement of coverage in the 2003-04 policy period pursuant to that acceptance. This comment by Magma now, in support of its contention that it has been damaged, is contrary to its previous arguments regarding National Union's waiver and estoppel defenses.

established that an insurer's duty to defend is broader than its duty to indemnify and as such the court's finding that the insurer's breach of their defense obligations in both *Wint* and *Risely* put the insured at risk of an inadequate defense and excess liability clearly distinguishes these cases from the instant action as neither of these factors are present here. National Union had no defense obligation under its policy and there was no risk to Magma of either an inadequate defense or excess liability as the matter was resolved under Magma's 2003-04 policies. (Fact Nos. 20-24.)

Magma further argues that it has been damaged because it may be responsible to reimburse Genesis for its contribution toward the settlement of the Securities Actions. However, this argument is flawed because any obligation of Magma to reimburse Genesis for its settlement payments is not the result of any purported breach by National Union. Rather, Magma's potential obligation to reimburse Genesis is the result of Magma's failure to comply with the "notice of circumstances" provision of its 2003-04 insurance contracts. (See Dkt No. 139 – USCA 7/12/10 Memorandum of Decision ("*Genesis I*") at ¶ 2.) While Magma contends that Genesis may enforce its claim for reimbursement against Magma, that possibility can only occur if it is ultimately found that the insurance contract between National Union and Magma does not provide coverage to Magma.. Indeed, that is the heart of the "genuine dispute" among the parties. Magma's claimed exposure to Genesis is speculative and is the result of Magma's own actions. Under either scenario, Magma has not been damaged.

### C. The "Genuine Dispute" Doctrine Is Applicable To The Matters At Issue And Bars Magma's Bad Faith Claim

#### 1. Magma's "One Genuine Issue" Argument Lacks Merit

Magma's assertion that the Ninth Circuit decided "the one genuine issue" in the case, the notice of circumstances issue, in its *Genesis I* decision, completely ignores the language of the Court's decision specifically limiting it to solely the notice provided to Genesis. Magma's contention that *Genesis I* somehow "settled the one genuine dispute in this case" makes a mockery of the subsequent litigation that ensued following *Genesis I*, and the decisions by both this court and the Ninth Circuit.

Based upon a brief review of the subsequent claims and defenses raised by the parties it is clear that a myriad of issues remained in dispute and/or arose out of the decision in *Genesis I* including, but not limited to the following: whether or not the prior notice exclusion in the National

Union Excess Policy barred coverage for the Securities Actions; whether coverage was available under the National Union Excess Policy without exhaustion of the underlying primary policy; whether Executive Risk's acceptance of notice of circumstances was appropriate under the totality of the circumstances at issue; and whether in accepting notice of circumstances under the policy Executive Risk waived its rights (or was estopped from) subsequently disavowing its acceptance and reallocating its settlement payments. Accordingly, Magma's arguments regarding its "one genuine dispute" assertion are patently false, without merit and should be not be considered by the court.

**2. The "Genuine Dispute" Doctrine Applies To Liability Policies**

Genesis's argument that the genuine dispute rule does not apply to third-party liability disputes should be rejected. The *Mt. Hawley* case does not hold (or say) that the defense does not apply in third party cases – rather the decision says the defense *may* not apply in third party *duty to defend cases*. *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1424 (2013). Likewise, *Century Surety Co. v. Polisso*, 139 Cal. App. 4th 922, 951 (2006), cited by Magma, is also a duty to defend case, and it specifically states that the defense "has also been applied in a third party indemnity case. [Citing *Dalrymple*]." *Howard v. American National Fire Ins. Co.*, 187 Cal. App. 4th 498, 530 ( 2010) also addressed the genuine dispute defense in the context of an alleged breach of the insurers duty to defend, not the duty to indemnity. The case at bar is *not* a duty to defend case, as the policies in question are *excess policies*. There has never been an argument that National Union breached any duty to defend Magma and Magma's contentions are with regards to the payment of the settlement.

Moreover, Magma's citation to the Rutter Group practice guide is to an old version of the practice guide. The current version (2015) states that the question is "unresolved," and "may depend on the type of claim asserted." *Croskey., Cal. Practice Guide: Insurance Litigation* (The Rutter Group 2015) p. 12B-97, ¶12:618. The practice guide goes on to state that "[s]everal cases hold a 'genuine dispute' as to coverage precludes bad faith liability based on a liability insurer's breach of its duty to indemnity its insured." The practice guide cites to *Dalrymple v. United Services Auto. Assn.*, 40 Cal. App. 4th 497, 523 (1995) ("In any case, … an insurer can erroneously dispute coverage without acting in bad faith.") and *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 287 (2005) ("If the conduct of the insurer in denying coverage was objectively reasonable, its subjective intent is

irrelevant."). Croskey et al., p. 12B-97, ¶12:618.1. *Dalrymple* involved a third party lawsuit under a USAA renter's protection policy. 40 Cal. App. 4th at 505-506. *Krusiewicz* involved a third party claim under a general liability "special multi-peril" policy, and the court concluded that "CalFarm's coverage decision was objectively reasonable, and, therefore, CalFarm cannot be liable for bad faith breach of the insurance policy." 131 Cal. App. 4th at 278, 292 (citing *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.,* 90 Cal. App 4th at 335 (1989)). In both cases, no bad faith liability was found based on application of the genuine dispute rule.

As noted in footnote 6 of Magma's opposition, the rule has been applied in other third party cases. See e.g., *Griffin Dewatering Corp. v. Northern Ins. Co. of New York*, 176 Cal. App. 4th 172, 206 (2009) ("First, as far as bad faith law is concerned, we can divine no difference in basic doctrine between first party cases and third party cases under the facts of this case. The basic rule of reasonability of coverage decision holds for both first and third party insurance policies."). Magma's effort to distinguish *Griffin* and *Krusiewicz* on the basis that "legal precedent" directly supported the insurers' position actually supports National Union's arguments because, as discussed in the moving papers, National Union's position is supported by legal precedent (the cases, including *Genesis II*, that hold exhaustion is a necessary condition before there is any obligation on the part of an excess insurer), and moreover this was the position advocated for by National Union's insured, Magma.

**D. Magma's Contention That The Discovery It Propounded To National Union Is Relevant To National Union's Entitlement To Summary Judgment Lacks Merit And Is Unsupported By Either The Facts Or The Evidence**

Magma asserts at p. 18:4-5 of its brief that the Court should deny National Union's motion pursuant to FRCP Rule 56(d), which provides in pertinent part that: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Magma has not come close to meeting its burden to invoke relief under Rule 56(d).

To obtain postponement or denial for further discovery, Magma's supporting declaration must show: facts indicating a likelihood that controverting evidence exists as to a material fact; specific reasons why such evidence was not discovered or obtained earlier; the steps or procedures by which

Magma proposes to obtain the needed evidence within a reasonable time; and an explanation of how those facts will suffie to defeat the pending motion (i.e. to rebut National Union's claim that there is no genuine issue of material fact). See, Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2013), 14:114, p. 14-36-37 (citing, *Tatum v. City and Cnty. of San Francisco,* 441 F.3d 1090, 1100-1101 (9th Cir. 2006)[" A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."]; *Trask v. Franco,* 446 F.3d 1036, 1042 (10th Cir 2006); *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) ["bare allegations or vague assertions fo the need for discovery are not enough"]).

Magma's declaration of counsel supporting its request under Rule 56(d) does not state facts showing that it is likely there is evidence that will controvert a material fact raised by National Union – which is probably due to the fact that *all of the material facts identified by National Union are essentially undisputed by Magma*. There is not a single fact where Magma responded that it believes there is evidence available to refute the fact, but Magma has not had a reasonable opportunity o obtain discovery of that evidence. Counsel's declaration also fails to identify the evidence it seeks, or that there is a likelihood the needed evidence even exists. No discovery requests are submitted, nor does the declaration explain what documents or other information Magma proposes to obtain by further discovery, or why such evidence was not discovered or obtained earlier. Magma does not dispute that National Union has produced its complete claim file and underwriting file, and a privilege log. No witnesses are identified for deposition. Nor is there any timetable for obtaining the information that Magma claims is needed (whatever that might be). There is no mention of why the attorney client (or other) privilege does not apply to communications after the litigation was filed. Lastly, there is a complete failure to explain how the information sought will suffice to defeat National Union's motion.

Magma's declaration is entirely conclusory and non-specific, and is not sufficient to support Magma's request to deny National Union's motion. See, *Swoger v. Rare Coin Wholesalers*, 803 F.3d 1045, 1048 (9th Cir. 2015) (denying request for relief under Rule 56(d) because the party seeking relief "failed to identify what specific facts a deposition of Contursi would have revealed that would have precluded summary judgment"); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 966 (9th Cir. 2009)

("A party seeking postponement must 'show how additional discovery would preclude summary judgment and why [it] cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact'." [quoting *Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 524 (9th Cir. 1989)]).

The request should be denied.

## IV. <u>CONCLUSION</u>

Based on the foregoing, as well as National Union's motion papers, and the fact that Magma has failed to substantively dispute the material facts supporting National Union's entitlement to summary judgment as against Magma's claims for breach of contract and breach of the covenant of good faith and fair dealing, National Union respectfully requests that the Court grant its motion for summary judgment and dismiss Magma's claims. 90 Cal. App 4th at 335 (1989)

DATED: March 8, 2016

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Paul A. Desrochers*
Glenn A. Friedman
Michael K. Johnson
Paul A. Desrochers
Attorneys for Defendant and Counter/Cross Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA